UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| THOMAS E. PEREZ Secretary of Labor, | ) | |
| United States Department of Labor, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 1:14-cv-01429-SEB-MJD |
| vs. | ) | |
| | ) | |
| PBI BANK, INC., | ) | |
| MICHAEL A. EVANS, | ) | |
| AIT LABORATORIES EMPLOYEE STOCK | ) | |
| OWNERSHIP PLAN, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER ON PLAINTIFF'S MOTIONS TO STRIKE**

This matter comes before the Court on Plaintiff's Motion to Strike Defendant PBI Bank's

Affirmative Defenses, [Dkt. 22], Plaintiff's Motion to Strike Defendant Michael A. Evans's

Affirmative Defenses, [Dkt. 24], and Defendant PBI Bank's Motion for Leave to File Amended

Answer and Affirmative Defenses. [Dkt. 44] For the reasons that follow, the Court **GRANTS**

Plaintiff's motions and **DENIES** Defendant's motion.

## I.      Background

On August 29, 2014, Secretary of Labor Thomas E. Perez ("Plaintiff" or "the Secretary")

filed suit against PBI Bank ("PBI"), AIT Laboratories Employee Stock Ownership Plan ("the

Plan" or "ESOP"), and Michael A. Evans ("Evans"). [*See* Dkt. 1.] The complaint alleged that the

Plan was established by AIT Holding Company ("AIT Holding") for the benefit of employees in

its two subsidiaries:  American Institute of Toxicology, Inc. d/b/a AIT Laboratories and AIT

Bioscience, LLC. [*Id.* ¶ 2.] It also identified PBI as the named trustee of the Plan, [*id.*], and

Evans as the 88 percent owner, majority selling shareholder, CEO, and sole member of the Board of Directors of AIT Holding and AIT Laboratories. [*Id.* ¶ 3.]

Plaintiff alleged that Defendant PBI breached its fiduciary duties and violated the Employee Retirement Income Security Act of 1974 ("ERISA") by causing the Plan to "vastly overpay for stock purchased from Defendant Evans and others for $90 million on June 30, 2009." [*Id.* ¶ 4.] Plaintiff also alleged that Defendant Evans appointed and was responsible for monitoring PBI, such that he was "liable for Defendant PBI Bank's violations of ERISA as a co-fiduciary." [*Id.* ¶¶ 3, 5.]

The allegations arose from a June 29, 2009 resolution by which PBI Bank caused the Plan to purchase $90,000,000 of stock in AIT Holding. [*Id.* ¶ 4, 6, 46.] Plaintiff claims that the $90,000,000 price was based on a valuation that Defendants knew or should have known was unreliable. [*Id.* ¶ 7.] Among other deficiencies, the valuation allegedly failed to account for increased competition from AIT Holdings' major competitors and failed to account for negative price pressures from AIT Holdings' largest sources of revenue. [*Id.*]

The Secretary also alleges that the valuation was erroneous because it "specifically, and incorrectly, assumed that the stock being purchased . . . included a controlling interest in AIT Holding and its subsidiaries." [*Id.* ¶ 8.] In reality, however, the stock purchase agreement included a provision that required the Plan to vote its shares to elect AIT Board members as designated by Evans. [*Id.*] Defendant Evans thus effectively retained control of AIT Holding. [*Id.* ¶ 9.] Moreover, in October 2013, Plaintiff alleges that Evans used his control to execute a restructuring in which he "[took] back ownership of AIT Holding from the ESOP," and thus left the ESOP with only a small fraction of the company. [*Id.* ¶¶ 9, 57.]

Based on these events, Plaintiff alleges that Defendants PBI and Evans violated numerous provisions of ERISA, including 29 U.S.C. § 1104(a)(1)(A) (requiring discharge of duties solely in the interest of plan participants and beneficiaries), § 1104(a)(1)(B) (requiring prudence and diligence in management of plan), § 1106(a)(1) (prohibiting certain transactions between plan and parties in interest), and 29 U.S.C. §§ 1105(1)-(3) (imposing liability on co-fiduciaries). [*Id.* ¶¶ 11-12.]

PBI answered Plaintiff's complaint on November 3, 2014. [Dkt. 16.] It denied most of Plaintiff's allegations and asserted nine affirmative defenses. [*See id.*] Evans answered Plaintiff's complaint on the same day. [Dkt. 17.] He denied most of Plaintiff's allegations and asserted twelve affirmative defenses. [*See id.*]

The Secretary then filed the current motions to strike certain of PBI's affirmative defenses, [Dkt. 22], and certain of Evans' affirmative defenses. [Dkt. 24.] While these motions were pending, PBI filed its Motion for Leave to File Amended Answer and Affirmative Defenses. [Dkt. 44.] That motion seeks "to redress some of the purported deficiencies alleged" in the Secretary's motions to strike. [*Id.* at ¶ 3.]

## II.     Discussion

A court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike are appropriate when they expedite matters by "remov[ing] unnecessary clutter from the case." *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989). A court may thus strike defenses that are "insufficient on the face of the pleadings," that fail "as a matter of law," or that are "legally insufficient." *Id.* at 1294.

In addition, "[a]ffirmative defenses are pleadings and, therefore, are subject to all pleading requirements of the Federal Rules of Civil Procedure." *Id.* at 1294. They must thus set forth a "short and plain statement" of the defense, *id.* at 1295 (quoting Fed. R. Civ. P. Rule 8(a)), and they must give the opposing party "fair notice of the nature" of the defense. *See, e.g., Fleet Bus. Credit Corp. v. Nat'l City Leasing Corp.*, 191 F.R.D. 568, 570 (N.D. Ill. 1999).

Defenses that consist of "nothing but bare bones conclusory allegations" will not suffice. *Heller*, 883 F.2d at 1295. The exact amount of factual material that a defense must include, however, is unclear. In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court held that to satisfy Rule 8, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). In subsequent years, some courts in this circuit have concluded that affirmative defenses are subject to the "plausibility" pleading standard announced in *Twombly* and *Iqbal*. *See, e.g.*, *Fed. Deposit Ins. Corp. v. Giannoulias*, No. 12 C 1665, 2014 WL 3376892, at *2 (N.D. Ill. July 10, 2014) (citing *Iqbal*, 556 U.S. at 678, when striking defenses); *Shield Technologies Corp. v. Paradigm Positioning, LLC*, No. 11 C 6183, 2012 WL 4120440, at *8 (N.D. Ill. Sept. 19, 2012) (concluding that majority view in Seventh Circuit is to apply *Twombly* and *Iqbal* to affirmative defenses). Other courts, however, have taken the opposite view. *See, e.g.*, *Cottle v. Falcon Holdings Mgmt., LLC*, No. 2:11-CV-95-PRC, 2012 WL 266968, at *2 (N.D. Ind. Jan. 30, 2012) ("This Court agrees with those cases declining to apply the 'plausibility' standard of *Iqbal* and *Twombly* to affirmative defenses."). These courts thus consider motions to strike "under the standard set forth in *Heller*." *Id.* at 3.

The Seventh Circuit has not yet resolved this division of authority. *See, e.g.*, *Makeda-Phillips v. White*, No. 12-3312, 2014 WL 7450078, at *2 (C.D. Ill. Dec. 30, 2014) ("[T]he Seventh Circuit has not addressed whether the heightened pleading standard set forth in [*Twombly*] and [*Iqbal*] applies to affirmative defenses."). Other circuit courts have also declined to rule on the issue. *See, e.g.*, *Herrera v. Churchill McGee, LLC*, 680 F.3d 539, 547 n.6 (6th Cir. 2012) ("We therefore have no occasion to address, and express no view regarding, the impact of [*Twombly*] and [*Iqbal*] on affirmative defenses."); *Mifflinburg Tel., Inc. v. Criswell*, No. 4:14-CV-00612, 2015 WL 268806, at *6 (M.D. Pa. Jan. 21, 2015) ("[T]he Third Circuit has not yet definitively addressed the issue[.]"); *Miller v. Live Nation Worldwide, Inc.*, No. CIV.A. TDC-14-2697, 2015 WL 235553, at *2 (D. Md. Jan. 15, 2015) ("Neither the Supreme Court nor the Fourth Circuit has addressed the issue.").

This Court thus faces two formulations of the standard for striking an affirmative defense: Under the approach adopted in *Heller*, the Court may strike those defenses that fail as a matter of law or that are "nothing but bare bones conclusory allegations." 883 F.2d at 1294-95. Under the approach adopted in *Shields Technologies*, on the other hand, the Court may strike affirmative defenses that fail as a matter of law or that do not include enough "factual matter" to render their contentions "plausible" within the meaning of *Twombly* and *Iqbal*. *See* 2012 WL 4120440, at *8.

Choosing between the standards makes little difference in resolving the current motions. As explained below, Defendants' affirmative defenses are insufficient under either standard: each defense either fails as a matter of law or contains such little factual matter that it cannot meet even the less demanding standard of *Heller*, let alone the plausibility standard of *Twombly* and *Iqbal*. The Court accordingly **GRANTS** Plaintiff's motions to strike these defenses. For each

defense, however, the Court must also determine whether to strike the defense with or without prejudice. "Courts strike defenses that are inadequately pleaded without prejudice so that defendants can fix any shortcomings of inadequately pleaded defenses. On the other hand, Courts strike with prejudice defenses that are not appropriately pleaded as affirmative defenses or for which it is impossible for the defendant to prove a set of facts in support." *Hayes v. Agilysys, Inc.*, No. 09 C 727, 2009 WL 891832, at *1 (N.D. Ill. Mar. 30, 2009) (citations omitted). The Court will apply this standard to each defense in turn.

### 1. Plaintiff's Motion to Strike PBI's Defenses

The Secretary argues that the Court should strike affirmative defenses two, three, four, five, six, seven, and nine. [Dkt. 22 at 1.] The Court addresses each defense below.

### A. Second Affirmative Defense

PBI's second defense contends that "[s]ome or all of the Plaintiff's claims fail because the Plaintiff did not join parties necessary for the court to accord complete relief as required by Federal Rule of Civil Procedure 19(a)(1)(A)." [Dkt. 16 at 24.] Rule 19, in turn, provides that a "person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined" if "in that person's absence, the court cannot accord complete relief among existing parties." Fed. R. Civ. P. 19(a)(1)(A).

PBI contends that the Secretary seeks to "unwind" the June 30, 2009 stock purchase, but notes that the purchase did not involve only Defendants PBI and Evans; instead, the purchase also involved several individual shareholders. [Dkt. 34 at 3.] PBI thus argues that the proposed relief would affect the rights of these shareholders, such that, without them, the Court cannot "accord complete relief." [*Id.* at 4 (citing Fed. R. Civ. P. 19(a)(1)(A)).]

This argument mischaracterizes the Secretary's requested remedy. Plaintiff seeks an order "[r]equiring *Defendant Evans* to rescind and undo the prohibited transactions in which *he* participated and disgorge any and all profits and financial benefits *he* received as a result of his knowing participation in the violations described herein, plus interest[.]" [Dkt. 1 at 17 (emphasis added).] Thus, as the Secretary notes, the complaint is "*not* requesting the Court to order rescission with regard to transactions involving parties *not* named in the Complaint." [Dkt. 37 at 3 (emphasis added).] The Court therefore need not join these individuals to accord complete relief, such that Rule 19(a) does not require their joinder.

Additionally, to the extent that any other parties may share liability with Defendants Evans and PBI, their joinder is not required. First, the "complete relief" contemplated by Rule 19 applies to "relief between the persons already parties, and not as between a party and the absent person." *Perrian v. O'Grady*, 958 F.2d 192, 196 (7th Cir. 1992). Second, PBI bank is jointly and severally liable for all harm it may have caused. *See, e.g.*, *Jennings v. Pierce*, No. 93 C 2539, 1995 WL 88795, at *2 (N.D. Ill. Mar. 1, 1995) ("[U]nder ERISA, plan trustees that have breached their fiduciary duty are jointly and severally liable."). This shared liability implies that, as long as the complaint names one of the fiduciaries as a defendant, the Court can accord complete relief among the named parties, such that joinder of any additional fiduciaries who may be liable is not required. *See id.* ("[T]he absent trustees, as jointly and severally liable parties, are permissive—not necessary or indispensable—parties.").

PBI's second defense thus fails as currently pled: whether the defense is read to refer to absent shareholders or absent trustees, the defense is insufficient and may be stricken. *See Heller*, 883 F.2d at 1294. The Court thus **GRANTS** Plaintiff's motion to strike PBI's second affirmative defense. The Court, however, will do so without prejudice: As noted above, courts

strike defenses with prejudice when it "is impossible for the defendant to prove a set of facts in support" of the defense. *Hayes*, 2009 WL 891832, at *1. PBI's reliance on the absence of co-fiduciaries or individual shareholders is misplaced, but that does not necessarily foreclose the availability of Rule 19(a) in all cases. If PBI can plead a Rule 19(a) defense that does not depend on the absence of shareholders or co-fiduciaries, then PBI may do so.

### B. Third and Fourth Affirmative Defenses

PBI's third affirmative defense is that it "did not act arbitrarily or capriciously, but acted with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent person acting in the like capacity and familiar with such matters would use." [Dkt. 16 at 24.] Its fourth affirmative defense is that any harm that the Plan suffered "did not result from any purported breach of the alleged fiduciary duties by PBI, or any act or omission by PBI." [*Id.*] Plaintiff contends these statements are not affirmative defenses at all; instead, they are merely repetitions of PBI's "earlier denials of the Secretary's allegations" and should be stricken for that reason. [Dkt. 23 at 6.] PBI responds that its defenses go beyond its earlier denials because they relate to the affirmative defense afforded in 29 U.S.C. § 1108(e), which exempts certain transactions from ERISA's general prohibition on transactions between a plan and interested parties. [Dkt. 34 at 5-6.]

A defense is an affirmative defense if it is specifically enumerated in Fed. R. Civ. P. 8(c),[1] if the defendant bears the burden of proof, or if the defense does not require controverting the plaintiff's proof. *See Winforge, Inc. v. Coachmen Indus., Inc.*, 691 F.3d 856, 872 (7th Cir. 2012). A court may properly strike a defense that does not meet this standard but that a party

---

[1] Plaintiff's third and fourth defenses are not so enumerated. *See* Fed. R. Civ. P. 8(c).

nonetheless pleads as an affirmative defense. *See, e.g.*, *Ford v. Psychopathic Records, Inc.*, No. 12-CV-0603-MJR-DGW, 2013 WL 3353923, at *7 (S.D. Ill. July 3, 2013).

Defendant's third defense is that it acted with care, skill, prudence, and diligence. [*See* Dkt. 16 at 24.] As the Secretary concedes, however, it is his burden to prove that PBI acted improvidently. [Dkt. 23 at 7.] Hence, this defense does *not* require PBI to bear the burden of proof, and it *does* require PBI to controvert Plaintiff's proof. It thus fails *Winforge*'s test for identifying affirmative defenses and may be appropriately stricken. *See Winforge*, 691 F.3d at 872; *Ford*, 2013 WL 3353923, at *7.

Defendant's fourth defense is that any damages "did not result from any purported breach of the alleged fiduciary duties by PBI, or any act or omission by PBI." [*Id.*] The burden of showing both breach of fiduciary duty and loss causation rests with the Secretary. [*See* Dkt. 23 at 7; Dkt. 38 at 3.] PBI's fourth defense thus fails *Winforge's* test for identifying affirmative defenses in the same way that PBI's third defense failed the test, such that the fourth defense may also be stricken.

Defendants' argument to save these defenses is not persuasive. 29 U.S.C. § 1108(e) reads as follows:

> (e) Acquisition or sale by plan of qualifying employer securities; acquisition, sale, or lease by plan of qualifying employer real property
> Sections 1106 and 1107 of this title shall not apply to the acquisition or sale by a plan of qualifying employer securities (as defined in section 1107(d)(5) of this title) or acquisition, sale or lease by a plan of qualifying employer real property (as defined in section 1107(d)(4) of this title)--
>> (1) if such acquisition, sale, or lease is for adequate consideration (or in the case of a marketable obligation, at a price not less favorable to the plan than the price determined under section 1107(e)(1) of this title),
>> (2) if no commission is charged with respect thereto, and
>> (3) if--
>>> (A) the plan is an eligible individual account plan (as defined in section 1107(d)(3) of this title), or

> **(B)** in the case of an acquisition or lease of qualifying employer
> real property by a plan which is not an eligible individual account
> plan, or of an acquisition of qualifying employer securities by such
> a plan, the lease or acquisition is not prohibited by section 1107(a)
> of this title.

29 U.S.C. § 1108(e). PBI's third and fourth defenses say nothing about "adequate consideration,"

the charge of any commission, or whether the ESOP is "an eligible individual account plan."

[*See* Dkt. 16 at 24.] It is thus specious for PBI to claim that the defenses relate to the affirmative

defense afforded in 29 U.S.C. § 1108(e).

Moreover, it is clear that the defenses "merely repeat [PBI's] denial of allegations

contained in the complaint." *Sarkis' Cafe, Inc. v. Sarks in the Park, LLC*, No. 12 C 9686, 2014

WL 3018002, at *4 (N.D. Ill. July 3, 2014). Earlier in its answer, PBI "[d]enied" the allegation

that it "failed to act with the care, skill, prudence and diligence . . . that a prudent man . . . would

use," [Dkt. 16 at 22], and it "[d]enied" the allegation that it "caused losses to the ESOP," [*id.*], by

"breaching [its] own fiduciary duties." [*Id.* at 23.]

These denials closely align with PBI's third and fourth affirmative defenses, [*see id*. at

24], such that the defenses are mere repetitions of PBI's earlier statements. PBI's purported

defenses are thus "not appropriately pleaded as affirmative defenses," and they may be struck

"with prejudice." *Hayes*, 2009 WL 891832, at *1. The Court accordingly **GRANTS** Plaintiff's

motion to strike PBI's third and fourth defenses with prejudice.

### C. Fifth Affirmative Defense

PBI's fifth affirmative defense reads in its entirety: "The Plaintiff's claims, in whole or in

part, are barred by the doctrines of estoppel, laches or waiver." [Dkt. 16 at 24.] In its response,

PBI withdrew the defense of laches. [Dkt. 34 at 6 n.4] PBI then conceded that "it did not state

facts to support" the remaining defenses of estoppel or waiver, but argued "that it is not required to do so." [*Id.* at 6]

This is a misstatement of the law. In *Heller*, the Seventh Circuit approved a district court's decision to strike defenses because they were "bare bones conclusory allegations" that "omitted any *short and plain statement of facts.*" 883 F.2d at 1295 (emphasis added). Pleading at least minimal factual content is thus required, such that PBI's failure to plead anything more than the words "estoppel, laches or waiver" constitutes grounds for striking its defenses.

Additionally, the Seventh Circuit in *Heller* noted that the appropriately stricken defenses "failed totally to allege the necessary elements of the alleged claims." *Id.* PBI's answer similarly fails to allege the necessary elements of its defenses. The elements of estoppel, for instance, are "(1) misrepresentation by the party against whom estoppel is asserted; (2) reasonable reliance on that misrepresentation by the party asserting estoppel; and (3) detriment to the party asserting estoppel." *United States v. Anaya-Aguirre*, 704 F.3d 514, 519 (7th Cir. 2013) In addition, estoppel is available against the government only when "the government committed affirmative misconduct, which requires 'more than mere negligence.'" *Id.* (quoting *Gibson v. West*, 201 F.3d 990, 994 (7th Cir.2000)). PBI has not pled that any of these elements exist, such that its estoppel defense may be stricken for the same reason as the defenses in *Heller*.

Next, waiver is "the intentional relinquishment of a known right." *See, e.g.*, *United States v. Rand Motors*, 305 F.3d 770, 773 (7th Cir. 2002). PBI did not allege what right Plaintiff allegedly waived, nor did PBI allege any intentional action that might have constituted a relinquishment of that right; indeed, PBI did not even acknowledge that these were the elements of its asserted waiver defense. [*See* Dkt. 16 at 24.] The Court may therefore strike this defense. *See Heller*, 883 F.2d at 1295.

Finally, PBI cites *Cottle*, 2012 WL 266968, at *3, for the proposition that it need not plead in any more detail than it did. [Dkt. 16 at 24.] This mischaracterizes the opinion in *Cottle*. First, that opinion specifically stated that it would apply "the standard set forth in *Heller*," 2012 WL 266968, at *3 which, as noted above, requires pleading at least minimal factual content. Second, that opinion acknowledged that, under *Heller*, an affirmative defense "must provide enough information such that the plaintiff is given 'fair notice of what the . . . claim is and the grounds upon which it rests.'" *Id.* at *2 n.2 (quoting *Twombly*, 550 U.S. at 555, and asserting that this portion of *Twombly* is "consistent with the standard for affirmative defenses set forth in *Heller*"). *Cottle* thus acknowledges that PBI must provide "notice" of the "grounds upon which" its defenses rest. Merely pleading the words "estoppel" and "waiver" offers the opposing party no insight about the basis for these defenses, and PBI's pleading is therefore inadequate.

The Secretary also argues that estoppel and waiver are inapplicable to the government as a matter of law. [Dkt. 23 at 7-8.] This position has some support, as the Seventh Circuit has noted that "[i]n the United States, the traditional view has been that equitable estoppel will not lie against the Government or any of its agencies." *Portmann v. United States*, 674 F.2d 1155, 1158-59 (7th Cir. 1982). That "traditional view," however, has eroded over time. *See id.* at 1160-65. Thus, as noted above, the Seventh Circuit has expressly set out those circumstances in which estoppel *is* available against the government. *See, e.g.*, *Anaya-Aguirre*, 704 F.3d at 520 (requiring traditional elements of estoppel and affirmative misconduct on part of government).

Similarly, even if, as the Secretary asserts, waiver by the government may be difficult to show, [*see* Dkt. 23 at 11], courts have previously given defendants in ERISA actions an opportunity to at least plead the defense. *See, e.g.*, *Solis v. Bruister*, No. 4:10CV77-DPJ-FKB, 2012 WL 776028, at *7 (S.D. Miss. Mar. 8, 2012) (denying Secretary's motion to strike

"estoppel and implied waiver [defenses], not because they will ultimately prove true but because it is too early to tell"). In this case, then, the Court will **GRANT** Plaintiff's motion to strike the estoppel and waiver defenses, but will do so without prejudice to PBI's right to re-plead the defenses in a way that gives Plaintiff fair notice of the grounds underlying each defense.

### D. Sixth Affirmative Defense

PBI's sixth affirmative defense is that "Plaintiff's claims, in whole or in part, are barred or mitigated by the doctrine of set off." [Dkt. 16 at 24.] Plaintiff argues that "set off" is not an affirmative defense at all; rather, it is an independent cause of action that must be pled as a counterclaim. [Dkt. 23 at 12.]

Whether "set off" is a counterclaim or an affirmative defense is an unsettled issue. *See, e.g.*, *Reiter v. Cooper*, 507 U.S. 258, 263 (1993) (quoting 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1275 (2d ed. 1990)) ("[I]t is not clear whether set-offs and recoupments should be viewed as defenses or counterclaims[.]"). Some courts in this circuit have treated set-off as an affirmative defense. *See, e.g.*, *Temtex Indus., Inc. v. TPS Associates, LLC*, No. 09 CV 1379, 2012 WL 2929821, at *5 (N.D. Ill. July 18, 2012) ("[T]he court concludes that Rotman may assert a setoff claim as an affirmative defense to TPS's counterclaim against him."); *AAR Int'l, Inc. v. Vacances Heliades S.A.*, 202 F. Supp. 2d 788, 793-94 (N.D. Ill. 2002) ("The defendants . . . request leave to replead their setoff claim as an affirmative defense, which I grant."). Other courts have taken the opposite approach. *See, e.g.*, *Gagan v. United Consumers Club, Inc.*, No. 2:10-CV-26-JD-PRC, 2011 WL 7462197, at *6 n.1 (N.D. Ind. Dec. 15, 2011) ("The Court notes that Affirmative Defense 25, alleging entitlement to a set-off, would more appropriately be considered a counterclaim."). This Court has previously allowed a party to assert set-off as an affirmative defense, *see Travelers Cas. & Sur. Co. of Am. v. Consol. City of*

*Indianapolis, Ind.*, No. 1:13-CV-01276-MJD, 2014 WL 5509312, at *8 n.6 (S.D. Ind. Oct. 31, 2014), and in light of the confusion surrounding the doctrine, the Court sees no need to take a different approach in this case.[2]

Regardless, PBI's set-off defense must still be stricken. As currently pled, the defense states only that "Plaintiff's claims, in whole or in part, are barred or mitigated by the doctrine of set off." [Dkt. 16 at 24.] This brief allegation does not give Plaintiff "fair notice of the nature of the claim," *Fleet Bus.*, 191 F.R.D. at 570, and hence is insufficient.

In its response, PBI elaborates on its set-off argument and claims that the Secretary is simultaneously pursuing 1) recovery through this action against Defendants Evans and PBI, and 2) recovery through settlement negotiations from individual shareholders who also participated in the June 2009 sale of stock to the Plan. [Dkt. 34 at 7.] PBI thus contends that any damages against it should be reduced in proportion to the amount recovered from individual shareholders "in order to prevent a windfall in favor" of Plaintiff or Plan participants. [*Id.* at 8.] Regardless of whether this argument is valid, PBI must re-plead its sixth affirmative defense to more fully convey the substance of its claim. The Court thus **GRANTS** Plaintiff's motion to strike this defense, but does so without prejudice to PBI's right to re-plead a defense that provides proper notice of the basis for its assertions.

### E.  Seventh Affirmative Defense

PBI's seventh affirmative defense is that "Plaintiff has failed to mitigate or otherwise avoid its alleged damages." [Dkt. 24 at 16.] The Secretary argues that this defense is not relevant

---

[2] The Court also notes that the terminology used will not affect the substance of the parties' claims. *See Reiter*, 507 U.S. at 263 (quoting Fed. R. Civ. P. 8(c)) ("And it makes no difference that petitioners may have mistakenly designated their counterclaims as defenses, since Federal Rule of Civil Procedure 8(c) provides that 'the court on terms, if justice so requires, shall treat the pleading as if there had been a proper designation.'").

to this case because "the Secretary has not suffered any damages but is instead seeking to recover for another party—the ESOP—based on the ESOP's damages." [Dkt. 23 at 13.] PBI responds that the defense is appropriate because the Secretary could otherwise "potentially hold[] PBI responsible for the actions (or inactions) of others in not mitigating the alleged damages." [Dkt. 34 at 8-9.]

In support of his position, the Secretary cites *In re State Street Bank & Trust Co. Fixed Income Funds Inv. Litig.*, 772 F. Supp. 2d 519 (S.D.N.Y. 2011). There, a plan fiduciary—PRIAC—sued State Street on behalf of retirement plans that had invested in banks managed by State Street. *Id.* at 522-23. State Street asserted that PRIAC failed to mitigate the damages the plans suffered, but the court rejected this argument: "Because the true plaintiffs here are the Plans, it would defeat the purposes of ERISA to allow State Street to use another fiduciary's actions as a shield against awarding damages to the Plans." *Id.* at 540. The court also noted that State Street had cited "no case recognizing" a defense of the sort it asserted. *Id.*

PBI's responsive brief is similarly devoid of case law acknowledging the failure-to-mitigate defense that it asserts. [*See* Dkt. 34 at 8.] Ultimately, however, this is unsurprising, as other cases have reached conclusions similar to that reached in *State Street Bank*. In *Chao v. Wheeler*, for example, the Secretary of Labor asserted ERISA violations against Larry Parks and Michael Kile. No. 3:05-CV-763 RM, 2007 WL 4233464, at *1 (N.D. Ind. Nov. 28, 2007). Mr. Kile argued "that the Secretary had an affirmative duty to mitigate her damages," but the court noted that the "mitigation of damages doctrine traditionally applies only to suits in tort or contract law, and Mr. Kile has cited no authority recognizing the doctrine's application to ERISA actions." *Id.* at *9. Moreover, the court wrote that it "can't agree with Mr. Kile that the Department of Labor had a duty to mitigate its damages" because imposing such a duty "would

make it more difficult for the Secretary to carry out her duty to enforce the provisions of ERISA." *Id.* The Court thus rejected the defense and granted summary judgment against Mr. Kile. *Id.*

In the absence of any authority to the contrary, this Court agrees with the decisions in *State Street Bank* and *Chao* and concludes that failure to mitigate is inapplicable to the Secretary's action. The Court thus **GRANTS** Plaintiff's motion to strike PBI's sixth affirmative defense. Further, because the defense fails as a matter of law, it is "impossible for the defendant to prove a set of facts in support" of the defense, *Hayes*, 2009 WL 891832, at *1, and the Court thus strikes this defense with prejudice. *See id.*

### F. Ninth Affirmative Defense

PBI's ninth affirmative defense states that "PBI reserves the right to supplement its affirmative defenses as discovery is continuing in this matter." [Dkt. 16 at 24.] The Secretary argues that this statement is not an affirmative defense at all. [Dkt. 23 at 14.] He notes that any supplement to PBI's answer must comply with the Federal Rules of Civil Procedure, such that PBI's purported reservation of rights is irrelevant and ineffectual. [*Id.* (citing Fed. R. Civ. P. 8(c)(1), Fed. R. Civ. P. 12(b)).]

PBI's responsive brief recognizes the merits of the Secretary's argument and states that PBI "acknowledges its obligations to comply with the Federal Rules of Civil Procedure." [Dkt. 34 at 9.] The Court appreciates PBI's willingness to obey the rules imposed on all civil litigants, and accordingly **GRANTS** Plaintiff's motion to strike PBI's ninth affirmative "defense." The Court now turns to Defendant Evans' defenses.

## 2. Plaintiff's Motion to Strike Evans' Defenses

The Secretary argues that the Court should strike affirmative defenses three, four, five, eight, nine, ten, eleven, and twelve. [Dkt. 24 at 1.] The Court addresses these defenses in turn.

### A. Third Affirmative Defense

Evans' third affirmative defense is that "Plaintiff's claims are barred, in whole or in part by the doctrines of laches, accord and satisfaction, waiver, estoppel, ratification, license, payment and release, assumption of risk, incurred risk, and intervening or superseding cause." [Dkt. 17 at 26.]

This pleading does not satisfy the standards articulated above. As noted in *Heller*, an affirmative defense that lacks "any short and plain statement of facts" or that fails "totally to allege the necessary elements of the alleged claims" is not sufficient. *Heller*, 883 F.2d 1295. It is thus inadequate to merely allege words such as estoppel; accord and satisfaction; ratification; license; payment and release; assumption of risk; incurred risk; and intervening or superseding cause. The Court therefore **GRANTS** Plaintiff's motion to strike these defenses.

In his responsive brief, Evans elaborates on the two remaining defenses: laches and waiver. [Dkt. 35 at 5-6.] Such elaboration is generally inappropriate. *See, e.g.*, *Krippelz v. Ford Motor Co.*, No. 98 C 2361, 2003 WL 21087109, at *3 (N.D. Ill. May 13, 2003) (court evaluating motion to strike "cannot consider matters beyond the pleadings"); *Sun-Flex Co. Inc. v. Softview Computer Products Corp.*, 750 F. Supp. 962, 964 (N.D. Ill. 1990) ("Generally, material outside of the pleadings is not considered on a motion to strike."); *U. S. Oil Co. v. Koch Ref. Co.*, 518 F. Supp. 957, 959 (E.D. Wis. 1981) ("In determining whether to grant a motion to strike, the Court must treat all well pleaded facts as admitted and cannot consider matters outside the pleadings.").

More recently, however, the Seventh Circuit has observed that "[i]n the district court . . . a party opposing a Rule 12(b)(6) motion may submit materials outside the pleadings to illustrate the facts the party expects to be able to prove." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). The party, in other words, "is free to assert new facts in [his] brief opposing [a] motion to dismiss." *Id.* Thus, by analogy to *Geinosky*, the Court will assume for the sake of argument that Evans is permitted to assert new facts in opposing Plaintiff's motion to strike, and the Court will therefore consider Evans' elaboration on his laches and waiver defenses.

Evans defines laches as a "two-prong" test that requires "lack of diligence [in bringing suit]" and "prejudice to the defending party." [Dkt. 35 at 5 (quoting *Lingenfelter v. Keystone Consol. Indus., Inc.*, 691 F.2d 339, 340 (7th Cir. 1982)).] He adds that "the laches defense incorporates the waiver defense," as waiver similarly requires both delay and resulting prejudice. [*Id.* (citing *Allegheny Airlines, Inc. v. Forth Corp.*, 663 F.2d 751, 757 (7th Cir. 1981)).]

Evans then asserts that the Department of Labor ("DOL") began its first audit of the suspect June 2009 stock transaction on January 4, 2011, and "communicated nothing of concern to Evans." [*Id.* at 6.] The DOL then allegedly began a second audit "toward the end of 2012," and completed this audit in mid-2013. [*Id.*] Evans states that the auditor "did not raise concerns to Evans about the 2009 transaction and was aware of the significant restructuring that occurred in 2013." [*Id.*] Finally, Evans asserts that the Secretary waited almost eleven months after the 2013 restructuring to bring suit. [*Id.*] Evans thus concludes that both elements of laches or waiver are present because 1) the Secretary's "delay in filing suit until 11 months after the 2013 Restructuring was inexcusable;" and 2) the delay "prejudiced Evans because Evans and AIT Holding acted to effectuate the 2013 Restructuring in the face of the Secretary's and the DOL auditor's silence." [*Id.*]

This conclusion makes little sense. Evans claims the delay occurred when the Secretary waited to sue *after* the 2013 restructuring, but he claims the prejudice occurred when he "acted to effectuate the 2013 Restructuring" itself. The alleged prejudice thus occurred *before* the alleged delay, such that the delay could not possibly have caused the prejudice. Moreover, the very case law Evans cites is clear that without such a causal connection, there can be no laches. *See Lingenfelter*, 691 F.2d at 341 (emphasis added) ("The controlling issue . . . is whether [defendant] suffered any prejudice *as a result* of [plaintiff's] delay."[3]

The assertion of laches or waiver is also inconsistent with the parties' own conduct. On October 2, 2013, Evans and the Secretary entered into a Tolling Agreement that extended the time for the Secretary to sue under the applicable statute of limitations until August 2014. [Dkt. 35 at 5-6; Dkt. 38 at 7.] Any alleged "delay" in waiting until August 2014 was therefore not "inexcusable;" instead, it was the product of an agreement that Evans himself negotiated. Similarly, the Secretary's decision to enter a Tolling Agreement to *preserve* his right to sue hardly suggests the sort of "intentional relinquishment of a known right," *Rand Motors*, 305 F.3d at 773, that might support a claim of waiver. Thus, although Evans may contend that the facts as outlined in his responsive brief "support [his] laches and waiver defenses," [Dkt. 35 at 6], the reality is that these facts are not consistent with the elements that Evans must establish. Evans has thus effectively pled himself out of these defenses. *Cf. Tamayo v. Blagojevich*, 526 F.3d 1074, 1086 (7th Cir. 2008) (quotation omitted) ("A plaintiff pleads himself out of court when it would be necessary to contradict the complaint in order to prevail on the merits.").

---

[3] Evans' brief also implicitly suggests that the Secretary unreasonably delayed in not suing after the audits were completed but before the restructuring was executed. [*See* Dkt. 35 at 6.] This argument, however, also makes little sense. The audits occurred before the 2013 restructuring, yet it was this restructuring that divested the Plan of the control of AIT Holding that the Plan thought it has purchased in 2009. [*See* Dkt. 1 at ¶¶ 8, 57.] Thus, audits that occurred *before* the restructuring are not evidence of delay in bringing suit because it was not *until* the restructuring that the unfairness of the 2009 sale truly manifested itself.

The Court will accordingly strike Evans' waiver and laches defenses, but now must decide whether Evans may re-plead them. As noted above, courts have allowed ERISA defendants to at least plead waiver against the Secretary, *see, e.g.*, *Solis*, 2012 WL 776028, at *7, and so the Court will strike Evans' waiver defense without prejudice. The Secretary, however, contends that laches, as a matter of law, is not available against the government in an ERISA action. [Dkt. 25 at 5.]

The Secretary's argument breaks into two parts. He first contends that because ERISA contains its own statute of limitations, *see* 29 U.S.C. § 1113, laches is inapplicable. [Dkt. 25 at 5.] He notes that courts have previously determined that the judiciary should "not tamper with ERISA's enforcement scheme," *Herman v. S. Carolina Nat. Bank*, 140 F.3d 1413, 1427 (11th Cir. 1998), such that courts should look to the statute of limitations—not laches—when deciding whether an ERISA action is time-barred.

The Seventh Circuit, however, addressed the application of laches in the ERISA context in *Martin v. Consultants & Administrators, Inc.*, 966 F.2d 1078 (7th Cir. 1992). There, the panel majority wrote that "we hesitate to declare that laches can never be applied against the government in an ERISA case simply because Congress has codified a statute of limitations." *Id.* at 1091. It then determined that the elements of laches had not been satisfied in that case and left open the question of whether laches could apply in future cases. *See id.*

In the time since *Consultants*, the Supreme Court has decided *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962 (2014). There, the Court stated that "laches cannot be invoked to bar legal relief" in the "face of a statute of limitations enacted by Congress." *Id.* at 1974. That case involved the statute of limitations in the Copyright Act, but the Supreme Court's holding applies to statutes of limitations more generally. *See Holland v. Bibeau Const. Co.*, 774

F.3d 8, 15 (D.C. Cir. 2014). *Petrella* thus partly resolves the question left open in *Consultants*: ERISA contains a "statute of limitations enacted by Congress," and so "laches cannot be invoked to bar legal relief" in a claim under ERISA. *See Petrella*, 134 S. Ct. at 1974; *see also Holland*, 774 F.3d at 11, 15 (applying *Petrella* to the Coal Act, which "incorporates ERISA's enforcement scheme"). Evans' laches defense is therefore legally insufficient with respect the Secretary's request for legal relief, and to the extent Evans asserts the defense to bar such relief, the Court strikes the defense with prejudice.

*Petrella*, however, precludes an assertion of laches to bar "legal" relief. 134 S. Ct. at 1974. The Supreme Court acknowledged the possibility that laches could bar equitable relief, *see id.* at 1967, and in this case, the Secretary seeks such relief. [*See* Dkt. 1 at 1 (requesting "such further equitable relief as may be appropriate").] Laches thus may still provide a defense against a portion of the Secretary's requested remedy. *See Consultants*, 966 F.2d at 1091.

This, in turn, raises the second half of the Secretary's argument: he contends that, regardless of the statute of limitations, allowing a defendant in an ERISA action brought by the government to assert laches would be "contrary to public policy." [Dkt. 25 at 6.] He argues that when the government sues under ERISA, it does so to "protect important public interests that Congress sought to guard," such that private defendants should not be allowed to use laches to thwart such suits. [*Id.*]

Numerous courts have agreed with the Secretary's position. *See, e.g.*, *Herman*, 140 F.3d at 1427 (quotation omitted) ("[Precluding application of laches] protects public rights vested in the government for the benefit of all from the inadvertence of the agents upon which the government must necessarily rely."); *Martin v. Nationsbank of Georgia, N.A.*, No. CIV.A.1:92-CV1474HTW, 1993 WL 345606, at *5 (N.D. Ga. Apr. 6, 1993) ("[A]s a general rule the defense

of laches is unavailable against the United States since it sues to vindicate public, as well as private, interests.") The Seventh Circuit also agrees that the government's suits under ERISA advance important public goals. Even where, as here, the Secretary sues on behalf of an individual plan, the suit "protect[s] the very integrity, heart and lifeline" of ERISA because it "sustain[s] the very public confidence so necessary to the vitality of the enormous private pension fund system." *Sec'y of Labor v. Fitzsimmons*, 805 F.2d 682, 693 (7th Cir. 1986).

This language from *Fitzsimmons* could be read as aligning the Seventh Circuit with the Secretary's position, such that laches should not be available as a defense in this action. Even after *Fitzsimmons*, however, the Seventh Circuit remained ambivalent about laches in the ERISA context: In *Consultants*, the Seventh Circuit cited *Fitzsimmons* and acknowledged that the government's "capacity to sue under ERISA advances important public interests." *Consultants*, 966 F.2d at 1090. And yet, the court in *Consultants* still "hesitate[d] to declare that laches can never be applied against the government in an ERISA case." *Id.* Further, the Court noted that part of the rationale for precluding application of laches against the government did not necessarily apply when the Secretary of Labor sued on behalf of private individuals. *See id.* ("[T]he concerns of sovereignty and separation of powers that are ordinarily said to prevent estopping the government may be misplaced in a case in which the government is suing not on its own behalf but as the representative of private interests."). The court therefore did not foreclose the prospect of asserting laches against the Secretary of Labor in an ERISA suit. *See id.*

The combination of the Supreme Court's decision in *Petrella* and the Seventh Circuit's decisions in *Fitzsimmons* and *Consultants* thus leaves a narrow opening for Defendant Evans to re-plead his laches defense. The public's interest in this suit may make it difficult to prevail on a laches defense, *see Fitzsimmons*, 805 F.2d at 693, and Evans may assert his defense only to bar

the Secretary's request for equitable relief, *see Petrella*, 134 S. Ct. at 1974, but the defense is not entirely unavailable. *See Consultants*, 966 F.2d at 1090. The Court therefore **GRANTS** Plaintiff's motion to strike this defense, but does so without prejudice to Evans' right to re-plead the defense in a way that is consistent with the above analysis.

### B.  Fourth Affirmative Defense

Evans' Fourth Affirmative Defense is that "Plaintiff has failed to mitigate or otherwise avoid its alleged damages." [Dkt. 26 at 4.] As described above, the failure to mitigate damages is not a legally valid defense against the Secretary's claims. *See State Street*, 772 F. Supp. 2d at 540; *see also Chao*, 2007 WL 4233464, at *9.

Evans attempts to save his failure-to-mitigate defense by distinguishing this case from *State Street*: there, Evans notes, "the plaintiff was a fiduciary of [the] retirement plans" at issue, and the "defendant was a manager of bond funds on behalf of the Plans and also a fiduciary." [Dkt. 35 at 7.] Here, in contrast, the plaintiff is the Secretary of Labor, who is not a fiduciary of the Plans. [*Id.*]

This distinction makes no difference. The court in *State Street* determined that "failure to mitigate" was not a valid defense when the plaintiff's own damages were not at issue. *See* 772 F. Supp. 2d at 540. It did *not* cabin this determination to situations in which the plaintiff was also a co-fiduciary with the defendant. *See id.* Thus, because the Secretary's damages are not at issue in this case, [*see, e.g.*, Dkt. 38 at 7], the reasoning of *State Street* applies, and that reasoning bars assertion of the failure-to-mitigate defense.

Moreover, the court in *Chao v. Wheeler*—as discussed above—specifically considered the defense of failure to mitigate in the context of a suit brought by the Secretary of Labor. 2007 WL 4233464, at *9. That court concluded that no authority supported such a defense and that

recognizing the defense would be inconsistent with the primary purpose of ERISA. *See id*. This case presents the same situation as *Chao*—a suit brought by the Secretary of Labor on behalf of plan beneficiaries and participants—and Evans has offered no argument for distinguishing this case from *Chao*. This Court thus also concludes that failure to mitigate is not a valid defense in this context, and the Court accordingly **GRANTS** Plaintiff's motion to strike this defense. Further, because the defense fails as a matter of law, the Court strikes the defense with prejudice. *See Hayes*, 2009 WL 891832, at *1.

### C. Fifth, Eighth, Tenth, and Eleventh Affirmative Defense

Evans' Fifth Affirmative Defense is that the "losses complained of [by] the Plaintiff were not caused by any fault, act or omission by Dr. Evans." [Dkt. 17 at 26.] His Eighth and Tenth Affirmative Defenses are that Evans' actions "[were] not taken in an ERISA fiduciary capacity" or, alternatively, that "Evans did not breach any ERISA fiduciary duty that he might have owed to the Plan." [*Id.* at 27] His Eleventh Affirmative Defense is that he "acted in good faith and did not induce, assist, participate in, or engage in, knowingly or unknowingly, any act or omission that constitutes a violation of ERISA, or that is otherwise unlawful." [*Id.*]The secretary contends that none of these defenses "meet[s] the Seventh Circuit's standard for affirmative defenses." [Dkt. 25 at 10.]

As noted above, a defense is an affirmative defense if the defendant bears the burden of proof or if the defense does not require controverting the plaintiff's proof. *See Winforge*, 691 F.3d at 872. Evans has alleged that his conduct did not cause any losses (fifth defense); that he had no fiduciary duty (eighth defense); and that he did not breach any fiduciary duty (tenth defense). [Dkt. 17 at 26-27.] Each of these elements is part of the Secretary's case in chief, such

that the Secretary bears the burden of proof. [*See* Dkt. at 11.] Hence, any denials that these elements have been satisfied are not appropriately pled as affirmative defenses.

In addition, the "defenses" merely repeat Evans' denials. He asserts lack of causation as a defense, but previously denied causation [*id.* at 24-25]; he asserts lack of duty as a defense, but previously denied a duty [*id.* at 10]; he asserts lack of breach as a defense, but previously denied any breach. [*Id.* at 3.] Finally, he asserts as a defense that he never violated ERISA, but he previously denied any such violations. [*Id.* at 25-26.] Hence, defenses five, eight, ten, and eleven "merely repeat [Evan's] denials of allegations contained in the complaint." *Sarkis' Cafe*, 2014 WL 3018002, at *4. They are therefore "not appropriately pleaded as affirmative defenses," and they may be stricken "with prejudice." *Hayes*, 2009 WL 891832, at *1; *see also Sarkis' Café*, 2014 WL 3018002, at *5. The Court thus **GRANTS** Plaintiff's motion to strike defenses five, eight, ten, and eleven with prejudice.

### D.  Ninth Affirmative Defense

Evans' Ninth Affirmative Defense is that "Plaintiff's attempt[s] to recover from Dr. Evans are barred or reduced to the extent Plaintiff has failed to join necessary or indispensable parties." [Dkt. 17 at 27.] Evans' contention is similar to PBI's previously evaluated argument: he claims that the Secretary seeks to "undo" the June 2009 stock transaction in a way that could prejudice the rights of individual shareholders who are not joined as parties to this action. [Dkt. 35 at 8.] As explained above, however, this argument misconstrues the nature of the Secretary's requested relief. The Secretary asks only that "Evans undo *his* sale of *his* shares to the ESOP," and adds that the relief would not affect "the other sales by the other shareholders." [Dkt. 38 at 5 (emphasis original).] As currently pled, then, Defendant's ninth defense is inapplicable to this action. The Court accordingly **GRANTS** Plaintiff's motion to dismiss this defense. The Court,

however, will do so without prejudice: Like PBI Bank, Evans may re-plead a failure-to-join defense so long as the defense is not predicated on the absence of the individual shareholders or a co-fiduciary.

### E. Twelfth Affirmative Defense

Evans' Twelfth Affirmative Defense is that "Plaintiff's claims are barred because those defendants who were ERISA fiduciaries acted in accordance with the terms of the Plan documents, the Trust Agreement, and ERISA." [Dkt. 17 at 28.] The Secretary argues this defense fails because "compliance with the terms of the Plan . . . is legally insufficient" to absolve Evans of liability. [Dkt. 25 at 11.]

ERISA requires that a fiduciary such as Evans "discharge his duties . . . in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter." 29 U.S.C. § 1104(a)(1)(D). "This subchapter" includes a requirement that the fiduciary act "with the care, skill, prudence, and diligence" of "a prudent man" in like circumstances. *Id.* § 1104(a)(1)(B). This duty of prudence, in turn," trumps the instructions of a plan document." *Fifth Third Bancorp v. Dudenhoeffer*, 134 S. Ct. 2459, 2468 (2014). Thus, insofar as Evans asserts that compliance with the plan documents can absolve him of liability, this defense fails as a matter of law.

In his response, Evans emphasizes that his twelfth defense claims that he acted in conformity with both the plan documents *and* ERISA. [Dkt. 35 at 4.] He thus claims that he does not intend to use compliance with the plan documents as a way to escape ERISA liability. [*Id.*]

Throughout his answer, however, Evans previously denied any violation of ERISA. [*See, e.g.*, Dkt. 17 at 1, 3, 6, 25.] Thus, to the extent that the twelfth defense does extend beyond the plan documents, it merely restates Evans' previous denials. Such restatements are not

appropriately pled as affirmative defenses, and the court may strike them with prejudice. *See Hayes*, 2009 WL 891832, at *1. Evan's twelfth defense is thus either legally insufficient (if it seeks to rely on the plan documents) or is not an appropriate affirmative defense (if it merely denies again any violation of ERISA), and the Court accordingly **GRANTS** Plaintiff's motion to strike this defense with prejudice.

### 3. Conclusion

For the reasons stated above, the Court **GRANTS** Plaintiff's Motion to Strike Defendant PBI Bank's Affirmative Defenses, [Dkt. 22], and Plaintiff's Motion to Strike Defendant Michael A. Evans's Affirmative Defenses. [Dkt. 24.] This order, however, shall not preclude PBI nor Evans from re-pleading any defenses that, as explained above, were stricken without prejudice.

Finally, after the motions to strike were fully briefed, PBI filed a Motion for Leave to File Amended Answer and Affirmative Defenses. [Dkt. 44.] That motion is hereby **DENIED**, without prejudice to its resubmission in compliance with this order. PBI and/or Evans shall file any motions to amend their answers in accordance with this order within fourteen (14) days of the date of this order.

Date: 02/04/2015

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Andrew M. McNeil
BOSE MCKINNEY & EVANS, LLP
amcneil@boselaw.com

Donald Marvin Meyer
BOSE MCKINNEY & EVANS, LLP
dmeyer@boselaw.com

John Zhi Huang
BOSE MCKINNEY & EVANS, LLP
jhuang@boselaw.com

Nelson D. Alexander
FROST BROWN TODD LLC
nalexander@fbtlaw.com

Bryan S. Strawbridge
FROST BROWN TODD LLC
bstrawbridge@fbtlaw.com

Brooke Eileen Worden
U.S. DEPARTMENT OF LABOR
worden.brooke.e@dol.gov

Bruce C. Canetti
U.S. DEPARTMENT OF LABOR
canetti.bruce@dol.gov

Jeffery Michael Hahn
U.S. DEPARTMENT OF LABOR
hahn.jeffrey.m@dol.gov

Jamila Beatrice Minnicks
U.S. DEPARTMENT OF LABOR, OFFICE OF THE SOLICITOR
minnicks.jamila@dol.gov

Michael Alan Schloss
U.S. DEPARTMENT OF LABOR, OFFICE OF THE SOLICITOR
schloss.michael@dol.gov