## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**THOMAS E. PEREZ**,                    :
Secretary of Labor,                    :
United States Department of Labor,     :
                                       :
            Plaintiff,                  :
                                       :
        v.                             :      Case No. 1:14-cv-01429-SEB-MJD
                                       :
**PBI BANK, INC., et al.,**            :
                                       :
            Defendants.                :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - --

### AGREED ORDER AND JUDGMENT

All parties have agreed to settle the matters in controversy in this civil action and agree to

the entry of this Agreed Order and Judgment ("Agreed Order") in accordance herein:

A.      Plaintiff Thomas E. Perez, Secretary of the United States Department of Labor

(the "Secretary"), and Defendants PBI Bank, Inc. ("PBI") and Michael A. Evans ("Evans")

(collectively "Defendants"), have agreed to settle the matters in controversy in this civil action

and consent to the entry of this Agreed Order in accordance herewith.

B.      The Secretary filed his complaint ("Complaint") against PBI, Evans, and the AIT

Laboratories Employee Stock Ownership Plan ("ESOP"),[1] on August 29, 2014, alleging that the

Defendants violated Title I of the Employee Retirement Income Security Act of 1974, 29 U.S.C.

§ 1001 et seq., as amended ("ERISA"), in connection with the purchase by the ESOP of stock of

AIT Holding Company ("AIT Holding") from Evans and others.

---

[1] The ESOP is named as a defendant herein pursuant to Rule 19(a) of the Federal Rules of Civil
Procedure solely to assure that complete relief can be granted.

C.      Evans and PBI filed an answer in response to the allegations made in the Complaint.

D.      Nothing in this Agreed Order shall be construed as an admission or denial by Evans or PBI of the allegations set forth in the Complaint.

E.      The Secretary and the Defendants wish to resolve all claims and issues between them arising from the matters alleged in the Complaint.

F.      This Agreed Order is the sole and complete agreement negotiated between the undersigned persons ("Parties").

G.      The Parties expressly acknowledge and represent that they have read this Agreed Order and understand its provisions, and the signatory on behalf of each Party expressly acknowledges and represents that he or she is authorized and empowered to execute this Agreed Order.

NOW, THEREFORE, in consideration of the mutual covenants and agreements recited herein, which the Parties acknowledge constitute valuable and sufficient consideration, the Parties agree as follows, and it is also hereby ORDERED, ADJUDGED, AND DECREED that:

1.      The Court has jurisdiction over the Parties and subject matter of this action and is empowered to provide the relief herein.

2.      PBI shall pay, or cause to be paid on its behalf, a total of $1,454,545.45 to the ESOP as set forth in this paragraph and paragraph 3:

(a)     Within ten (10) days after entry of this Agreed Order, PBI shall pay $214,545.45 to the ESOP.

(b)     Within fourteen (14) days after entry of this Agreed Order, PBI shall cause XL Specialty Insurance Company ("XL"), on behalf of and as insurer of PBI, to pay

2

$940,000.00, as the proceeds of insurance policy no. ELU128461-13 ("XL Policy Proceeds"), to the ESOP.

3.      Evans and AIT Holding have insurance coverage for the matters raised in the Secretary's complaint through Federal Insurance Company Policy 8235-1492 ("Chubb Policy"), a fiduciary liability insurance policy that (i) will pay losses to third parties (such as the ESOP) caused by alleged breaches of fiduciary duty by insureds, and (ii) will pay certain attorneys' fees and defense costs on behalf of insureds, but (iii) does not provide for payments to insureds (including AIT and Evans).  The proceeds of the Chubb Policy remaining as of the date of this Agreed Order ("Chubb Policy Proceeds") shall be distributed as follows:

(a)      As of the date of this Agreed Order, Federal Insurance Company, on behalf of and as insurer of Evans and AIT Holding, has already paid the Chubb Policy Proceeds to Faegre Baker Daniels LLP ("Faegre"), counsel for AIT Holding, to be held in trust by Faegre until the funds are disbursed to satisfy claims against the Chubb Policy, in the manner allowed by this Agreed Order.

(b)      Within ten (10) days after the entry of this Order, AIT Holding and Evans shall cause Faegre to pay $300,000.00 from the Chubb Policy Proceeds to PBI.

(c)      Within five (5) days of receipt of the payment from Faegre, PBI shall pay the $300,000.00 of the Chubb Policy Proceeds to the ESOP.

(d)      Faegre shall distribute the Chubb Policy Proceeds remaining after the $300,000 payment to PBI as AIT and Evans agree, to cover their respective attorneys' fees and costs.    These payments will exhaust the Chubb Policy Proceeds.

(e)      AIT Holding or Faegre will give an accounting of the Chubb Policy Proceeds to L. Joe Rivers, EBSA Regional Director, at the Cincinnati Regional Office, 1885

Dixie Hwy, Ste. 210, Ft. Wright, Kentucky 41011-2664, rivers.joe@dol.gov

("EBSA Regional Director") at the time all of the proceeds have dissipated.

4.      Ace American Insurance Company ("ACE") insured AIT Holding and Evans pursuant to an excess policy, policy no. DOX G25575866001 ("ACE Policy").  Within thirty (30) days after entry of this Agreed Order, Evans shall cause ACE, on behalf of and as the insurer of Evans, to pay $2,018,130.99 from the ACE Policy to Bose McKinney & Evans LLP ("Bose") Client Trust Account.  As soon as reasonably practicable to do so (namely, once Bose confirms the funds from the ACE payment have cleared), but no later than fifteen (15) days after receipt of this payment by Bose, Evans shall cause Bose to pay $2,018,130.99 to the ESOP.

5.      Within ten (10) days after entry of this Agreed Order, AIT Holding shall issue additional common stock of AIT Holding, with voting and distribution rights that are equal to the highest class of stock of AIT Holding, free and clear of any liens, interests or encumbrances, to the ESOP in an amount of 4,623,987 shares, sufficient to provide the ESOP with a total ownership percentage of 38.42% of the authorized shares of common stock of AIT Holding on a fully diluted basis and leave Evans with a total ownership percentage of fifty-one percent (51%) of the authorized shares of common stock of AIT Holding on a fully diluted basis.  AIT Holding shall not authorize more than 15,000,000 shares to be issued. No officer, director, or existing shareholder shall be issued any new shares of any class of stock in AIT Holding, except pursuant to an existing stock option agreement, unless the ESOP also receives additional shares on a proportionate basis so that the ESOP shall remain at least a 38.42% owner of AIT Holding stock with full voting and distribution rights on a fully diluted basis. However, if the ESOP, through no direct or indirect participation or inducement by Evans, distributes or otherwise sells AIT Holding stock and that distribution or sale causes the ESOP to own less than 38.42 percent of

4

AIT Holding stock, the parties acknowledge that the ESOP shall not be entitled to receive new shares on a proportionate basis with respect to the AIT Holding stock distributed or sold by the ESOP and the ESOP's ownership percentage shall decrease from 38.42 percent.

6.      The payments to the ESOP required by this Agreed Order, and any prior settlement agreements related to this litigation, are for the sole benefit of ESOP participants (including current and former participants) whose accounts were allocated shares between July 1, 2009, and the date of entry of this Agreed Order.  The ESOP shall allocate the payments required by this Agreed Order, and any prior settlement agreements related to this litigation, to each participant in the ESOP in proportion to the number of shares that were released from the ESOP suspense account and allocated to each participant between July 1, 2009, and the date of entry of the Agreed Order except that neither Evans, Todd Pederson, Eric Orme, or Ronald Thieme, shall receive any allocation of payments made to the ESOP under this Agreed Order.  To enable the trustee of the ESOP to fulfill its payment allocation obligations under this paragraph of the Agreed Order, the ESOP trustee will obtain from AIT Holding the required allocation calculation.  These payments shall not replace or be paid in lieu of a contribution to the ESOP by AIT Holding for any plan year.

7.      Evans agrees that he will not sell his remaining stock in AIT Holding unless the purchaser agrees to purchase the ESOP's stock at an equal per share value, subject to the ESOP trustee's right to waive this provision.  If, subsequent to the entry of this Agreed Order, Evans agrees to sell any portion of his remaining stock in AIT Holding, Evans will notify the ESOP's trustee of any such sale within five (5) days of the sale.  Within five (5) days of receiving the proceeds of any such sale, Evans shall pay over to the ESOP the amount of his share of the proceeds necessary to cause the ESOP to receive the financial benefit as if it had owned 51% of

the common stock of AIT Holding outstanding at the time of the sale, provided however that if the ESOP, through no direct or indirect participation or inducement by Evans, has previously distributed or sold any shares from the ESOP's holdings of AIT Holding stock that caused the ESOP to own less than 38.42 percent of AIT Holding stock, the amount payable by Evans under this provision shall be reduced proportionately for the amount by which the ESOP's holdings of AIT Holding stock was reduced through such redemption by the ESOP.

8.      If there is any proposed acquisition or sale of AIT Holding stock by the ESOP or any proposed plan termination, Evans shall notify and provide all documents associated with the proposal to the EBSA Regional Director within five (5) days of any such proposal.  This paragraph shall not apply to any benefit distributions.

9.      The payments described herein that are due to the ESOP shall be made by certified check or wire transfer.  Within ten (10) days of making, or causing any insurer to make, the payments to the ESOP Trust described herein, PBI, Evans, and AIT Holding shall provide documentation to the EBSA Regional Director, sufficient to demonstrate that each has made, or caused to be made, such payments to the ESOP Trust and that such payments were received by the ESOP Trust.

10.     Contemporaneously with the execution of this Agreed Order, Evans and WWSD, WFTOXI2, and IAD (collectively, "Real Estate Affiliates") shall execute a non-recourse note ("Non-Recourse Note") in a form attached hereto as Exhibit A. The Non-Recourse Note shall evidence a debt to the ESOP in an amount equal to the lesser of: (a) $5,900,000.00; or (b) the proceeds realized from the sale of the Properties, described in paragraph 11, that remain after payment of the indebtedness secured by the First and Second Mortgages, described in paragraph 12 ("Senior Indebtedness").  Should no proceeds remain from the sale of the Properties after the

6

payment of the Senior Indebtedness in full, no amount shall be payable to the ESOP on the Non-Recourse Note, and the Non-Recourse Note shall be cancelled. The Secretary acknowledges that the sale of the Properties is subject to that certain March 4, 2016 AIT Forbearance Agreement, that pursuant to the AIT Forbearance Agreement, Fifth Third must approve the sale price of any of the Properties, and that after a date certain Fifth Third, under certain conditions, may cause the Properties to be sold through an auction process.

11.     Contemporaneously with the execution of this Agreed Order, Evans will cause the Real Estate Affiliates to execute the mortgages (collectively, "Third Mortgages") in the form attached hereto as Exhibits B-1, B-2, and B-3, which Third Mortgages shall encumber the properties listed below and shall secure the Non-Recourse Note.  The Third Mortgages will be subordinate in all respects to the first mortgages in favor of Fifth Third Bank and the second mortgages in favor of Bankers Life and Casualty Company and Washington National Insurance Company and encumber the following properties (collectively, "Properties"):

**Property 1**:    That certain real property owned by WWSD with a street address of 6139 W. 79th Street, Indianapolis, Indiana 46278.

**Property 2**:    Those certain real properties owned by IAD, with a street address of 7840 Innovation Drive, Indianapolis, IN 46278.

**Property 3**:    That certain real property owned by WFTOXI2 with a street address of 2265 Executive Drive, Indianapolis, IN 46241.

Within five (5) days after the sale or transfer of any of these Properties, Evans shall provide documents showing the details of the sale to the EBSA Regional Director.

12.     The Third Mortgages shall grant a security interest in the Properties and fixtures located thereon, shall assign the leases and rents derived therefrom, and shall be junior in priority

only to the following: (1) those certain Real Estate Mortgage, Security Agreement, Assignment of Leases and Rents and Fixture Filings in favor of Fifth Third Bank and recorded in the property records of Marion County, Indiana, on October 10, 2013, as instruments A201300124746 (WWSD), A201300124748 (IAD Fee), A201300124749 (IAD leasehold), and A201300124753 (WFTOXI2) (collectively, the "First Mortgages"); and  (2) those certain mortgages in favor of Bankers Life and Casualty Company and Washington National Insurance Company to secure certain Promissory Notes, each dated October 2, 2013, from Evans in the principal amount of $1,875,000.00 and $5,625,000.00, copies of which have previously been provided to the Secretary (collectively, the "Second Mortgages"). The Third Mortgages shall provide that the ESOP Trust agrees to release the Third Mortgages upon any sale of the Properties approved by the holder of the First Mortgages and holder of the Second Mortgages.

13.     Within five (5) business days of entry of this Agreed Order, Evans shall record the Third Mortgages (Exhibits B-1, B-2, and B-3) in the land records of Marion County, Indiana. Within ten (10) business days of the entry of this Agreed Order, Evans shall provide date-stamped copies of the filed Third Mortgages to the EBSA Regional Director.  If Evans fails to record the Third Mortgages within five (5) business days of the Agreed Order, the release provided to him by the Secretary in paragraph 25 of this Agreed Order shall be null and void.

14.     Within ten (10) days of the entry of this Agreed Order, Evans shall modify the Amended and Restated Term Note, dated October 2, 2013, from AIT Holding to Evans in the amount of $14,000,000.00 (the "AIT Holding Note"), as follows:

(a)     The total outstanding indebtedness of AIT Holding under the AIT Holding Note shall be restated to reflect a purchase price adjustment so that the note shall be

$7,500,000.00 in principal, to be allocated between Tranche I and Tranche II of the AIT Holding Note, as set forth in paragraphs 14(b) and 14(c), below.

(b)     The total outstanding indebtedness under Tranche I, as set forth in paragraph 2 of the AIT Holding Note, shall be restated to a principal amount and total debt amount of $500,000.00.

(c)     The total outstanding indebtedness under Tranche II, as set forth in paragraph 3 of the AIT Holding Note, shall be restated to a principal amount and total debt amount of $7,000,000.00.

Within five (5) days of the modifications herein, Evans shall provide documents demonstrating the modifications have been made to the EBSA Regional Director.

15.     The Secretary hereby assesses a penalty under ERISA § 502(l), 29 U.S.C. § 1132(l), of 20% of each "applicable recovery amount" as defined in ERISA § 502(l)(2), 29 U.S.C. § 1132(l)(2) ("502(l) Penalty") paid pursuant to this Agreed Order.  However, the parties have entered into a compromise of said penalty, reducing the amount of the penalty payable pursuant to ERISA § 502(l) by 50% for the applicable recovery amounts set forth in paragraphs 2, 3, 4 and 5.  Therefore, the Secretary hereby does and will accept, as full satisfaction of the assessed 502(l) Penalty for paragraphs 2, 3, 4, and 5 as follows:

(a)     Within ten (10) days after entry of this Agreed Order, PBI shall pay $145,454.55 to the Secretary, which represents 10% of the amounts payable by PBI under Paragraph 2.

(b)     Within thirty (30) days after entry of this Agreed Order, Evans shall cause ACE to pay $231,869.01 to the Bose Client Trust Account. No later than fifteen (15) days after receipt of this payment by Bose and sooner if reasonably practicable to do so

(namely, once Bose confirms the funds from the ACE payment have cleared),

Evans shall cause Bose to pay $231,869.01 to the Secretary, which represents

10% of the amount payable under Paragraphs 4 and 5.

16.     With respect to all 502(l) Penalties assessed or paid pursuant to paragraphs 2, 3, 4,

and 5 of this Agreed Order, Defendants agree to waive the notice of assessment and service

requirement of 29 C.F.R. 2570.83, and waive all legal rights to appeal, contest, or seek a further

reduction of those assessments or payments.

17.     The 502(l) Penalty payments described herein that are due to the Secretary shall

be paid via regular mail to the following address:

> U.S. Department of Labor
> ERISA Civil Penalty
> P.O. Box 71360
> Philadelphia, PA 19176-1360.

The check shall be made payable to the United States Department of Labor and will reference

EBSA Case No. 43-007418(48).  If Defendants wish to remit a check by commercial express

courier or wire transfer, they agree to contact Soroosh Nikouei at the Department of Labor,

(nikouei.soroosh@dol.gov or 202-693-8468) and follow his instructions.

18.     For any potential payments to the ESOP pursuant to any other paragraphs, except

for paragraphs 2, 3, 4, and 5, the Secretary shall assess a penalty at the time of any such

payments in accordance with ERISA § 502(l), 29 U.S.C. § 1132(l), and Evans preserves his right

to seek a waiver or reduction under the statute at the time of notice of such assessment.

19.     Other than as set forth herein and in exchange for the payments set forth herein

neither Evans nor PBI shall seek or receive indemnification from the ESOP, AIT Holding

Company, Inc., American Institute of Toxicology, Inc. d/b/a AIT Laboratories, AIT Bioscience,

LLC, or Evans for any payment required by this Agreed Order or for any other amounts

10

including, but not limited to, attorney's fees, costs and expenses relating to the Secretary's Complaint and/or any litigation, investigation or other activity related thereto, except that Evans may maintain a claim for indemnification for expert and attorneys' fees and expenses for the Chubb Policy Proceeds remaining after the payment to PBI of $300,000 as required herein in paragraph 3.

20.     If the payments and transfers detailed above are not made by or on behalf of one or more of the Defendants: (a) the paying Defendant(s) shall remain settled and released in accordance with the terms of this Order; (b) all non-paying Defendant(s) waive all rights they may have against the paying Defendant(s) for contribution and indemnity; and (c) the Secretary may proceed to enforce this Agreed Order against the non-paying Defendant(s) as if it were a final judgment.

21.     If the Court does not enter this Order, this Agreement will become void and the Parties may proceed with litigation of the Action as if they had never executed this document.

22.     AIT Holding and Evans will not receive, as a participant in or beneficiary of the ESOP or otherwise, any share of the benefit of the monies, stock, or property interests received by the ESOP pursuant to this Agreed Order or any other settlement entered into between the Secretary, on one hand, and AIT Holding, Evans, PBI, Ronald H. Thieme, Todd Pedersen, and/or Eric A. Orme, on the other hand.

23.     Evans shall not take any action, as an officer or shareholder of AIT Holding or an affiliate, to cause the monies, stock, or property interests received by the ESOP, or interest earned on said property, pursuant to this Agreed Order or any other settlement entered into between the Secretary, on one hand, and Evans, PBI, Ronald H. Thieme, Todd Pedersen, and/or

Eric A. Orme, on the other hand, or the proceeds therefrom, to be used to make payments on any indebtedness of the ESOP to AIT Holding or acquire AIT Holding securities.

24.     Evans is hereby enjoined and restrained from serving as a fiduciary of, or service provider to, any ERISA-covered employee benefit plan.  Specifically, Evans is hereby enjoined and restrained from directly or indirectly, individually or through any entity or any other person: (a) serving or acting, for compensation or otherwise, as a fiduciary, service provider, administrator, officer, trustee, custodian, counsel, agent, employee or representative in any capacity to any employee benefit plan covered by ERISA; (b) serving or acting, for compensation or otherwise, as a consultant or adviser to any employee benefit plan covered by ERISA or to any entity whose activities include the provision of goods or services to any employee benefit plan covered by ERISA; (c) serving or acting, for compensation or otherwise, in any capacity that involves decision making authority or custody or control of the monies, funds, assets or property of any employee benefit plan covered by ERISA; and (d) selling, promoting, marketing, or providing any product or service to, making any recommendation to, or bringing any product, service or investment to the attention of, any employee benefit plan covered by ERISA or to any person acting on behalf of such plan, or facilitating or encouraging any expenditure or investment by any employee benefit plan covered by ERISA.  However, Evans is not otherwise precluded from participating in any ERISA plan as a participant or beneficiary.

25.     <u>Release of PBI and Evans</u>.  Upon completion and receipt of the payments outlined herein and completion of the future payments and other acts required to be performed by PBI and Evans, as outlined herein, the Secretary expressly waives, releases, and forever discharges all claims asserted against PBI and/or Evans, or their successors in interest, in the complaint filed in

this action.  Notwithstanding the foregoing sentence, nothing in this Agreed Order shall be deemed to waive any claim relating to the obligations set forth in this Agreed Order.  The Secretary expressly preserves any claims that he may have against any other person or entity other than PBI and Evans.

26.    Release of Secretary.  PBI and Evans each expressly waive, release and forever discharge any and all claims that they have or may have against the Secretary, or any of his agents, attorneys, employees, or representatives, relating to, arising out of or in connection with the investigation and litigation of the claims and the settlement relating thereto.  In particular, the Defendants each expressly waive any and all claims under the Equal Access to Justice Act (Pub. Law No. 96-481 [1980], reenacted at Pub. Law No. 99-80 [1985] and amended at Pub. Law No. 104-121 [1996]) which they have or may have against the Secretary or any of his agents, attorneys, employees, or representatives, relating to, arising out of or in connection with the investigation or litigation of the claims and the settlement relating thereto.

27.    This Agreed Order constitutes the entire agreement of the Parties relating in any way to the Secretary's Complaint and the settlement thereof, expressly superseding any and all prior discussions, promises, commitments, representations, assurances or agreements of any kind or nature.  This Agreed Order may only be amended in writing, signed by all of the Parties.

28.    Each Party represents and warrants that he or it has not assigned all or part of any claim, demand, debt, or cause of action of any kind or nature released in this Agreed Order to any other person or third-party prior to executing this Agreed Order.

29.     This Agreed Order shall be binding on, and shall inure to the benefit of, the Parties, as well as their successors and assigns.  This Agreed Order shall not be binding on any governmental agency other than the United States Department of Labor.

30.     Each Party shall bear his or its own costs and expenses, including attorneys' and other professional fees, incurred in the investigation and resolution of the Secretary's Complaint and the settlement relating thereto.

31.     By entering into this Agreed Order, each Party represents that he or it has been informed by legal counsel of the effect and purpose of this Agreed Order and agrees to be bound by its terms.

32.     This Agreed Order may be executed in counterparts, each of which shall be deemed to be an original, but all of which, taken together, shall constitute one and the same instrument.

33.     This Court shall retain jurisdiction over the Parties and subject matter of this action for the purpose of enforcing and/or interpreting the terms of this Order.

34.     The Court finds that there is no just reason to delay the entry of this Agreed Order and, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, expressly directs the entry thereof as a Final Order and Judgment.

SO ORDERED.

Date: 5/24/2016

_____
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

14

The Parties hereby consent to the entry of this Agreed Order:


FOR THE SECRETARY:

By:  M. PATRICIA SMITH                    Dated: 5/13/2016
     Solicitor of Labor


     G. WILLIAM SCOTT
     Associate Solicitor
     Plan Benefits Security Division


     CHRISTINE Z. HERI
     Regional Solicitor, Chicago


      /s/ D. Marc Sarata
     Jeffery M. Hahn
     D. Marc Sarata
     U.S. DEPARTMENT OF LABOR
     200 Constitution Avenue NW, Room N-4611
     Washington, D.C.  20210
     Telephone: 202-693-5695
     Fax: 202-693-5610
     hahn.jeffrey.m@dol.gov
     sarata.d.marc@dol.gov

     and

     Bruce C. Canetti
     Brooke E. Worden
     U.S. DEPARTMENT OF LABOR
     230 S. Dearborn Street, Room 844
     Chicago, IL  60604
     Telephone: 312-353-3271
     Fax: 312-353-5698
     canetti.bruce@dol.gov
     worden.brooke.e@dol.gov

     *Attorneys for Plaintiff Thomas Perez,*
     *Secretary of the U.S. Department of Labor*

FOR PBI BANK, INC.:

By: /s/ Stephanie R. Renner by D. Marc Sarata by written permission (see attached)       Dated: 5/12/2016

Its _____


DR. MICHAEL EVANS

/s/ Dr. Michael Evans by D. Marc Sarata by written permission (see attached)       Dated: 5/12/2016

Dr. Michael Evans


AIT HOLDING COMPANY

By: /s/ Philip J. Gutwein by D. Marc Sarata by written permission (see attached)       Dated: 5/12/2016

Its _____


AIT LABORATORIES EMPLOYEE STOCK OWNERSHIP PLAN

By: /s/ David Williams by D. Marc Sarata by written permission (see attached)       Dated: 5/12/2016

Its _____

FOR PBI BANK, INC.:

By _____                Dated: 5/12/16

Its SVP, General Counsel


DR. MICHAEL EVANS

_____                Dated: _____
Dr. Michael Evans


AIT HOLDING COMPANY

By: _____            Dated: _____

Its _____


AIT LABORATORIES EMPLOYEE STOCK OWNERSHIP PLAN

By: _____            Dated: _____

Its _____

FOR PBI BANK, INC.:


By: _____          Dated: _____

Its _____



DR. MICHAEL EVANS

_____              Dated: 5/12/16
Dr. Michael Evans



AIT HOLDING COMPANY


By: _____          Dated: _____

Its _____


AIT LABORATORIES EMPLOYEE STOCK OWNERSHIP PLAN


By: _____          Dated: _____

Its _____

FOR PBI BANK, INC.:

By: _____          Dated: _____

Its _____

DR. MICHAEL EVANS

_____          Dated: _____
Dr. Michael Evans

AIT HOLDING COMPANY

By: _____          Dated: 5/12/16

Its _Counsel_____

AIT LABORATORIES EMPLOYEE STOCK OWNERSHIP PLAN

By: _____          Dated: _____

Its _____

FOR PBI BANK, INC.:

By: _____          Dated: _____

Its _____


DR. MICHAEL EVANS

_____          Dated: _____
Dr. Michael Evans


AIT HOLDING COMPANY

By: _____          Dated: _____

Its _____


AIT LABORATORIES EMPLOYEE STOCK OWNERSHIP PLAN

Argent Trust Company
By: David H. Williams          Dated: 5/12/16

Its Executive Vice President

16

# EXHIBIT A

## NON-RECOURSE PROMISSORY NOTE

Principal: $5,900,000.00 or
          the Net Sale Proceeds of the
          Collateral, whichever is less

Dated: May _12_, 2016
Maturity Date: the date all of the
             Collateral is sold

1. <u>Agreement to Pay</u>.  Dr. Michael A. Evans, West Washington Street Development, LLC, IAD, Inc., Indianapolis Airport Development, LLC, WFTOXI2, LLC (collectively, "Maker") hereby promises to pay to the order of AIT Laboratories Employee Stock Ownership Plan ("Holder"), the principal sum of Five Million Nine Hundred Thousand Dollars $5,900,000.00, or the Net Sale Proceeds of the Collateral, whichever is less, together with all additional sums that may become due and payable under the terms set forth in this note ("Note").

2. <u>Consideration Received by Maker</u>.  This Note evidences the obligation of Maker under the Agreed Order and Judgment entered in *United States Department of Labor v. PBI Bank, Inc., et al.*, Case No. 1:14-cv-01429-SEB-MJD ("Agreed Order").

3. <u>Non-Recourse</u>.  This Note shall be non-recourse as to Maker or Maker's assets other than the Collateral, <u>except</u> to the extent of any loss, liabilities, damages, costs or expenses, including attorneys' fees, incurred by Holder as a direct result of Maker's actions taken after the date hereof causing (i) waste to the Collateral, (ii) fraud, or misrepresentation to Holder in any material respect, (iii) misapplication of Net Sale Proceeds, condemnation proceeds or insurance proceeds relating to the Collateral, (iv) the presence of any hazardous, contaminated or toxic materials, wastes or substances on the Collateral, (v) the failure by Maker to pay any taxes, assessments or insurance premiums due with respect to the Collateral, (vi) the breach of any covenant, representation or warranty of title made by Maker in this Note or the Third Mortgages, and/or (vii) the removal of fixtures or personalty from the Collateral to the extent not replaced by comparable fixtures and personalty of equal or greater value.  <u>In such cases Maker shall be personally liable for such loss, liabilities, damages, costs, and expenses, notwithstanding any contrary provision in this Note</u>.

4. <u>Maturity Date</u>.  This Note shall be due and payable in full on the date all of the Collateral is sold (the "Maturity Date").

5. <u>Payments</u>.  No payments are required on this Note unless and until (a) any of the Collateral is sold and (b) there are net sale proceeds from such sale remaining after the payment in full of (i) the first mortgages on such Collateral in favor of Fifth Third Bank ("First Mortgages"), (ii) the second mortgages on such Collateral in favor of Bankers Life and Casualty Company and Washington National Insurance Company ("Second Mortgages"), (iii) Maker's reasonable attorneys' fees incurred in connection with the sale of the Collateral, and (iv) normal and customary closing costs payable by a seller (such remaining net sale proceeds, if any, in an amount not to exceed $5,900,000.00, are referred to herein as the "Net Sale Proceeds").  The Net Sale Proceeds, if any, shall be payable to Holder at the closing on the sale of any of the Collateral.  Once all of the

Collateral has been sold and all Net Sale Proceeds, if any, have been paid to Holder, this Note shall be deemed paid and satisfied in full.

6.  Prepayment.  Maker may prepay the indebtedness due under this Note, in whole or in part, at any time and from time to time, without notice or penalty.

7.  Interest Rate.  Prior to the Maturity Date, and in the absence of a Default or Acceleration, interest shall not accrue on the principal amount outstanding.  After the Maturity Date, Acceleration as set forth herein, or any event causing the principal to become due and payable, all outstanding principal shall incur interest at the rate of eight percent (8.0%) per annum.

8.  Application of Payments.  Prior to a Default under this Note, all payments hereunder shall be applied first to outstanding principal amounts due.  After a Default, has occurred, payments may be applied by Holder in such order as Holder shall determine, in its sole discretion, to accrued interest, outstanding principal amounts due, or any other amounts due under this Note.

9.  Collateral.  This Note is secured by the third priority mortgages ("Third Mortgages") executed contemporaneously with this Note, and as may be hereafter amended by Holder and Maker, by West Washington Street Development, LLC; Indianapolis Airport Development, LLC; and WFTOXI2, LLC ("Companies") , granting a security interest to Holder in certain properties owned by the Companies and located at 6139 W. 79th Street, Indianapolis, Indiana 46278, 7840 Innovation Drive, Indianapolis, IN 46278 and 2265 Executive Drive, Indianapolis, IN 46241 (collectively, the "Properties"), and described with more particularity in the Third Mortgages.  The Properties are referred to herein as "Collateral."  The Third Mortgages are junior and subordinate in all respects to the First Mortgages and Second Mortgages.

10.  Events of Default.  Any of the following events, without notice or demand of any kind, shall be a default ("Default") by the Maker under the terms of this Note:

    (a)   Failure to pay any amount when due under the terms of this Note;
    (b)   Violation of, breach of, or failure to comply with the terms of this Note; and
    (c)   Violation of, breach of, failure to comply with, or default under the terms of any of the Third Mortgages.

11.  Acceleration.  At the election of the Holder, and without notice, the principal balance remaining unpaid under this Note, all unpaid interest accrued thereon, and any other amounts due under this Note, shall be accelerated and become immediately due and payable upon the occurrence of any Default.

12.  Reservation of Remedies.  The rights, remedies, and powers of the Holder, as set forth in this Note and provided under applicable law, are cumulative and concurrent, and may be pursued singly, successively, or together against Maker, any guarantor or co-obligor, and/or the Collateral, at the sole discretion of the Holder.  Failure to exercise any right or

2

remedy set forth in this Note shall not constitute a waiver of the right to exercise any rights under this Note or otherwise as to any existing or subsequent Default.  Holder shall not be deemed to have waived any of Holder's rights, remedies, or powers under this Note unless such waiver is in writing, signed by the Holder.

13.   <u>Attorneys' Fees</u>.  If any suit or action is instituted, or any efforts are taken to collect on the indebtedness evidenced by this Note, or as a result of any Default, then Maker promises and agrees to pay, as an amount due and payable under this Note, all costs incurred by Holder, including but not limited to reasonable attorneys' fees, court costs, and fees.

14.   <u>Waiver of Rights</u>.  Maker hereby:

   (a)   Waives and renounces any and all homestead, redemption, and exemption rights and the benefit of all valuation and appraisement privileges against the indebtedness evidenced by this Note;

   (b)   Waives and renounces presentment and demand for payment, notices of nonpayment and of dishonor, protest of dishonor, and notice of protest;

   (c)   Waives and renounces any and all notices in connection with the delivery and acceptance of this Note and all other notices in connection with the performance, default, or enforcement of the payment of the indebtedness;

   (d)   Waives any and all lack of diligence and delays in the enforcement of this Note;

   (e)   Agrees that the liability of Maker shall be unconditional, to the extent set forth in this Note, and without regard to the liability of any other person or entity for the payment hereof, and shall not be affected by any indulgence or forbearance granted by or consented to by Holder to any such person or entity;

   (f)   Consents to any and all extensions of time, renewals, waivers, or modifications that may be granted by Holder with respect to the payment of the indebtedness under this Note, in part or in whole;

   (g)   Consents to the release of any person or entity who may be or become liable for payment of the indebtedness under this Note;

   (h)   Consents to the addition of any and all other makers, endorsers, guarantors, and obligors for performance of the obligations under this Note, and agrees that the addition of any such person or entity, or the addition of additional collateral as security for this Note, shall not affect the liability of any maker, endorser, guarantor, or other obligor now liable for all or a portion of the obligations under this Note; and

   (i)   Waives every present defense, cause of action, counterclaim, setoff, and offset which Maker may now have to any action to enforce this Note.

15.   <u>Successors</u>.  The obligations and liability of Maker under this Note shall be binding upon and enforceable against Maker and his successors or assigns.  The Note shall inure to the benefit of and may be enforced by Holder and its successors and assigns.

16.   <u>Assignment</u>.  Maker shall not assign Maker's interest and obligations under this Note, either voluntarily or by operation of law, without prior written consent of Holder or its

successors or assigns.  Holder may at any time transfer and/or assign its rights in this Note and/or the Collateral and thereafter Holder will be relieved from all liability with respect to such Note and/or Collateral transferred.

17. <u>Severability</u>:  If any term of this Agreement is to any extent invalid, illegal, or incapable of being enforced, such term shall be excluded to the extent of such invalidity, illegality, or unenforceability and all other terms hereof shall remain in full force and effect.

18. <u>Choice of Law</u>.  This Note shall be deemed to have been made under and shall be governed by the laws of the State of Indiana, without regard to its conflicts of laws principles.

19. <u>JURY WAIVER</u>.  MAKER HEREBY VOLUNTARILY, KNOWINGLY, IRREVOCABLY, AND UNCONDITIONALLY WAIVES ANY RIGHT TO A JURY TRIAL IN RELATION TO ANY DISPUTE (WHETHER BASED ON CONTRACT, TORT, OR OTHERWISE) BETWEEN MAKER AND HOLDER ARISING OUT OF OR IN ANY WAY RELATED TO THIS NOTE AND/OR THE LOAN.  THIS PROVISION IS A MATERIAL INDUCEMENT TO HOLDER TO EXTEND THE CREDIT DESCRIBED HEREIN.

20. <u>Jurisdiction and Venue</u>.  Maker stipulates and agrees that jurisdiction and venue for any court proceeding in relation to any dispute arising out of or in any way related to this Note shall be proper in the state courts sitting in Marion County, Indiana and/or the U.S. District Court for the Southern District of Indiana, without prejudice to the Holder's right to bring suit in any other appropriate jurisdiction and venue.

IN WITNESS WHEREOF, Maker has executed and delivered this Note as of the date set forth below.

5/12/16
_____
Date

_____
DR. MICHAEL A. EVANS

4

# EXHIBIT B-1

**THIRD REAL ESTATE MORTGAGE, SECURITY AGREEMENT,
ASSIGNMENT OF LEASES AND RENTS AND FIXTURE FILING**

FOR PURPOSES OF THE SECURITY AGREEMENT AND FIXTURE FILING
CONTAINED IN THIS INSTRUMENT
THE "SECURED PARTY" AND THE "DEBTOR" AND THEIR RESPECTIVE
ADDRESSES ARE AS FOLLOWS:

SECURED PARTY:          AIT Holding Company Employee Stock Ownership Plan
                        2265 Executive Drive
                        Indianapolis, Indiana  46241

DEBTOR:                 West Washington Street Development, LLC
                        7840 Innovation Drive
                        Indianapolis, Indiana  46278

COMMON ADDRESS
OF REAL ESTATE:         6139 W. 79th Street
                        Indianapolis, Indiana 46278

THE ADDRESS OF THE SECURED PARTY SHOWN ABOVE IS THE ADDRESS
AT WHICH INFORMATION CONCERNING THE SECURED PARTY'S SECURITY
INTEREST MAY BE OBTAINED.

THIS MORTGAGE WITNESSETH, That West Washington Street Development, LLC,
an Indiana limited liability company ("Mortgagor"), MORTGAGES AND WARRANTS UNTO
AIT Holding Company Employee Stock Ownership Plan (the "Mortgagee"), the real estate
located in Marion County, Indiana which is more particularly described in **Attachment A**,
attached hereto and incorporated herein, together with all improvements, structures and buildings
now or hereafter located thereon ("Real Estate"),

TOGETHER WITH all tenements, hereditaments, rights, privileges, interests, easements and
appurtenances belonging to or in any way appertaining to such Real Estate, and all rents, issues,
income and profits thereof, and all fixtures, appliances, apparatus, equipment or articles now or

2997464

hereafter situated on or used in connection with such Real Estate and owned by Mortgagor including, but not in limitation of the preceding, all gas, water and electric fixtures, radiators, heaters, engines and machinery, boilers, ranges, elevators and motors, plumbing and heating fixtures, water heaters, air conditioning apparatus and units, refrigerating equipment, refrigerators, cooking apparatus, window screens, awnings, storm sash, doors and carpeting (which are or shall be attached to said building, structures or improvements), partitions, equipment, personal property of every kind and nature whatsoever now or hereafter owned by Mortgagor and located in, on or about, or used in connection with the Real Estate, whether physically attached to the Real Estate or not, (hereinafter collectively referred to as the "Chattel Property") and it is agreed that all similar fixtures, appliances, apparatus, equipment or articles hereafter placed on such Real Estate by Mortgagor, and owned by Mortgagor, their successors or assigns, including all replacements or substitutions therefor, shall be considered as constituting part of such Chattel Property all to the use and benefit of Mortgagee, its successors and assigns, and Mortgagor transfers and grants to Mortgagee a security interest in all such Chattel Property now or hereafter owned by Mortgagor and located upon the Mortgaged Premises and all personal property of Mortgagor which is described in Section 13 hereinbelow. For purposes of this Mortgage, the Real Estate and Chattel Property shall be collectively referred to as the "Mortgaged Premises".

**Mortgagor and Mortgagee acknowledge that Fifth Third Bank ("First Lender") has an existing first mortgage ("First Mortgage") on the Mortgaged Premises, and that Bankers Life and Casualty Company and Washington National Insurance Company (collectively, "Second Lender", and together with First Lender the "Senior Lenders") has an existing second mortgage ("Second Mortgage", and together with the First Mortgage the "Senior Mortgages") on the Mortgaged Premises. Notwithstanding anything in this Mortgage to the contrary, Mortgagor and Mortgagee agree that the Senior Mortgages are permitted encumbrances on the Mortgaged Premises and that the Senior Mortgages shall have priority over the Mortgage. In the event of any conflict between the terms of this Mortgage and the Senior Mortgages, the terms of the Senior Mortgages shall control. Mortgagee will release this Mortgage upon a sale of the Mortgaged Premises that is approved by (i) the First Lender, if the First Mortgage is still of record, or (ii) the Second Lender, if the First Mortgage is no longer of record.**

MORTGAGOR HEREBY COVENANTS AND AGREES AS FOLLOWS:

1.  Security. This Mortgage is given as security for the following:

(a)  Mortgagor's performance of the covenants contained in this Mortgage; and

(b)  The executed Non-recourse Promissory Note ("Note") by Dr. Michael A. Evans in favor of the Mortgagee, in the principal amount of $5,900,000 or the net proceeds of the Collateral (as defined in the Note), whichever is less, scheduled to mature at the latest on _____, 2026

(such obligations hereinabove described collectively hereinafter referred to as the "Obligations"; the Mortgage and Note are collectively referred to herein as the "Security Documents").

2.  <u>Promise to Pay</u>. The Mortgagor agrees to pay, perform and observe the obligations, requirements and responsibilities as set forth in the Security Documents as provided therein, without relief from valuation and appraisement laws and with attorney's fees.

3.  <u>Title to Mortgaged Premises and Lien of Mortgage</u>.  Mortgagor is the owner in fee simple of the Real Estate and has full power to mortgage the same; Mortgagor has good and valid title to the Chattel Property free and clear of all security interests and encumbrances except the Senior Mortgages and has full power to grant a security interest in the same; and the Real Estate is free and clear of any and all liens and encumbrances, use restrictions of record, zoning ordinances, rights-of-way and easements of record, except the Senior Mortgages and such liens, encumbrances and zoning ordinances which do not materially detract from the value of such property or its usefulness for the purposes intended by Mortgagor, and the lien of current taxes and assessments not delinquent. Mortgagor will make any further assurances of title that Mortgagee may require and will warrant and defend the Mortgaged Premises against all adverse claims and demands whatsoever. This Mortgage creates a continuing lien to secure the full and final payment of the Obligations.

4.  <u>Insurance</u>.  Mortgagor will assure and confirm to the reasonable satisfaction of Mortgagee the maintenance at all times of Fire, Extended Coverage, Vandalism, Malicious Mischief and other hazard insurance with respect to the Mortgaged Premises, and public liability insurance with such insurance companies and in forms and amounts as are reasonably acceptable to and approved by Mortgagee against loss or destruction on account of fire, windstorm or other such hazards, casualties and contingencies customarily insured against, and injury to the person or property, including, without limiting the generality thereof, rents loss insurance in an amount equal to one year of gross rental, and such flood, and/or earthquake insurance as may be reasonably required by Mortgagee.  All insurance policies are to be held by and, to the extent of its interests, for the benefit of and first payable in case of loss to Mortgagee, and Mortgagor shall deliver to Mortgagee a new policy as replacement for any expiring policy at least fifteen (15) days before the date of such expiration.

All such policies of insurance shall contain waiver of subrogation clauses and shall have attached thereto the non-contributory New York Standard Mortgagee clause or its equivalent in favor of Mortgagee with cancellation only upon at least ten (10) days' prior written notice to Mortgagee.  All amounts recoverable under any policy are hereby assigned to Mortgagee and, in the event of a loss, Mortgagor will give immediate notice by mail to Mortgagee, and Mortgagee may make proof of loss if not made promptly by Mortgagor. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Mortgagee rather than to Mortgagee and Mortgagor jointly. In the event such proceeds are insufficient to effect such restoration, Mortgagee shall have no obligation to make such proceeds available to restore the Mortgaged Premises unless the Mortgagor furnishes satisfactory evidence of the availability of funds to complete such restoration and Mortgagee determines, in its sole but reasonable discretion, that the Mortgaged Premises, following restoration and reconstruction, will remain economically feasible utilizing the same standards and analyses as set forth in the most recent appraisal of the Mortgaged Premises engaged by Mortgagee prior to the execution of this Mortgage. In the event that Mortgagor elects to apply such insurance proceeds to restoration of

the Mortgaged Premises and such insurance proceeds exceed the total cost of restoration, such excess proceeds shall be retained by Mortgagee and applied to reduce the then-outstanding Obligations.

Mortgagor will not do or suffer to be done anything which will increase the risk of fire or other hazard to the Mortgaged Premises or any part thereof without first causing such increased risk to be fully and adequately covered by insurance. Insurance as above-described shall also be obtained on all fixtures and personal property used by Mortgagor in connection with the Real Estate to the extent that the value thereof is not otherwise included in the insurance on the Mortgaged Premises. In the event of foreclosure of this Mortgage or other transfer of title of the Mortgaged Premises in extinguishment of the Obligations, all right, title and interest of Mortgagor, in and to any insurance policies then in force shall pass to the purchaser or grantee of the Mortgaged Premises.

In the event that, prior to the extinguishment of the Obligations, there exists any claim under any hazard insurance policies which shall not have been paid and distributed in accordance with the terms of this Mortgage, and any such claims shall be paid after the extinguishment of the Obligations, and the foreclosure of this Mortgage, transfer of title to the Mortgaged Premises, or extinguishment of the Obligations shall have resulted in extinguishment of the Obligations for an amount less than the total of the unpaid principal balance together with accrued interest plus costs of litigation, attorneys' fees, title insurance and all other costs and expenses incurred by Mortgagee in any action involving such extinguishment, then, without limitation, that portion of the payment in satisfaction of the claim which is equal to the difference between the total amount of the aforementioned amounts due Mortgagee and the amount in extinguishment of the Obligations received by Mortgagee shall belong to and be the property of Mortgagee and shall be paid to Mortgagee, and Mortgagor hereby assigns, transfers and sets over to Mortgagee all of Mortgagor's right, title and interest in and to said sum. The balance, if any, shall belong to Mortgagor. Notwithstanding the above, Mortgagor shall retain an interest in the insurance policies above-described during any redemption period.

5.      Taxes. Mortgagor will pay, before the same become delinquent or any penalty for non-payment attaches thereto, all taxes, assessments and charges of every nature now or hereafter levied or assessed against or upon the Mortgaged Premises, or any part thereof, or upon the rents, issues, income or profits therefrom, which by reason of non-payment could become a lien prior or junior to this Mortgage, except such as are being contested by appropriate proceedings and for which an adequate reserve is maintained, whether any or all of said taxes, assessments or charges be levied directly or indirectly or as excise taxes or as income taxes, and will submit to Mortgagee such evidence of the timely payment of such taxes, assessments and charges as Mortgagee may require, and Mortgagor will also pay all taxes, assessments or charges which may be levied on this Mortgage, excepting any state or federal income taxes or state intangibles taxes. In default thereof, Mortgagee may pay such taxes, assessments and other similar charges, of which payment, amount and validity thereof the receipt of the proper officer shall be conclusive evidence, and all sums so paid shall bear interest at the rate accruing on the Obligations, shall be payable on demand, and shall be fully secured by this Mortgage and the Security Documents.

6.     <u>Care of Mortgaged Premises</u>.  Mortgagor will keep the Mortgaged Premises in good order, repair and condition at all times and will not commit waste or allow waste to be committed against the Mortgaged Premises. Mortgagor will not commit or allow the commission of any violation of any law, regulation, ordinance or contract affecting the Mortgaged Premises and will not commit or allow any demolition, removal or material alteration of any of the buildings or improvements (including fixtures) constituting a part of the Mortgaged. Premises without the prior written consent of Mortgagee. Subject to the rights of tenants, Mortgagee shall at reasonable times during normal business hours have free access to the Mortgaged Premises for the purposes of inspection and the exercise of its rights hereunder.

7.     <u>Advancements to Protect Security</u>.  If Mortgagor shall neglect or refuse to keep the Mortgaged Premises in good repair, to maintain and to pay the premiums for insurance which may be required, or to pay and discharge all taxes, assessments and charges of every nature assessed against Mortgagor or the Mortgaged Premises, so as to protect and preserve the security intended by this Mortgage, all as provided for under the terms of this Mortgage, or to pay all liens and encumbrances when due, whether such liens or encumbrances are permitted by Mortgagee or not, or if Mortgagor shall permit any lien or encumbrance on the Mortgaged Premises to be in default, Mortgagee may, at its option, cause such repairs or replacements to be made, obtain such insurance or pay said taxes, assessments, charges and pay such liens and encumbrances and cure such defaults thereunder. Any amounts paid as a result thereof, together with interest at the per annum rate equal to the rate of interest accruing on the Obligations from the date of payment, shall be immediately due and payable by Mortgagor to Mortgagee, and until paid shall be added to and become a part of the Obligations.  Further, the same may be collected by Mortgagee in any suit hereon, or Mortgagee, by payment of any tax, assessment or charge, may, at its discretion, be subrogated to the rights of the governmental subdivision levying such tax, assessment or charge. No such advances shall be deemed to relieve Mortgagor from any default hereunder or impair any rights or remedy of Mortgagee, and the exercise by Mortgagee of the right to make advances shall be optional with Mortgagee and not be obligatory and Mortgagee shall not in any case be liable to Mortgagor for a failure to exercise any such right.

8.     <u>Condemnation</u>.  All awards made by any public or quasi-public authority for damages to the Real Estate by virtue of an exercise of the right or threat of eminent domain by such authority, including any award for a taking of title, possession or right of access to a public way, or for any change of grade of streets affecting the Real Estate, are hereby assigned to Mortgagee; and Mortgagee, at its option, is hereby authorized, directed and empowered to collect and receive the proceeds of any such award to the extent of the Obligations or payable under this Mortgage from the authorities making the same and to give proper receipts and acquittances therefor; provided, however, as long as no uncured Event of Default exists and the portion of the Mortgaged Premises condemned may be replaced or restored to a condition satisfactory to Mortgagee prior to the maturity of the Obligations, such condemnation proceeds shall, at the option of Mortgagor, be available to restore the Mortgaged Premises to substantially the same condition as existed immediately prior to such condemnation proceeding. In the event such proceeds are insufficient to effect such restoration, Mortgagee shall have no obligation to make such proceeds available to restore the Mortgaged Premises unless the Mortgagor furnishes satisfactory evidence of the availability of funds to complete such restoration. In the event that Mortgagor elects to apply such condemnation proceeds to the restoration of the Mortgaged

2997464

5

Premises and such condemnation proceeds exceed the total cost of restoration, such excess proceeds shall be retained by Mortgagee and applied to reduce the then-outstanding Obligations. Mortgagee is authorized, at its option, to appear in and prosecute in its own name any action or proceeding or to make any compromise or settlement in connection with such taking or damage to the extent of Mortgagee's interest and, with consent and joinder of Mortgagor, to make any compromise or settlement in connection with such taking or damage. Mortgagor will, upon request by Mortgagee, execute and deliver any and all assignments and other instruments sufficient for the purpose of assigning all proceeds from such awards to Mortgagee free and clear and discharged of any and all encumbrances or claims of any kind or nature whatsoever.

9.      Covenant Against Sale, Other Liens and Other Security Interests, Violation of Laws and Environmental Matters and Indemnification.

A.      Mortgagor covenants and agrees not to sell or transfer all or any part of the Mortgaged Premises without the prior written consent of Mortgagee; provided, however, that Mortgagee shall provide such consent in the event that Senior Lenders approve a sale of the Mortgaged Premises.

B.      Mortgagor hereby covenants that no lien of any mechanics or materialmen has attached, or may validly attach, to the Real Estate or any part thereof except such as are being contested by appropriate proceedings; that Mortgagor will pay all sums which if not paid may result in the acquisition or creation of a lien prior to or of equal priority with or junior to the lien of this Mortgage (except such as are being contested by appropriate proceedings) or which may result in conferring upon a tenant of any part of the Mortgaged Premises a right to recover such sums as prepaid rent or as a credit or offset against any future rental obligation; that Mortgagor will not use the Mortgaged Premises for any purpose which violates any federal or state law, governmental regulation or local ordinance; and, that Mortgagor will not grant any other lien or security interest on any part of the Mortgaged Premises without full disclosure to and prior written consent by Mortgagee. Mortgagor shall not acquire any equipment or fixtures covered by this Mortgage or the Security Documents subject to any security interest or other charge or lien, having priority over the lien or security interest granted under this Mortgage or the Security Documents without the prior written consent of Mortgagee.

C.      Mortgagor covenants and agrees that in the ownership, operation and management of the Mortgaged Premises Mortgagor will observe and comply with all applicable federal, state and local statutes, ordinances, regulations, orders and restrictions, including, without limitation, all zoning, building, code, environmental protection and equal employment opportunities statutes, ordinances, regulations, orders and restrictions. Mortgagor represents and covenants that it and any tenant of space in the Mortgaged Premises will not generate, store, handle, or otherwise deal with hazardous substances on the Mortgaged Premises which conduct shall violate any applicable laws, statutes, rules or regulations, both federal and local.

D.      Mortgagor covenants and agrees that, with the exceptions of the Senior Mortgages and Third Mortgage, Mortgagor will not grant, consent to, or allow to remain unpaid any other liens, encumbrances, judgments, taxes, or other claims against the Mortgaged Premises, whether

2997464                                                          6

prior or subordinate to the rights of Mortgagee therein, without the prior written consent of Mortgagee.

E.     Mortgagor covenants, warrants and represents that:

(i)     Mortgagor has not used Hazardous Materials (as defined below) on, from or affecting the Mortgaged Premises in any manner which violates federal, state or local laws, ordinances, rules, regulations or policies governing the use, storage, treatment, transportation, manufacture, refinement, handling, production or disposal of Hazardous Material and, to the best of Mortgagor's knowledge, no prior owner of the Mortgaged Premises or any existing or prior tenant, or occupant has used Hazardous Materials on, from or affecting the Mortgaged Premises in any manner which violates federal, state or local laws, ordinances, rules, regulations or policies governing the use, storage, treatment, transportation, manufacture, refinement, handling, production or disposal of Hazardous Materials;

(ii)     Mortgagor has never received any notice of any violations (and is not aware of any existing violations) of federal, state or local laws, ordinances, rules, regulations or policies governing the use, storage, treatment, transportation, manufacture, refinement, handling, production or disposal or Hazardous Materials at the Mortgaged Premises and, to the best of Mortgagor's knowledge, there have been no actions commenced or threatened by any party for noncompliance which affects the Mortgaged Premises;

(iii)     Mortgagor shall keep or cause the Mortgaged Premises to be kept free of Hazardous Materials except to the extent that such Hazardous Materials are stored and/or used in compliance with all applicable federal, state and local laws and regulations; and, without limiting the foregoing, Mortgagor shall not cause or permit the Mortgaged Premises to be used to generate, manufacture, refine, transport, treat, store, handle, dispose of, transfer, produce, or process Hazardous Materials, except in compliance with all applicable federal, state and local laws and regulations, nor shall Mortgagor cause or permit, as result of any intentional or unintentional act or omission on the part of Mortgagor or any tenant, subtenant or occupant, a release, spill, leak or emission of Hazardous Materials onto the Real Estate or onto any other contiguous property;

(iv)     Mortgagor shall conduct and complete all investigations including a comprehensive environmental audit, studies, sampling and testing, and all remedial, removal and other actions necessary to clean up and remove all Hazardous Materials on, under, from or affecting the Mortgaged Premises as required by all applicable federal, state and local laws, ordinances, rules, regulations and policies, to the satisfaction of Mortgagee, and in accordance with the orders and directives of all federal, state and local governmental authorities. If Mortgagor fails to conduct an environmental audit required by Mortgagee, then Mortgagee may at its option and at the expense of Mortgagor, conduct such audit.

Subject to the limitations set forth below, Mortgagor shall defend, indemnify, and hold harmless Mortgagee, its employees, agents, officers and directors, from and against any claims, demands, penalties, fines, liabilities, settlements, damages, costs, or expenses, including, without limitation, attorney's and consultant's fees, investigation and laboratory fees, court costs and litigation expenses, known or unknown, contingent or otherwise, arising out of or in any way related to (1) the presence, disposal, release, or threatened release of any Hazardous Materials on, over, under from or affecting the Mortgaged Premises or the soil, water, vegetation, buildings, personal property, persons or animals, (2) any personal injury (including wrongful death) or property damage (real or personal) arising out of or related to Hazardous Materials on the Mortgaged Premises, (3) any lawsuit brought or threatened, settlement, reached or government order relating to such Hazardous Materials with respect to the Mortgaged Premises, and/or (4) any violation of laws, orders, regulations, requirements or demands of government authorities or any policies or requirements of Mortgagee, which are based upon or in any way related to such Hazardous Materials used upon the Mortgaged Premises. The indemnity obligations under this paragraph are specifically limited as follows:

A.      Mortgagor shall have no indemnity obligation with respect to Hazardous Materials that are first introduced to the Mortgaged Premises or any part of the Real Estate subsequent to the date that Mortgagor's interest in and possession of the Mortgaged Premises or any part of the Mortgaged Premises shall have fully terminated by foreclosure of this Mortgage or acceptance of a deed in lieu of foreclosure;

B.      Mortgagor shall have no indemnity obligation with respect to any hazardous Materials introduced to the Mortgaged Premises or any part of the Real Estate by Mortgagee, its successors or assigns.

Mortgagor agrees that in the event this Mortgage is foreclosed or Mortgagor tenders a deed in lieu of foreclosure, Mortgagor shall deliver the Mortgaged Premises to Mortgagee free of any and all Hazardous Materials which are then required to be removed (whether over time or immediately) pursuant to applicable federal, state and local laws, ordinances, rules or regulations affecting the Mortgaged Premises.

For purposes of this Mortgage, "Hazardous Materials" includes, without limitation, any flammable explosives, radioactive materials, hazardous materials, hazardous wastes, hazardous or toxic substances or related materials defined in the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended (42 U.S.C. Sections 9601, et. seq.), the Hazardous Materials Transportation Act, as amended (49 U.S.C. Sections 1801, et leg.), the Resource Conservation and Recovery Act, as amended (42 U.S.C. Section 6901, et seq.) and in the regulations adopted and publications promulgated pursuant thereto, or any other federal, state or local governmental law, ordinance, rule or regulation.

The provisions of this Section shall be in addition to any and all other obligations and liabilities Mortgagor may have to Mortgagee under any Security Documents, and at common law, and shall survive (1) the extinguishment of the Obligations, (2) the satisfaction of all of the other obligations of Mortgagor in the Mortgage and under any Security Documents, (3) the discharge of this Mortgage, and (4) the foreclosure of this Mortgage or acceptance of a deed in

lieu of foreclosure. Notwithstanding anything to the contrary contained in this Mortgage, it is the intention of Mortgagor and Mortgagee that the indemnity provisions of this Section shall only apply to an action commenced against any owner or operator of the Mortgaged Premises in which any interest of Mortgagee is threatened or any claim is made against Mortgagee for the payment of money.

      10.    <u>Escrow Deposits</u>.  Reserved.

      11.    <u>Collateral Assignment of Leases and Rents</u>. Mortgagor hereby collaterally assigns to Mortgagee all the rents and revenues of the Mortgaged Premises, including those now due, or to become due by virtue of any lease or other agreement for the occupancy or use of all or any part of the Mortgaged Premises, regardless of to whom the rents and revenues of the Mortgaged Premises are payable.  Upon delivery of written notice by Mortgagee to Mortgagor of the breach by Mortgagor of any covenant or agreement of Mortgagor in this Mortgage, and without the necessity of Mortgagee entering upon and taking and maintaining full control of the Mortgaged Premises in person, by agent or by a court-appointed receiver, Mortgagee shall immediately be entitled to possession of all rents and revenues of the Mortgaged Premises as specified in this Section 11 as the same become due and payable, including but not limited to rents then due and unpaid, and all such rents shall immediately upon delivery of such notice be held by Mortgagor as trustee for the benefit of Mortgagee only; provided, however, that the written notice by Mortgagee to Mortgagor of the breach by Mortgagor shall contain a statement that Mortgagee exercises its rights to such rents. Mortgagor agrees that commencing upon delivery of such written notice of Mortgagor's breach by Mortgagee to Mortgagor, each tenant of the Mortgaged Premises shall make such rents payable to and pay such rents to Mortgagee or Mortgagee's agents on Mortgagee's written demand to each tenant therefor, delivered to each tenant personally or by mail, without any liability on the part of said tenant to inquire further as to the existence of a default by Mortgagor.

      Upon request by Mortgagee, Mortgagor will assign to Mortgagee, as further security for the Obligations, its interest, as lessor, in any or all leases of all or any portion of the Mortgaged Premises and in any licenses, permits, agreements or contracts pertaining to the Mortgaged Premises. Such assignments are to be made by instruments in form satisfactory to Mortgagee, but no such assignment shall be construed as a consent by Mortgagee to any lease, license, permit, agreement or contract so assigned or impose upon Mortgagee any obligations with respect thereto. Except for dealings in the ordinary course of business which are in the best interests of both Mortgagor and Mortgagee, Mortgagor will not cancel any of the leases now or hereafter assigned to Mortgagee nor terminate or accept a surrender thereof or reduce the payment of the rent thereunder or modify any of the said leases or accept any prepayment of rent (except any amount which may be required to be prepaid by the terms of any such lease) without first obtaining, on each occasion, the prior written consent of Mortgagee. Mortgagor will perform all of its obligations as lessor under all of the leases now or hereafter assigned to Mortgagee.

      12.    <u>Subrogation</u>.  If the proceeds of the Obligations, or any part thereof, or any amount paid out or advanced by Mortgagee, be used directly, or indirectly to pay off, discharge or satisfy, in whole or in part, any prior lien or encumbrance upon said Mortgaged Premises or

any part thereof, then Mortgagee shall be subrogated to the rights of the holder of such lien or encumbrance, although such lien or encumbrance may have been released of record.

13.   Security Interest.  Mortgagor hereby grants and transfers to Mortgagee a security interest in (a) all machinery, equipment, appliances, improvements, furniture, fixtures and other tangible personal property now owned or hereafter acquired by Mortgagor attached to, located on, forming a part of, or used in connection with the Real Estate and owned by Mortgagor, all property of like kind or type hereafter acquired by Mortgagor in substitution or replacement thereof, together with all tools, accessories, parts, equipment, and accessions now in, attached to, or which may hereafter at any time be placed in or added to the above-described property and owned by Mortgagor, including all after-acquired property, replacements, and proceeds thereof (including tort claims and insurance) ("Tangible Collateral"), and (b) all rents, royalties, income, security deposits, funds, proceeds and/or profits received or receivable by Mortgagor from all leases, rental agreements, or occupancies of the Real Estate, and all accounts, contract rights, and general intangibles, and the proceeds thereof ("Cash Collateral") (said Tangible Collateral and Cash Collateral being collectively referred to as the "Chattel Property") to secure the payment of the Obligations and any extensions or renewals thereof.  The security interest hereby granted shall continue until full performance by Mortgagor of all conditions and obligations of this Mortgage. Mortgagor shall be entitled to possession of the Chattel Property until default, but shall use the Chattel Property in a careful and prudent manner, maintain the Chattel Property in good repair, pay all taxes and other charges thereon when due, and defend the Chattel Property at all times against any claims during the duration of this Mortgage. Except for removal to repair the Chattel Property, Mortgagor shall not permit the Chattel Property to be removed from the Real Estate without the prior written consent of Mortgagee. Upon any default, Mortgagee, at its option and without notice or demand, shall be entitled to enter upon the Real Estate to take immediate possession of the Chattel Property or to render the same unusable. Upon request, Mortgagor shall assemble and make the Chattel Property available to Mortgagee at a place to be designated by Mortgagee which is reasonably convenient to both parties. Upon repossession, Mortgagee may propose to retain the Chattel Property in partial satisfaction of the Obligations or sell all or any portion of the Chattel Property at public or private sale in accordance with the Uniform Commercial Code as adopted in Indiana or any other applicable statute. In the further event that Mortgagee shall dispose of any or all of the Chattel Property after default, the proceeds of disposition shall be first applied in the following order: (a) to the reasonable expenses of retaking, holding, preparing for sale, selling and the like, (b) to the reasonable attorneys' fees and legal expenses incurred by Mortgagee, and (c) to the satisfaction of the Obligations. Mortgagor authorizes Mortgagee to file financing statements covering the security interest of Mortgagee in the Chattel Property.

14.   Expenses of Mortgagee.  Mortgagor hereby indemnifies Mortgagee and agrees to save it harmless from any and all loss, damage or expense, including attorneys' fees, resulting from or arising out of the execution and delivery of this Mortgage. All sums paid by Mortgagee, including attorneys' fees, to cure defaults by Mortgagor hereunder, for the expense of any litigation to prosecute or defend the rights and lien created hereby in any action or proceeding to which Mortgagee is made a party by reason of this Mortgage, or in which it becomes necessary to defend or uphold the lien of this Mortgage or the Security Documents, shall be paid by Mortgagor to Mortgagee, together with interest thereon from date of payment at a per annum rate

equal to the rate of interest accruing on the Obligations, and any such sums and interest thereon shall be immediately due and payable and secured hereby.

15.     Change of Laws.  In the event of the enactment after the date hereof of any law of the State in which the Mortgaged Premises are located imposing upon Mortgagee the payment of the whole or any part of the taxes or assessments for charges and liens herein required to be paid by Mortgagor, or the passing or creation of any law deducting from the value of the Mortgaged Premises any lien thereon for the purpose of taxation of Mortgagee, or changing in any way the laws now in force for the taxation of mortgages, or the Obligations, or changing the manner of collection of any such taxation from Mortgagor so as to affect this Mortgage or the Obligations, then in such event Mortgagor, upon demand by Mortgagee, shall pay such taxes or assessments or reimburse Mortgagee therefor; provided, however, that if it is unlawful for Mortgagor to make such payment, or the making of such payment would impose a rate of interest beyond the maximum permitted by law, then and in such event, such payments by Mortgagor shall be delayed until the earliest interest payment dates on which the receipt thereof would be permissible under the laws applicable to Mortgagee limiting rates of interest which may be charged or collected by Mortgagee.

16.     Events of Default.  The occurrence of any one or more of the following events shall be deemed to be an event of default ("Event of Default") under this Mortgage:

(a)     Any default under the Note;

(b)     Failure to pay or perform under any of the Security Documents according to their respective terms, which breach is not cured within any applicable grace period under the respective Security Document;

(c)     Breach of any covenant, representation, term, provision, condition, or agreement contained in this Mortgage or any of the Security Documents or any other writing executed by Mortgagor in connection with the indebtedness secured hereby, which breach is not cured by Mortgagor within thirty (30) days following issuance of written notice by Mortgagee or any applicable grace period under any such Security Documents. In the event of a default other than non-payment where such default is incurable within such applicable grace period and where Mortgagor is diligently pursuing its cure, then whenever Mortgagee reasonably determines that Mortgagor is no longer diligently pursuing the cure or that the cure will not be completed within a reasonable time beyond the applicable cure period;

(d)     The filing by Mortgagor or Borrower of a petition in voluntary bankruptcy or under any Chapter of the Federal Bankruptcy Code or other similar law, state or federal, whether now or hereafter existing, or an answer admitting insolvency or inability to pay its debts, or failure to obtain a vacation or stay of involuntary bankruptcy or insolvency proceedings within sixty (60) days;

(e)    The adjudication of Mortgagor or Borrower as a bankrupt, or the appointment of a trustee or receiver for Mortgagor or Borrower or for all or substantially all of its respective property in any involuntary proceeding, or the taking of jurisdiction by any court over the property of Mortgagor or Borrower or of substantially all thereof in any involuntary proceeding for the reorganization, dissolution, Liquidation or winding up of Mortgagor and the failure to discharge such trustee or receiver or relinquish such jurisdiction or vacate or stay on appeal or otherwise stay such proceedings within sixty (60) days;

(f)    The making by Mortgagor or Borrower of an assignment for the benefit of creditors or the admitting in writing by Mortgagor or Borrower of its inability to pay its debts generally as they become due, or the consent by Mortgagor or Borrower to the appointment of a receiver or trustee or liquidator of all of its properties or substantially all thereof; or

(g)    Abandonment of the Mortgaged Premises by Mortgagor.

17.    **Remedies Following an Event of Default**.  In the event of the occurrence of one or more of the above Events of Default, Mortgagee may, in its sole discretion but subject to the rights of the Senior Lenders and the terms of the Senior Mortgages, exercise one or more of the following remedies:

(a)    Declare all of the Obligations secured hereby to be immediately due and payable, without notice or demand; and/or

(b)    Foreclose this Mortgage without relief under valuation and appraisement laws; and/or

(c)    Apply for and be entitled to the appointment of a receiver, the appointment of which is hereby consented to by Mortgagor, and such receiver is hereby authorized to take possession of the Mortgaged Premises, collect any rental, accrued, or to accrue, whether in money or in kind, for the use or occupancy of said Mortgaged Premises by any persons, firm or corporation, and may let or lease the Mortgaged Premises or any part thereof, receive the rents, income and profits therefrom, and hold the proceeds subject to the orders of the court, or the judge thereof, for the benefit of Mortgagee, pending the final decree in the proceedings pursuant to which the receiver has been appointed, and during any period allowed by law for the redemption from any sale ordered in foreclosure proceedings, and said receiver may be appointed irrespective of the value of the Mortgaged Premises or its adequacy to secure or discharge the Obligations due or to become due or the solvency of Mortgagor; and/or

     (d)    Take possession of and hold the Mortgaged Premises, with or without process of law, and collect the rents and profits therefrom, applying same to the charges and payments due under the conditions of this Mortgage so long as default shall continue, which such taking of possession shall in no way waive the right of Mortgagee to exercise the other remedies set forth herein because of a default.

In the event Mortgagee elects one or more of the above remedies upon default, Mortgagor agrees to pay all of the costs and expenses of Mortgagee incurred in pursuance of such remedy or remedies, including without limiting the generality thereof, attorneys' fees, all costs of collection, late payment penalties, abstracts of title or title insurance, hazard insurance on the Mortgaged Premises, real property taxes on the Real Estate and personal property taxes on the Chattel Property which are paid or incurred by Mortgagee, repairs, maintenance, and replacements of the Mortgaged Premises which are paid, advanced or incurred by Mortgagee, payments by Mortgagee to holders of liens or encumbrances on the Mortgaged Premises which are then due and payable, and interest commencing with the date of default, calculated at the rate accruing on the Obligations, on the sum of the above costs and expenses.

     18.    <u>Non-Waiver of Default</u>.  No failure by Mortgagee in the exercise of any of its rights under this Mortgage shall preclude Mortgagee from the exercise thereof in the event of subsequent Event of Default, and no delay by Mortgagee in the exercise of its rights under this Mortgage shall preclude Mortgagee from the exercise thereof so long as Mortgagor is in default hereunder. Mortgagee may enforce any one or more of its rights or remedies hereunder successively or concurrently.

     19.    <u>Modification of Obligations and Release of Collateral</u>.  Mortgagee at its option may extend the time for the payment of the Obligations or reduce the payments thereon or accept a renewal note or notes therefor or release all or part of the Mortgaged Premises without the consent of any junior lienholder or Mortgagor if Mortgagor has then parted with title to Mortgaged Premises and no sale of the Mortgaged Premises or forbearance on the part of Mortgagee or its assigns, or extension of the time for the payment of the Obligations or reduction in payments, or acceptance of renewals or release of all or part of the Mortgaged Premises shall affect the priority of this Mortgage or Security Documents or the security hereof or shall operate to release, modify, change or affect the original liability of Mortgagor herein or a subsequent mortgagor, surety or guarantor, either in whole or in part, nor shall the full force and effect of the security of this Mortgage and Security Documents be altered thereby.

     20.    <u>Rights of Successors</u>.  The covenants herein contained shall bind, and the benefits and advantages shall inure to, the respective legal representatives, successors and assigns of the parties hereto.

     21.    <u>Applicable Law</u>.  This Mortgage is executed under and shall be construed in accordance with the laws of the State of Indiana.

     22.    <u>Interpretation</u>.  In the event this Mortgage is executed by more than one person, firm or corporation, the liability of the undersigned parties shall be joint and several. Whenever

used, the singular shall include the plural, the plural the singular, and the use of any gender shall include all genders. The term "Mortgagee" shall include any payee of the Obligations or any transferee thereof, whether by operation of law or otherwise. Descriptive headings are for convenience only and shall be deemed to not affect the meaning or construction of any provision hereof.

23.     _Authority_.  Mortgagor is an Indiana limited liability company duly organized and validly existing under the laws of the State of Indiana. The undersigned, on behalf of Mortgagor, has the power, authority and legal right to execute, deliver and perform this Mortgage.

24.     _Fixture Filing_.  From the date of its recording, this Mortgage (as provided in Indiana Code Section 26-1-9.1-502) shall be effective as a financing statement with respect to all goods constituting part of the Chattel Property which are or are to become fixtures related to the Real Estate described herein. This document covers goods which are or are to become fixtures. The Real Estate to which such fixtures are or are to be attached is that described in **Attachment A** attached hereto, the record owner of which is Mortgagor.

25.     _Time is of the Essence_.  Time shall be of the essence in Mortgagor's performance of its obligations under this Mortgage and all other Security Documents.

IN WITNESS WHEREOF, Mortgagor has executed this instrument effective as of _____, 2016.

> **WEST WASHINGTON STREET DEVELOPMENT, LLC**
>
> By:_____
>     Michael A. Evans, Manager

STATE OF INDIANA        )
                        )
COUNTY OF MARION        )

Before me the undersigned, a Notary Public for MARION County, State of Indiana, personally appeared Michael A. Evans, the Manager of West Washington Street Development, LLC, an Indiana limited liability company, who acknowledged the execution of the above and foregoing Third Real Estate Mortgage, Security Agreement, Assignment of Leases and Rents and Fixture Filing on behalf of said company.

Signed and sealed this 12 day of May , 2016.

_____
Signature

KATHLEEN SCHUSTER
Marion County
My Commission Expires
April 4, 2024

NOTARY SEAL

_____
Printed

My Commission Expires                    My County of Residence is:

_____             _____

I affirm, under the penalties for perjury, that I have taken reasonable care to redact each Social Security number in this document, unless required by law:  James P. Moloy

This Instrument Prepared By:  James P. Moloy, Bose McKinney & Evans LLP, 111 Monument Circle, Suite 2700, Indianapolis, Indiana 46204

2997464                              15

**Attachment A**

**Legal Description of the Real Estate**

A PART OF THE NORTHEAST QUARTER OF SECTION 26, TOWNSHIP 17 NORTH, RANGE 2 EAST, MARION COUNTY, INDIANA, BEING A PORTION OF THAT LAND SHOWN ON A LAND TITLE SURVEY PREPARED BY WOOLPERT CONSULTANTS, RECORDED IN INSTRUMENT NUMBER 93-156219 IN THE OFFICE OF THE RECORDER OF MARION COUNTY, DESCRIBED AS FOLLOWS:

COMMENCING AT THE NORTHEAST CORNER OF SAID QUARTER SECTION, SAID CORNER BEING NORTH 00 DEGREES 01 MINUTES 19 SECONDS EAST 2,641.27 FEET, MEASURED ALONG THE EAST LINE OF SAID QUARTER SECTION FROM THE SOUTHEAST CORNER OF SAID QUARTER SECTION, AND NORTH 88 DEGREES 43 MINUTES 55 SECONDS EAST 2,658.05 FEET, MEASURED ALONG THE NORTH LINE OF SAID QUARTER SECTION FROM THE NORTHWEST CORNER OF SAID QUARTER SECTION; THENCE SOUTH 88 DEGREES 43 MINUTES 55 SECONDS WEST 1,399.64 FEET ALONG THE NORTH LINE OF SAID QUARTER SECTION; THENCE SOUTH 00 DEGREES 01 MINUTE 19 SECONDS WEST 70.02 FEET TO THE POINT OF BEGINNING OF THIS DESCRIPTION; THENCE SOUTH 00 DEGREES 01 MINUTES 19 SECONDS WEST 892.84 FEET ALONG THE WEST RIGHT-OF-WAY LINE OF WOODLAND DRIVE, AS RECORDED IN INSTRUMENT NUMBER 96-41099 IN SAID RECORDER'S OFFICE, TO THE NORTHEAST CORNER OF INNOVATION BOULEVARD, AS RECORDED IN INSTRUMENT NUMBER 2000-169043 IN SAID RECORDER'S OFFICE; THENCE ALONG THE NORTH AND EAST LINES OF SAID INNOVATION BOULEVARD THE FOLLOWING FOUR (4) COURSES; 1) NORTH 90 DEGREES 00 MINUTES 00 SECONDS WEST 646.73 FEET; 2) NORTH 00 DEGREES 00 MINUTES 00 SECONDS EAST 793.09 FEET; 3) NORTH 90 DEGREES 00 MINUTES 00 SECONDS EAST 6.00 FEET; 4) NORTH 00 DEGREES 00 MINUTES 00 SECONDS EAST 85.55 FEET TO THE SOUTH RIGHT-OF-WAY LINE OF THE WEST 79TH STREET; THENCE NORTH 88 DEGREES 43 MINUTES 55 SECONDS EAST 641.23 FEET ALONG SAID SOUTH RIGHT-OF-WAY LINE TO THE POINT OF BEGINNING AND CONTAINING 13.141 ACRES, MORE OR LESS. THE BEARINGS IN THIS DESCRIPTION ARE BASED UPON THE BEARING SYSTEM OF PARK 100 SOUTH.

2997464                                    16

# EXHIBIT B-2

### THIRD LEASEHOLD REAL ESTATE MORTGAGE, SECURITY AGREEMENT, ASSIGNMENT OF LEASES AND RENTS AND FIXTURE FILING

FOR PURPOSES OF THE SECURITY AGREEMENT AND FIXTURE FILING
CONTAINED IN THIS INSTRUMENT
THE "SECURED PARTY" AND THE "DEBTOR" AND THEIR RESPECTIVE
ADDRESSES ARE AS FOLLOWS:

SECURED PARTY:        AIT Holding Company Employee Stock Ownership Plan
                      2265 Executive Drive
                      Indianapolis, Indiana  46241

DEBTOR:               IAD, Inc.
                      7840 Innovation Drive
                      Indianapolis, Indiana  46278

COMMON ADDRESS
OF REAL ESTATE:       7840 Innovation Drive
                      Indianapolis, Indiana 46278

THE ADDRESS OF THE SECURED PARTY SHOWN ABOVE IS THE ADDRESS AT WHICH INFORMATION CONCERNING THE SECURED PARTY'S SECURITY INTEREST MAY BE OBTAINED.

THIS MORTGAGE WITNESSETH, That IAD, Inc., an Indiana corporation ("Mortgagor"), MORTGAGES AND WARRANTS UNTO AIT Holding Company Employee Stock Ownership Plan (the "Mortgagee") all of Mortgagor's leasehold estate under a certain Net Land Lease executed by Indianapolis Airport Development, LLC, as lessor, and Mortgagor, as lessee, dated October 28, 2010, as amended (the "Lease"), as described in a Memorandum of Lease executed October 28, 2010, and recorded November 3, 2010, in the Marion County Recorder's Office as Instrument No. A201000109430, which Lease relates to the real estate in Marion County, Indiana commonly known as 7840 Innovation Drive, Indianapolis, Indiana and which is more particularly described in **Attachment A**, attached hereto and incorporated herein, together with all improvements, structures and buildings now or hereafter located thereon ("Real Estate"),

2997432

TOGETHER WITH all tenements, hereditaments, rights, privileges, interests, easements and appurtenances belonging to or in any way appertaining to such Real Estate, and all rents, issues, income and profits thereof, and all fixtures, appliances, apparatus, equipment or articles now or hereafter situated on or used in connection with such Real Estate and owned by Mortgagor including, but not in limitation of the preceding, all gas, water and electric fixtures, radiators, heaters, engines and machinery, boilers, ranges, elevators and motors, plumbing and heating fixtures, water heaters, air conditioning apparatus and units, refrigerating equipment, refrigerators, cooking apparatus, window screens, awnings, storm sash, doors and carpeting (which are or shall be attached to said building, structures or improvements), partitions, equipment, personal property of every kind and nature whatsoever now or hereafter owned by Mortgagor and located in, on or about, or used in connection with the Real Estate, whether physically attached to the Real Estate or not, (hereinafter collectively referred to as the "Chattel Property") and it is agreed that all similar fixtures, appliances, apparatus, equipment or articles hereafter placed on such Real Estate by Mortgagor, and owned by Mortgagor, their successors or assigns, including all replacements or substitutions therefor, shall be considered as constituting part of such Chattel Property all to the use and benefit of Mortgagee, its successors and assigns, and Mortgagor transfers and grants to Mortgagee a security interest in all such Chattel Property now or hereafter owned by Mortgagor and located upon the Mortgaged Premises and all personal property of Mortgagor which is described in Section 13 hereinbelow. For purposes of this Mortgage, the Real Estate and Chattel Property shall be collectively referred to as the "Mortgaged Premises".

**Mortgagor and Mortgagee acknowledge that Fifth Third Bank ("First Lender") has an existing first mortgage ("First Mortgage") on the Mortgaged Premises, and that Bankers Life and Casualty Company and Washington National Insurance Company (collectively, "Second Lender", and together with First Lender the "Senior Lenders") has an existing second mortgage ("Second Mortgage", and together with the First Mortgage the "Senior Mortgages") on the Mortgaged Premises. Notwithstanding anything in this Mortgage to the contrary, Mortgagor and Mortgagee agree that the Senior Mortgages are permitted encumbrances on the Mortgaged Premises and that the Senior Mortgages shall have priority over the Mortgage. In the event of any conflict between the terms of this Mortgage and the Senior Mortgages, the terms of the Senior Mortgages shall control. Mortgagee will release this Mortgage upon a sale of the Mortgaged Premises that is approved by (i) the First Lender, if the First Mortgage is still of record, or (ii) the Second Lender, if the First Mortgage is no longer of record.**

MORTGAGOR HEREBY COVENANTS AND AGREES AS FOLLOWS:

1.  <u>Security</u>. This Mortgage is given as security for the following:

(a)  Mortgagor's performance of the covenants contained in this Mortgage; and

(b)  The executed Non-recourse Promissory Note ("Note") by Dr. Michael A. Evans in favor of the Mortgagee, in the principal amount of $5,900,000 or the net proceeds of the Collateral (as defined in the Note), whichever is less, scheduled to mature at the latest on _____, 2026

(such obligations hereinabove described collectively hereinafter referred to as the "Obligations"; the Mortgage and Note are collectively referred to herein as the "Security Documents").

2.    Promise to Pay. The Mortgagor agrees to pay, perform and observe the obligations, requirements and responsibilities as set forth in the Security Documents as provided therein, without relief from valuation and appraisement laws and with attorney's fees.

3.    Title to Mortgaged Premises and Lien of Mortgage.   Mortgagor is the owner in fee simple of the Real Estate and has full power to mortgage the same; Mortgagor has good and valid title to the Chattel Property free and clear of all security interests and encumbrances except the Senior Mortgages and has full power to grant a security interest in the same; and the Real Estate is free and clear of any and all liens and encumbrances, use restrictions of record, zoning ordinances, rights-of-way and easements of record, except the Senior Mortgages and such liens, encumbrances and zoning ordinances which do not materially detract from the value of such property or its usefulness for the purposes intended by Mortgagor, and the lien of current taxes and assessments not delinquent. Mortgagor will make any further assurances of title that Mortgagee may require and will warrant and defend the Mortgaged Premises against all adverse claims and demands whatsoever. This Mortgage creates a continuing lien to secure the full and final payment of the Obligations.

4.    Insurance.  Mortgagor will assure and confirm to the reasonable satisfaction of Mortgagee the maintenance at all times of Fire, Extended Coverage, Vandalism, Malicious Mischief and other hazard insurance with respect to the Mortgaged Premises, and public liability insurance with such insurance companies and in forms and amounts as are reasonably acceptable to and approved by Mortgagee against loss or destruction on account of fire, windstorm or other such hazards, casualties and contingencies customarily insured against, and injury to the person or property, including, without limiting the generality thereof, rents loss insurance in an amount equal to one year of gross rental, and such flood, and/or earthquake insurance as may be reasonably required by Mortgagee.  All insurance policies are to be held by and, to the extent of its interests, for the benefit of and first payable in case of loss to Mortgagee, and Mortgagor shall deliver to Mortgagee a new policy as replacement for any expiring policy at least fifteen (15) days before the date of such expiration.

All such policies of insurance shall contain waiver of subrogation clauses and shall have attached thereto the non-contributory New York Standard Mortgagee clause or its equivalent in favor of Mortgagee with cancellation only upon at least ten (10) days' prior written notice to Mortgagee.  All amounts recoverable under any policy are hereby assigned to Mortgagee and, in the event of a loss, Mortgagor will give immediate notice by mail to Mortgagee, and Mortgagee may make proof of loss if not made promptly by Mortgagor. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Mortgagee rather than to Mortgagee and Mortgagor jointly. In the event such proceeds are insufficient to effect such restoration, Mortgagee shall have no obligation to make such proceeds available to restore the Mortgaged Premises unless the Mortgagor furnishes satisfactory evidence of the availability of funds to complete such restoration and Mortgagee determines, in its sole but reasonable discretion, that the Mortgaged Premises, following restoration and reconstruction, will remain

economically feasible utilizing the same standards and analyses as set forth in the most recent appraisal of the Mortgaged Premises engaged by Mortgagee prior to the execution of this Mortgage. In the event that Mortgagor elects to apply such insurance proceeds to restoration of the Mortgaged Premises and such insurance proceeds exceed the total cost of restoration, such excess proceeds shall be retained by Mortgagee and applied to reduce the then-outstanding Obligations.

Mortgagor will not do or suffer to be done anything which will increase the risk of fire or other hazard to the Mortgaged Premises or any part thereof without first causing such increased risk to be fully and adequately covered by insurance. Insurance as above-described shall also be obtained on all fixtures and personal property used by Mortgagor in connection with the Real Estate to the extent that the value thereof is not otherwise included in the insurance on the Mortgaged Premises. In the event of foreclosure of this Mortgage or other transfer of title of the Mortgaged Premises in extinguishment of the Obligations, all right, title and interest of Mortgagor, in and to any insurance policies then in force shall pass to the purchaser or grantee of the Mortgaged Premises.

In the event that, prior to the extinguishment of the Obligations, there exists any claim under any hazard insurance policies which shall not have been paid and distributed in accordance with the terms of this Mortgage, and any such claims shall be paid after the extinguishment of the Obligations, and the foreclosure of this Mortgage, transfer of title to the Mortgaged Premises, or extinguishment of the Obligations shall have resulted in extinguishment of the Obligations for an amount less than the total of the unpaid principal balance together with accrued interest plus costs of litigation, attorneys' fees, title insurance and all other costs and expenses incurred by Mortgagee in any action involving such extinguishment, then, without limitation, that portion of the payment in satisfaction of the claim which is equal to the difference between the total amount of the aforementioned amounts due Mortgagee and the amount in extinguishment of the Obligations received by Mortgagee shall belong to and be the property of Mortgagee and shall be paid to Mortgagee, and Mortgagor hereby assigns, transfers and sets over to Mortgagee all of Mortgagor's right, title and interest in and to said sum. The balance, if any, shall belong to Mortgagor. Notwithstanding the above, Mortgagor shall retain an interest in the insurance policies above-described during any redemption period.

5.  Taxes.  Mortgagor will pay, before the same become delinquent or any penalty for non-payment attaches thereto, all taxes, assessments and charges of every nature now or hereafter levied or assessed against or upon the Mortgaged Premises, or any part thereof, or upon the rents, issues, income or profits therefrom, which by reason of non-payment could become a lien prior or junior to this Mortgage, except such as are being contested by appropriate proceedings and for which an adequate reserve is maintained, whether any or all of said taxes, assessments or charges be levied directly or indirectly or as excise taxes or as income taxes, and will submit to Mortgagee such evidence of the timely payment of such taxes, assessments and charges as Mortgagee may require, and Mortgagor will also pay all taxes, assessments or charges which may be levied on this Mortgage, excepting any state or federal income taxes or state intangibles taxes. In default thereof, Mortgagee may pay such taxes, assessments and other similar charges, of which payment, amount and validity thereof the receipt of the proper officer shall be conclusive evidence, and all sums so paid shall bear interest at the rate accruing on the

Obligations, shall be payable on demand, and shall be fully secured by this Mortgage and the Security Documents.

6.    Care of Mortgaged Premises.  Mortgagor will keep the Mortgaged Premises in good order, repair and condition at all times and will not commit waste or allow waste to be committed against the Mortgaged Premises. Mortgagor will not commit or allow the commission of any violation of any law, regulation, ordinance or contract affecting the Mortgaged Premises and will not commit or allow any demolition, removal or material alteration of any of the buildings or improvements (including fixtures) constituting a part of the Mortgaged. Premises without the prior written consent of Mortgagee. Subject to the rights of tenants, Mortgagee shall at reasonable times during normal business hours have free access to the Mortgaged Premises for the purposes of inspection and the exercise of its rights hereunder.

7.    Advancements to Protect Security.  If Mortgagor shall neglect or refuse to keep the Mortgaged Premises in good repair, to maintain and to pay the premiums for insurance which may be required, or to pay and discharge all taxes, assessments and charges of every nature assessed against Mortgagor or the Mortgaged Premises, so as to protect and preserve the security intended by this Mortgage, all as provided for under the terms of this Mortgage, or to pay all liens and encumbrances when due, whether such liens or encumbrances are permitted by Mortgagee or not, or if Mortgagor shall permit any lien or encumbrance on the Mortgaged Premises to be in default, Mortgagee may, at its option, cause such repairs or replacements to be made, obtain such insurance or pay said taxes, assessments, charges and pay such liens and encumbrances and cure such defaults thereunder. Any amounts paid as a result thereof, together with interest at the per annum rate equal to the rate of interest accruing on the Obligations from the date of payment, shall be immediately due and payable by Mortgagor to Mortgagee, and until paid shall be added to and become a part of the Obligations.  Further, the same may be collected by Mortgagee in any suit hereon, or Mortgagee, by payment of any tax, assessment or charge, may, at its discretion, be subrogated to the rights of the governmental subdivision levying such tax, assessment or charge. No such advances shall be deemed to relieve Mortgagor from any default hereunder or impair any rights or remedy of Mortgagee, and the exercise by Mortgagee of the right to make advances shall be optional with Mortgagee and not be obligatory and Mortgagee shall not in any case be liable to Mortgagor for a failure to exercise any such right.

8.    Condemnation.  All awards made by any public or quasi-public authority for damages to the Real Estate by virtue of an exercise of the right or threat of eminent domain by such authority, including any award for a taking of title, possession or right of access to a public way, or for any change of grade of streets affecting the Real Estate, are hereby assigned to Mortgagee; and Mortgagee, at its option, is hereby authorized, directed and empowered to collect and receive the proceeds of any such award to the extent of the Obligations or payable under this Mortgage from the authorities making the same and to give proper receipts and acquittances therefor; provided, however, as long as no uncured Event of Default exists and the portion of the Mortgaged Premises condemned may be replaced or restored to a condition satisfactory to Mortgagee prior to the maturity of the Obligations, such condemnation proceeds shall, at the option of Mortgagor, be available to restore the Mortgaged Premises to substantially the same condition as existed immediately prior to such condemnation proceeding. In the event such proceeds are insufficient to effect such restoration, Mortgagee shall have no obligation to make

such proceeds available to restore the Mortgaged Premises unless the Mortgagor furnishes satisfactory evidence of the availability of funds to complete such restoration. In the event that Mortgagor elects to apply such condemnation proceeds to the restoration of the Mortgaged Premises and such condemnation proceeds exceed the total cost of restoration, such excess proceeds shall be retained by Mortgagee and applied to reduce the then-outstanding Obligations. Mortgagee is authorized, at its option, to appear in and prosecute in its own name any action or proceeding or to make any compromise or settlement in connection with such taking or damage to the extent of Mortgagee's interest and, with consent and joinder of Mortgagor, to make any compromise or settlement in connection with such taking or damage. Mortgagor will, upon request by Mortgagee, execute and deliver any and all assignments and other instruments sufficient for the purpose of assigning all proceeds from such awards to Mortgagee free and clear and discharged of any and all encumbrances or claims of any kind or nature whatsoever.

9.    Covenant Against Sale, Other Liens and Other Security Interests, Violation of Laws and Environmental Matters and Indemnification.

A.    Mortgagor covenants and agrees not to sell or transfer all or any part of the Mortgaged Premises without the prior written consent of Mortgagee; provided, however, that Mortgagee shall provide such consent in the event that Senior Lenders approve a sale of the Mortgaged Premises.

B.    Mortgagor hereby covenants that no lien of any mechanics or materialmen has attached, or may validly attach, to the Real Estate or any part thereof except such as are being contested by appropriate proceedings; that Mortgagor will pay all sums which if not paid may result in the acquisition or creation of a lien prior to or of equal priority with or junior to the lien of this Mortgage (except such as are being contested by appropriate proceedings) or which may result in conferring upon a tenant of any part of the Mortgaged Premises a right to recover such sums as prepaid rent or as a credit or offset against any future rental obligation; that Mortgagor will not use the Mortgaged Premises for any purpose which violates any federal or state law, governmental regulation or local ordinance; and, that Mortgagor will not grant any other lien or security interest on any part of the Mortgaged Premises without full disclosure to and prior written consent by Mortgagee. Mortgagor shall not acquire any equipment or fixtures covered by this Mortgage or the Security Documents subject to any security interest or other charge or lien, having priority over the lien or security interest granted under this Mortgage or the Security Documents without the prior written consent of Mortgagee.

C.    Mortgagor covenants and agrees that in the ownership, operation and management of the Mortgaged Premises Mortgagor will observe and comply with all applicable federal, state and local statutes, ordinances, regulations, orders and restrictions, including, without limitation, all zoning, building, code, environmental protection and equal employment opportunities statutes, ordinances, regulations, orders and restrictions. Mortgagor represents and covenants that it and any tenant of space in the Mortgaged Premises will not generate, store, handle, or otherwise deal with hazardous substances on the Mortgaged Premises which conduct shall violate any applicable laws, statutes, rules or regulations, both federal and local.

D.     Mortgagor covenants and agrees that, with the exceptions of the Senior Mortgages and Third Mortgage, Mortgagor will not grant, consent to, or allow to remain unpaid any other liens, encumbrances, judgments, taxes, or other claims against the Mortgaged Premises, whether prior or subordinate to the rights of Mortgagee therein, without the prior written consent of Mortgagee.

E.     Mortgagor covenants, warrants and represents that:

(i)     Mortgagor has not used Hazardous Materials (as defined below) on, from or affecting the Mortgaged Premises in any manner which violates federal, state or local laws, ordinances, rules, regulations or policies governing the use, storage, treatment, transportation, manufacture, refinement, handling, production or disposal of Hazardous Material and, to the best of Mortgagor's knowledge, no prior owner of the Mortgaged Premises or any existing or prior tenant, or occupant has used Hazardous Materials on, from or affecting the Mortgaged Premises in any manner which violates federal, state or local laws, ordinances, rules, regulations or policies governing the use, storage, treatment, transportation, manufacture, refinement, handling, production or disposal of Hazardous Materials;

(ii)     Mortgagor has never received any notice of any violations (and is not aware of any existing violations) of federal, state or local laws, ordinances, rules, regulations or policies governing the use, storage, treatment, transportation, manufacture, refinement, handling, production or disposal or Hazardous Materials at the Mortgaged Premises and, to the best of Mortgagor's knowledge, there have been no actions commenced or threatened by any party for noncompliance which affects the Mortgaged Premises;

(iii)     Mortgagor shall keep or cause the Mortgaged Premises to be kept free of Hazardous Materials except to the extent that such Hazardous Materials are stored and/or used in compliance with all applicable federal, state and local laws and regulations; and, without limiting the foregoing, Mortgagor shall not cause or permit the Mortgaged Premises to be used to generate, manufacture, refine, transport, treat, store, handle, dispose of, transfer, produce, or process Hazardous Materials, except in compliance with all applicable federal, state and local laws and regulations, nor shall Mortgagor cause or permit, as result of any intentional or unintentional act or omission on the part of Mortgagor or any tenant, subtenant or occupant, a release, spill, leak or emission of Hazardous Materials onto the Real Estate or onto any other contiguous property;

(iv)     Mortgagor shall conduct and complete all investigations including a comprehensive environmental audit, studies, sampling and testing, and all remedial, removal and other actions necessary to clean up and remove all Hazardous Materials on, under, from or affecting the Mortgaged Premises as required by all applicable federal, state and local laws, ordinances, rules, regulations and policies, to the satisfaction of Mortgagee, and in accordance with the orders and directives of all federal, state and local governmental authorities. If Mortgagor fails to conduct an environmental audit required

by Mortgagee, then Mortgagee may at its option and at the expense of Mortgagor, conduct such audit.

Subject to the limitations set forth below, Mortgagor shall defend, indemnify, and hold harmless Mortgagee, its employees, agents, officers and directors, from and against any claims, demands, penalties, fines, liabilities, settlements, damages, costs, or expenses, including, without limitation, attorney's and consultant's fees, investigation and laboratory fees, court costs and litigation expenses, known or unknown, contingent or otherwise, arising out of or in any way related to (1) the presence, disposal, release, or threatened release of any Hazardous Materials on, over, under from or affecting the Mortgaged Premises or the soil, water, vegetation, buildings, personal property, persons or animals, (2) any personal injury (including wrongful death) or property damage (real or personal) arising out of or related to Hazardous Materials on the Mortgaged Premises, (3) any lawsuit brought or threatened, settlement, reached or government order relating to such Hazardous Materials with respect to the Mortgaged Premises, and/or (4) any violation of laws, orders, regulations, requirements or demands of government authorities or any policies or requirements of Mortgagee, which are based upon or in any way related to such Hazardous Materials used upon the Mortgaged Premises. The indemnity obligations under this paragraph are specifically limited as follows:

A.    Mortgagor shall have no indemnity obligation with respect to Hazardous Materials that are first introduced to the Mortgaged Premises or any part of the Real Estate subsequent to the date that Mortgagor's interest in and possession of the Mortgaged Premises or any part of the Mortgaged Premises shall have fully terminated by foreclosure of this Mortgage or acceptance of a deed in lieu of foreclosure;

B.    Mortgagor shall have no indemnity obligation with respect to any hazardous Materials introduced to the Mortgaged Premises or any part of the Real Estate by Mortgagee, its successors or assigns.

Mortgagor agrees that in the event this Mortgage is foreclosed or Mortgagor tenders a deed in lieu of foreclosure, Mortgagor shall deliver the Mortgaged Premises to Mortgagee free of any and all Hazardous Materials which are then required to be removed (whether over time or immediately) pursuant to applicable federal, state and local laws, ordinances, rules or regulations affecting the Mortgaged Premises.

For purposes of this Mortgage, "Hazardous Materials" includes, without limitation, any flammable explosives, radioactive materials, hazardous materials, hazardous wastes, hazardous or toxic substances or related materials defined in the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended (42 U.S.C. Sections 9601, et. seq.), the Hazardous Materials Transportation Act, as amended (49 U.S.C. Sections 1801, et leg.), the Resource Conservation and Recovery Act, as amended (42 U.S.C. Section 6901, et seq.) and in the regulations adopted and publications promulgated pursuant thereto, or any other federal, state or local governmental law, ordinance, rule or regulation.

The provisions of this Section shall be in addition to any and all other obligations and liabilities Mortgagor may have to Mortgagee under any Security Documents, and at common

law, and shall survive (1) the extinguishment of the Obligations, (2) the satisfaction of all of the other obligations of Mortgagor in the Mortgage and under any Security Documents, (3) the discharge of this Mortgage, and (4) the foreclosure of this Mortgage or acceptance of a deed in lieu of foreclosure. Notwithstanding anything to the contrary contained in this Mortgage, it is the intention of Mortgagor and Mortgagee that the indemnity provisions of this Section shall only apply to an action commenced against any owner or operator of the Mortgaged Premises in which any interest of Mortgagee is threatened or any claim is made against Mortgagee for the payment of money.

      10.    <u>Escrow Deposits</u>.  Reserved.

      11.    <u>Collateral Assignment of Leases and Rents</u>. Mortgagor hereby collaterally assigns to Mortgagee all the rents and revenues of the Mortgaged Premises, including those now due, or to become due by virtue of any lease or other agreement for the occupancy or use of all or any part of the Mortgaged Premises, regardless of to whom the rents and revenues of the Mortgaged Premises are payable.  Upon delivery of written notice by Mortgagee to Mortgagor of the breach by Mortgagor of any covenant or agreement of Mortgagor in this Mortgage, and without the necessity of Mortgagee entering upon and taking and maintaining full control of the Mortgaged Premises in person, by agent or by a court-appointed receiver, Mortgagee shall immediately be entitled to possession of all rents and revenues of the Mortgaged Premises as specified in this Section 11 as the same become due and payable, including but not limited to rents then due and unpaid, and all such rents shall immediately upon delivery of such notice be held by Mortgagor as trustee for the benefit of Mortgagee only; provided, however, that the written notice by Mortgagee to Mortgagor of the breach by Mortgagor shall contain a statement that Mortgagee exercises its rights to such rents. Mortgagor agrees that commencing upon delivery of such written notice of Mortgagor's breach by Mortgagee to Mortgagor, each tenant of the Mortgaged Premises shall make such rents payable to and pay such rents to Mortgagee or Mortgagee's agents on Mortgagee's written demand to each tenant therefor, delivered to each tenant personally or by mail, without any liability on the part of said tenant to inquire further as to the existence of a default by Mortgagor.

      Upon request by Mortgagee, Mortgagor will assign to Mortgagee, as further security for the Obligations, its interest, as lessor, in any or all leases of all or any portion of the Mortgaged Premises and in any licenses, permits, agreements or contracts pertaining to the Mortgaged Premises. Such assignments are to be made by instruments in form satisfactory to Mortgagee, but no such assignment shall be construed as a consent by Mortgagee to any lease, license, permit, agreement or contract so assigned or impose upon Mortgagee any obligations with respect thereto. Except for dealings in the ordinary course of business which are in the best interests of both Mortgagor and Mortgagee, Mortgagor will not cancel any of the leases now or hereafter assigned to Mortgagee nor terminate or accept a surrender thereof or reduce the payment of the rent thereunder or modify any of the said leases or accept any prepayment of rent (except any amount which may be required to be prepaid by the terms of any such lease) without first obtaining, on each occasion, the prior written consent of Mortgagee. Mortgagor will perform all of its obligations as lessor under all of the leases now or hereafter assigned to Mortgagee.

12.    Subrogation.   If the proceeds of the Obligations, or any part thereof, or any amount paid out or advanced by Mortgagee, be used directly, or indirectly to pay off, discharge or satisfy, in whole or in part, any prior lien or encumbrance upon said Mortgaged Premises or any part thereof, then Mortgagee shall be subrogated to the rights of the holder of such lien or encumbrance, although such lien or encumbrance may have been released of record.

13.    Security Interest.   Mortgagor hereby grants and transfers to Mortgagee a security interest in (a) all machinery, equipment, appliances, improvements, furniture, fixtures and other tangible personal property now owned or hereafter acquired by Mortgagor attached to, located on, forming a part of, or used in connection with the Real Estate and owned by Mortgagor, all property of like kind or type hereafter acquired by Mortgagor in substitution or replacement thereof, together with all tools, accessories, parts, equipment, and accessions now in, attached to, or which may hereafter at any time be placed in or added to the above-described property and owned by Mortgagor, including all after-acquired property, replacements, and proceeds thereof (including tort claims and insurance) ("Tangible Collateral"), and (b) all rents, royalties, income, security deposits, funds, proceeds and/or profits received or receivable by Mortgagor from all leases, rental agreements, or occupancies of the Real Estate, and all accounts, contract rights, and general intangibles, and the proceeds thereof ("Cash Collateral") (said Tangible Collateral and Cash Collateral being collectively referred to as the "Chattel Property") to secure the payment of the Obligations and any extensions or renewals thereof.  The security interest hereby granted shall continue until full performance by Mortgagor of all conditions and obligations of this Mortgage. Mortgagor shall be entitled to possession of the Chattel Property until default, but shall use the Chattel Property in a careful and prudent manner, maintain the Chattel Property in good repair, pay all taxes and other charges thereon when due, and defend the Chattel Property at all times against any claims during the duration of this Mortgage. Except for removal to repair the Chattel Property, Mortgagor shall not permit the Chattel Property to be removed from the Real Estate without the prior written consent of Mortgagee. Upon any default, Mortgagee, at its option and without notice or demand, shall be entitled to enter upon the Real Estate to take immediate possession of the Chattel Property or to render the same unusable. Upon request, Mortgagor shall assemble and make the Chattel Property available to Mortgagee at a place to be designated by Mortgagee which is reasonably convenient to both parties. Upon repossession, Mortgagee may propose to retain the Chattel Property in partial satisfaction of the Obligations or sell all or any portion of the Chattel Property at public or private sale in accordance with the Uniform Commercial Code as adopted in Indiana or any other applicable statute. In the further event that Mortgagee shall dispose of any or all of the Chattel Property after default, the proceeds of disposition shall be first applied in the following order: (a) to the reasonable expenses of retaking, holding, preparing for sale, selling and the like, (b) to the reasonable attorneys' fees and legal expenses incurred by Mortgagee, and (c) to the satisfaction of the Obligations. Mortgagor authorizes Mortgagee to file financing statements covering the security interest of Mortgagee in the Chattel Property.

14.    Expenses of Mortgagee.   Mortgagor hereby indemnifies Mortgagee and agrees to save it harmless from any and all loss, damage or expense, including attorneys' fees, resulting from or arising out of the execution and delivery of this Mortgage. All sums paid by Mortgagee, including attorneys' fees, to cure defaults by Mortgagor hereunder, for the expense of any litigation to prosecute or defend the rights and lien created hereby in any action or proceeding to

which Mortgagee is made a party by reason of this Mortgage, or in which it becomes necessary to defend or uphold the lien of this Mortgage or the Security Documents, shall be paid by Mortgagor to Mortgagee, together with interest thereon from date of payment at a per annum rate equal to the rate of interest accruing on the Obligations, and any such sums and interest thereon shall be immediately due and payable and secured hereby.

15.   <u>Change of Laws</u>.  In the event of the enactment after the date hereof of any law of the State in which the Mortgaged Premises are located imposing upon Mortgagee the payment of the whole or any part of the taxes or assessments for charges and liens herein required to be paid by Mortgagor, or the passing or creation of any law deducting from the value of the Mortgaged Premises any lien thereon for the purpose of taxation of Mortgagee, or changing in any way the laws now in force for the taxation of mortgages, or the Obligations, or changing the manner of collection of any such taxation from Mortgagor so as to affect this Mortgage or the Obligations, then in such event Mortgagor, upon demand by Mortgagee, shall pay such taxes or assessments or reimburse Mortgagee therefor; provided, however, that if it is unlawful for Mortgagor to make such payment, or the making of such payment would impose a rate of interest beyond the maximum permitted by law, then and in such event, such payments by Mortgagor shall be delayed until the earliest interest payment dates on which the receipt thereof would be permissible under the laws applicable to Mortgagee limiting rates of interest which may be charged or collected by Mortgagee.

16.   <u>Events of Default</u>.  The occurrence of any one or more of the following events shall be deemed to be an event of default ("Event of Default") under this Mortgage:

    (a)    Any default under the Note;

    (b)    Failure to pay or perform under any of the Security Documents according to their respective terms, which breach is not cured within any applicable grace period under the respective Security Document;

    (c)    Breach of any covenant, representation, term, provision, condition, or agreement contained in this Mortgage or any of the Security Documents or any other writing executed by Mortgagor in connection with the indebtedness secured hereby, which breach is not cured by Mortgagor within thirty (30) days following issuance of written notice by Mortgagee or any applicable grace period under any such Security Documents. In the event of a default other than non-payment where such default is incurable within such applicable grace period and where Mortgagor is diligently pursuing its cure, then whenever Mortgagee reasonably determines that Mortgagor is no longer diligently pursuing the cure or that the cure will not be completed within a reasonable time beyond the applicable cure period;

    (d)    The filing by Mortgagor or Borrower of a petition in voluntary bankruptcy or under any Chapter of the Federal Bankruptcy Code or other similar law, state or federal, whether now or hereafter existing, or an answer admitting

insolvency or inability to pay its debts, or failure to obtain a vacation or stay of involuntary bankruptcy or insolvency proceedings within sixty (60) days;

(e)     The adjudication of Mortgagor or Borrower as a bankrupt, or the appointment of a trustee or receiver for Mortgagor or Borrower or for all or substantially all of its respective property in any involuntary proceeding, or the taking of jurisdiction by any court over the property of Mortgagor or Borrower or of substantially all thereof in any involuntary proceeding for the reorganization, dissolution, Liquidation or winding up of Mortgagor and the failure to discharge such trustee or receiver or relinquish such jurisdiction or vacate or stay on appeal or otherwise stay such proceedings within sixty (60) days;

(f)     The making by Mortgagor or Borrower of an assignment for the benefit of creditors or the admitting by Mortgagor or Borrower in writing of its inability to pay its debts generally as they become due, or the consent by Mortgagor or Borrower to the appointment of a receiver or trustee or liquidator of all of its properties or substantially all thereof; or

(g)     Abandonment of the Mortgaged Premises by Mortgagor.

17.     <u>Remedies Following an Event of Default</u>.  In the event of the occurrence of one or more of the above Events of Default, Mortgagee may, in its sole discretion but subject to the rights of the Senior Lenders and the terms of the Senior Mortgages, exercise one or more of the following remedies:

(a)     Declare all of the Obligations secured hereby to be immediately due and payable, without notice or demand; and/or

(b)     Foreclose this Mortgage without relief under valuation and appraisement laws; and/or

(c)     Apply for and be entitled to the appointment of a receiver, the appointment of which is hereby consented to by Mortgagor, and such receiver is hereby authorized to take possession of the Mortgaged Premises, collect any rental, accrued, or to accrue, whether in money or in kind, for the use or occupancy of said Mortgaged Premises by any persons, firm or corporation, and may let or lease the Mortgaged Premises or any part thereof, receive the rents, income and profits therefrom, and hold the proceeds subject to the orders of the court, or the judge thereof, for the benefit of Mortgagee, pending the final decree in the proceedings pursuant to which the receiver has been appointed, and during any period allowed by law for the redemption from any sale ordered in foreclosure proceedings, and said receiver may be appointed irrespective of the value

of the Mortgaged Premises or its adequacy to secure or discharge the Obligations due or to become due or the solvency of Mortgagor; and/or

(d)   Take possession of and hold the Mortgaged Premises, with or without process of law, and collect the rents and profits therefrom, applying same to the charges and payments due under the conditions of this Mortgage so long as default shall continue, which such taking of possession shall in no way waive the right of Mortgagee to exercise the other remedies set forth herein because of a default.

In the event Mortgagee elects one or more of the above remedies upon default, Mortgagor agrees to pay all of the costs and expenses of Mortgagee incurred in pursuance of such remedy or remedies, including without limiting the generality thereof, attorneys' fees, all costs of collection, late payment penalties, abstracts of title or title insurance, hazard insurance on the Mortgaged Premises, real property taxes on the Real Estate and personal property taxes on the Chattel Property which are paid or incurred by Mortgagee, repairs, maintenance, and replacements of the Mortgaged Premises which are paid, advanced or incurred by Mortgagee, payments by Mortgagee to holders of liens or encumbrances on the Mortgaged Premises which are then due and payable, and interest commencing with the date of default, calculated at the rate accruing on the Obligations, on the sum of the above costs and expenses.

18.   _Non-Waiver of Default_.  No failure by Mortgagee in the exercise of any of its rights under this Mortgage shall preclude Mortgagee from the exercise thereof in the event of subsequent Event of Default, and no delay by Mortgagee in the exercise of its rights under this Mortgage shall preclude Mortgagee from the exercise thereof so long as Mortgagor is in default hereunder. Mortgagee may enforce any one or more of its rights or remedies hereunder successively or concurrently.

19.   _Modification of Obligations and Release of Collateral_.  Mortgagee at its option may extend the time for the payment of the Obligations or reduce the payments thereon or accept a renewal note or notes therefor or release all or part of the Mortgaged Premises without the consent of any junior lienholder or Mortgagor if Mortgagor has then parted with title to Mortgaged Premises and no sale of the Mortgaged Premises or forbearance on the part of Mortgagee or its assigns, or extension of the time for the payment of the Obligations or reduction in payments, or acceptance of renewals or release of all or part of the Mortgaged Premises shall affect the priority of this Mortgage or Security Documents or the security hereof or shall operate to release, modify, change or affect the original liability of Mortgagor herein or a subsequent mortgagor, surety or guarantor, either in whole or in part, nor shall the full force and effect of the security of this Mortgage and Security Documents be altered thereby.

20.   _Rights of Successors_.  The covenants herein contained shall bind, and the benefits and advantages shall inure to, the respective legal representatives, successors and assigns of the parties hereto.

21.   _Applicable Law_.  This Mortgage is executed under and shall be construed in accordance with the laws of the State of Indiana.

2997432                              13

22.     Interpretation.   In the event this Mortgage is executed by more than one person, firm or corporation, the liability of the undersigned parties shall be joint and several. Whenever used, the singular shall include the plural, the plural the singular, and the use of any gender shall include all genders. The term "Mortgagee" shall include any payee of the Obligations or any transferee thereof, whether by operation of law or otherwise. Descriptive headings are for convenience only and shall be deemed to not affect the meaning or construction of any provision hereof.

23.     Authority.   Mortgagor is an Indiana limited liability company duly organized and validly existing under the laws of the State of Indiana. The undersigned, on behalf of Mortgagor, has the power, authority and legal right to execute, deliver and perform this Mortgage.

24.     Fixture Filing.   From the date of its recording, this Mortgage (as provided in Indiana Code Section 26-1-9.1-502) shall be effective as a financing statement with respect to all goods constituting part of the Chattel Property which are or are to become fixtures related to the Real Estate described herein. This document covers goods which are or are to become fixtures. The Real Estate to which such fixtures are or are to be attached is that described in **Attachment A** attached hereto, the record owner of which is Mortgagor.

25.     Time is of the Essence.   Time shall be of the essence in Mortgagor's performance of its obligations under this Mortgage and all other Security Documents.

IN WITNESS WHEREOF, Mortgagor has executed this instrument effective as of _____, 2016.

IAD, INC.

By:_____

Michael A. Evans, President

STATE OF INDIANA        )
                        )
COUNTY OF MARION        )

    Before me the undersigned, a Notary Public for MARION County, State of Indiana, personally appeared Michael A. Evans, the President of IAD, Inc., an Indiana corporation, who acknowledged the execution of the above and foregoing Third Leasehold Real Estate Mortgage, Security Agreement, Assignment of Leases and Rents and Fixture Filing on behalf of said corporation.

    Signed and sealed this 12 day of May, 2016.

_____
Signature

_____
Printed

My Commission Expires            My County of Residence is:

_____            _____

I affirm, under the penalties for perjury, that I have taken reasonable care to redact each Social Security number in this document, unless required by law:  James P. Moloy

This Instrument Prepared By:  James P. Moloy, Bose McKinney & Evans LLP, 111 Monument Circle, Suite 2700, Indianapolis, Indiana 46204

KATHLEEN SCHUSTER
Marion County
My Commission Expires
April 4, 2024

2997432                          15

## Attachment A

### Legal Description of the Real Estate

A PART OF THE NORTHEAST QUARTER OF SECTION 26, TOWNSHIP 17 NORTH, RANGE 2 EAST, MARION COUNTY, INDIANA, BEING A PORTION OF THAT LAND SHOWN ON A LAND TITLE SURVEY PREPARED BY WOOLPERT CONSULTANTS RECORDED IN INSTRUMENT NUMBER 93-156219, IN THE OFFICE OF THE RECORDER OF MARION COUNTY, DESCRIBED AS FOLLOWS: COMMENCING AT THE NORTHEAST CORNER OF SAID QUARTER SECTION SAID CORNER BEING NORTH 00°26'04" EAST, 2641.27 FEET, MEASURED ALONG THE EAST LINE OF SAID QUARTER SECTION, FROM THE SOUTHEAST CORNER OF SAID QUARTER SECTION AND NORTH 89°08'56" EAST, 2658.32 FEET, MEASURED ALONG THE NORTH LINE OF SAID QUARTER SECTION FROM THE NORTHWEST CORNER OF SAID QUARTER SECTION; THENCE SOUTH 89°08'56" WEST, 2098.45 FEET ALONG THE NORTH LINE OF SAID QUARTER SECTION;

THENCE SOUTH 00°51'04" EAST, 70.16 FEET TO THE INTERSECTION OF THE SOUTHERN RIGHT-OF-WAY LINE OF WEST 79TH STREET WITH THE WEST LINE OF INNOVATION DRIVE; THENCE SOUTH 00°24'45" WEST ON AND ALONG THE WEST LINE OF SAID INNOVATION DRIVE, 83.95 FEET TO THE POINT OF BEGINNING OF THIS DESCRIPTION;

THENCE NORTH 89°35'15" WEST, 251.01 FEET; THENCE SOUTH 00°26'26" WEST, 90.26 FEET; THENCE SOUTH 89°35'15" EAST, 24.53 FEET; THENCE SOUTH 00°24'45" WEST, 20.54 FEET; THENCE SOUTH 89°28'06" EAST, 43.35 FEET; THENCE SOUTH 00°00'00" WEST, 179.32 FEET; THENCE SOUTH 89°57'25" EAST, 44.72 FEET; THENCE SOUTH 00°10'17" WEST, 20.01 FEET; THENCE SOUTH 89°35'18" EAST, 137.09 FEET TO A POINT ON THE WEST LINE OF INNOVATION DRIVE; THENCE NORTH 00°24'45" EAST, ON AND ALONG THE WEST LINE OF SAID INNOVATION DRIVE, 309.92 FEET TO THE POINT OF BEGINNING, CONTAINING 1.441 ACRES, MORE OR LESS. THE BEARINGS IN THIS DESCRIPTION ARE BASED UPON THE INDIANA STATE PLANE COORDINATE SYSTEM EAST ZONE (NAD83).

## THIRD REAL ESTATE MORTGAGE, SECURITY AGREEMENT, ASSIGNMENT OF LEASES AND RENTS AND FIXTURE FILING

FOR PURPOSES OF THE SECURITY AGREEMENT AND FIXTURE FILING CONTAINED IN THIS INSTRUMENT
THE "SECURED PARTY" AND THE "DEBTOR" AND THEIR RESPECTIVE ADDRESSES ARE AS FOLLOWS:

SECURED PARTY:     AIT Holding Company Employee Stock Ownership Plan
                   2265 Executive Drive
                   Indianapolis, Indiana  46241

DEBTOR:            Indianapolis Airport Development, LLC
                   7840 Innovation Drive
                   Indianapolis, Indiana  46278

COMMON ADDRESS
OF REAL ESTATE:    7840 Innovation Drive
                   Indianapolis, Indiana 46278

THE ADDRESS OF THE SECURED PARTY SHOWN ABOVE IS THE ADDRESS AT WHICH INFORMATION CONCERNING THE SECURED PARTY'S SECURITY INTEREST MAY BE OBTAINED.

THIS MORTGAGE WITNESSETH, That Indianapolis Airport Development, LLC, an Indiana limited liability company ("Mortgagor"), MORTGAGES AND WARRANTS UNTO AIT Holding Company Employee Stock Ownership Plan (the "Mortgagee"), the real estate located in Marion County, Indiana which is more particularly described in **Attachment A**, attached hereto and incorporated herein, together with all improvements, structures and buildings now or hereafter located thereon ("Real Estate"),

TOGETHER WITH all tenements, hereditaments, rights, privileges, interests, easements and appurtenances belonging to or in any way appertaining to such Real Estate, and all rents, issues, income and profits thereof, and all fixtures, appliances, apparatus, equipment or articles now or

2997414

hereafter situated on or used in connection with such Real Estate and owned by Mortgagor including, but not in limitation of the preceding, all gas, water and electric fixtures, radiators, heaters, engines and machinery, boilers, ranges, elevators and motors, plumbing and heating fixtures, water heaters, air conditioning apparatus and units, refrigerating equipment, refrigerators, cooking apparatus, window screens, awnings, storm sash, doors and carpeting (which are or shall be attached to said building, structures or improvements), partitions, equipment, personal property of every kind and nature whatsoever now or hereafter owned by Mortgagor and located in, on or about, or used in connection with the Real Estate, whether physically attached to the Real Estate or not, (hereinafter collectively referred to as the "Chattel Property") and it is agreed that all similar fixtures, appliances, apparatus, equipment or articles hereafter placed on such Real Estate by Mortgagor, and owned by Mortgagor, their successors or assigns, including all replacements or substitutions therefor, shall be considered as constituting part of such Chattel Property all to the use and benefit of Mortgagee, its successors and assigns, and Mortgagor transfers and grants to Mortgagee a security interest in all such Chattel Property now or hereafter owned by Mortgagor and located upon the Mortgaged Premises and all personal property of Mortgagor which is described in Section 13 hereinbelow. For purposes of this Mortgage, the Real Estate and Chattel Property shall be collectively referred to as the "Mortgaged Premises".

**Mortgagor and Mortgagee acknowledge that Fifth Third Bank ("First Lender") has an existing first mortgage ("First Mortgage") on the Mortgaged Premises, and that Bankers Life and Casualty Company and Washington National Insurance Company (collectively, "Second Lender", and together with First Lender the "Senior Lenders") has an existing second mortgage ("Second Mortgage", and together with the First Mortgage the "Senior Mortgages") on the Mortgaged Premises.  Notwithstanding anything in this Mortgage to the contrary, Mortgagor and Mortgagee agree that the Senior Mortgages are permitted encumbrances on the Mortgaged Premises and that the Senior Mortgages shall have priority over the Mortgage.  In the event of any conflict between the terms of this Mortgage and the Senior Mortgages, the terms of the Senior Mortgages shall control. Mortgagee will release this Mortgage upon a sale of the Mortgaged Premises that is approved by (i) the First Lender, if the First Mortgage is still of record, or (ii) the Second Lender, if the First Mortgage is no longer of record.**

MORTGAGOR HEREBY COVENANTS AND AGREES AS FOLLOWS:

1.    <u>Security</u>. This Mortgage is given as security for the following:

(a)    Mortgagor's performance of the covenants contained in this Mortgage; and

(b)    The executed Non-recourse Promissory Note ("Note") by Dr. Michael A. Evans in favor of the Mortgagee, in the principal amount of $5,900,000 or the net proceeds of the Collateral (as defined in the Note), whichever is less, scheduled to mature at the latest on _____, 2026

(such obligations hereinabove described collectively hereinafter referred to as the "Obligations"; the Mortgage and Note are collectively referred to herein as the "Security Documents").

2.     Promise to Pay. The Mortgagor agrees to pay, perform and observe the obligations, requirements and responsibilities as set forth in the Security Documents as provided therein, without relief from valuation and appraisement laws and with attorney's fees.

3.     Title to Mortgaged Premises and Lien of Mortgage. Mortgagor is the owner in fee simple of the Real Estate and has full power to mortgage the same; Mortgagor has good and valid title to the Chattel Property free and clear of all security interests and encumbrances except the Senior Mortgages and has full power to grant a security interest in the same; and the Real Estate is free and clear of any and all liens and encumbrances, use restrictions of record, zoning ordinances, rights-of-way and easements of record, except the Senior Mortgages and such liens, encumbrances and zoning ordinances which do not materially detract from the value of such property or its usefulness for the purposes intended by Mortgagor, and the lien of current taxes and assessments not delinquent. Mortgagor will make any further assurances of title that Mortgagee may require and will warrant and defend the Mortgaged Premises against all adverse claims and demands whatsoever. This Mortgage creates a continuing lien to secure the full and final payment of the Obligations.

4.     Insurance. Mortgagor will assure and confirm to the reasonable satisfaction of Mortgagee the maintenance at all times of Fire, Extended Coverage, Vandalism, Malicious Mischief and other hazard insurance with respect to the Mortgaged Premises, and public liability insurance with such insurance companies and in forms and amounts as are reasonably acceptable to and approved by Mortgagee against loss or destruction on account of fire, windstorm or other such hazards, casualties and contingencies customarily insured against, and injury to the person or property, including, without limiting the generality thereof, rents loss insurance in an amount equal to one year of gross rental, and such flood, and/or earthquake insurance as may be reasonably required by Mortgagee.  All insurance policies are to be held by and, to the extent of its interests, for the benefit of and first payable in case of loss to Mortgagee, and Mortgagor shall deliver to Mortgagee a new policy as replacement for any expiring policy at least fifteen (15) days before the date of such expiration.

All such policies of insurance shall contain waiver of subrogation clauses and shall have attached thereto the non-contributory New York Standard Mortgagee clause or its equivalent in favor of Mortgagee with cancellation only upon at least ten (10) days' prior written notice to Mortgagee.  All amounts recoverable under any policy are hereby assigned to Mortgagee and, in the event of a loss, Mortgagor will give immediate notice by mail to Mortgagee, and Mortgagee may make proof of loss if not made promptly by Mortgagor. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Mortgagee rather than to Mortgagee and Mortgagor jointly. In the event such proceeds are insufficient to effect such restoration, Mortgagee shall have no obligation to make such proceeds available to restore the Mortgaged Premises unless the Mortgagor furnishes satisfactory evidence of the availability of funds to complete such restoration and Mortgagee determines, in its sole but reasonable discretion, that the Mortgaged Premises, following restoration and reconstruction, will remain economically feasible utilizing the same standards and analyses as set forth in the most recent appraisal of the Mortgaged Premises engaged by Mortgagee prior to the execution of this Mortgage. In the event that Mortgagor elects to apply such insurance proceeds to restoration of

the Mortgaged Premises and such insurance proceeds exceed the total cost of restoration, such excess proceeds shall be retained by Mortgagee and applied to reduce the then-outstanding Obligations.

Mortgagor will not do or suffer to be done anything which will increase the risk of fire or other hazard to the Mortgaged Premises or any part thereof without first causing such increased risk to be fully and adequately covered by insurance. Insurance as above-described shall also be obtained on all fixtures and personal property used by Mortgagor in connection with the Real Estate to the extent that the value thereof is not otherwise included in the insurance on the Mortgaged Premises. In the event of foreclosure of this Mortgage or other transfer of title of the Mortgaged Premises in extinguishment of the Obligations, all right, title and interest of Mortgagor, in and to any insurance policies then in force shall pass to the purchaser or grantee of the Mortgaged Premises.

In the event that, prior to the extinguishment of the Obligations, there exists any claim under any hazard insurance policies which shall not have been paid and distributed in accordance with the terms of this Mortgage, and any such claims shall be paid after the extinguishment of the Obligations, and the foreclosure of this Mortgage, transfer of title to the Mortgaged Premises, or extinguishment of the Obligations shall have resulted in extinguishment of the Obligations for an amount less than the total of the unpaid principal balance together with accrued interest plus costs of litigation, attorneys' fees, title insurance and all other costs and expenses incurred by Mortgagee in any action involving such extinguishment, then, without limitation, that portion of the payment in satisfaction of the claim which is equal to the difference between the total amount of the aforementioned amounts due Mortgagee and the amount in extinguishment of the Obligations received by Mortgagee shall belong to and be the property of Mortgagee and shall be paid to Mortgagee, and Mortgagor hereby assigns, transfers and sets over to Mortgagee all of Mortgagor's right, title and interest in and to said sum. The balance, if any, shall belong to Mortgagor. Notwithstanding the above, Mortgagor shall retain an interest in the insurance policies above-described during any redemption period.

5.    Taxes.  Mortgagor will pay, before the same become delinquent or any penalty for non-payment attaches thereto, all taxes, assessments and charges of every nature now or hereafter levied or assessed against or upon the Mortgaged Premises, or any part thereof, or upon the rents, issues, income or profits therefrom, which by reason of non-payment could become a lien prior or junior to this Mortgage, except such as are being contested by appropriate proceedings and for which an adequate reserve is maintained, whether any or all of said taxes, assessments or charges be levied directly or indirectly or as excise taxes or as income taxes, and will submit to Mortgagee such evidence of the timely payment of such taxes, assessments and charges as Mortgagee may require, and Mortgagor will also pay all taxes, assessments or charges which may be levied on this Mortgage, excepting any state or federal income taxes or state intangibles taxes. In default thereof, Mortgagee may pay such taxes, assessments and other similar charges, of which payment, amount and validity thereof the receipt of the proper officer shall be conclusive evidence, and all sums so paid shall bear interest at the rate accruing on the Obligations, shall be payable on demand, and shall be fully secured by this Mortgage and the Security Documents.

6.     Care of Mortgaged Premises.  Mortgagor will keep the Mortgaged Premises in good order, repair and condition at all times and will not commit waste or allow waste to be committed against the Mortgaged Premises. Mortgagor will not commit or allow the commission of any violation of any law, regulation, ordinance or contract affecting the Mortgaged Premises and will not commit or allow any demolition, removal or material alteration of any of the buildings or improvements (including fixtures) constituting a part of the Mortgaged. Premises without the prior written consent of Mortgagee. Subject to the rights of tenants, Mortgagee shall at reasonable times during normal business hours have free access to the Mortgaged Premises for the purposes of inspection and the exercise of its rights hereunder.

7.     Advancements to Protect Security.  If Mortgagor shall neglect or refuse to keep the Mortgaged Premises in good repair, to maintain and to pay the premiums for insurance which may be required, or to pay and discharge all taxes, assessments and charges of every nature assessed against Mortgagor or the Mortgaged Premises, so as to protect and preserve the security intended by this Mortgage, all as provided for under the terms of this Mortgage, or to pay all liens and encumbrances when due, whether such liens or encumbrances are permitted by Mortgagee or not, or if Mortgagor shall permit any lien or encumbrance on the Mortgaged Premises to be in default, Mortgagee may, at its option, cause such repairs or replacements to be made, obtain such insurance or pay said taxes, assessments, charges and pay such liens and encumbrances and cure such defaults thereunder. Any amounts paid as a result thereof, together with interest at the per annum rate equal to the rate of interest accruing on the Obligations from the date of payment, shall be immediately due and payable by Mortgagor to Mortgagee, and until paid shall be added to and become a part of the Obligations. Further, the same may be collected by Mortgagee in any suit hereon, or Mortgagee, by payment of any tax, assessment or charge, may, at its discretion, be subrogated to the rights of the governmental subdivision levying such tax, assessment or charge. No such advances shall be deemed to relieve Mortgagor from any default hereunder or impair any rights or remedy of Mortgagee, and the exercise by Mortgagee of the right to make advances shall be optional with Mortgagee and not be obligatory and Mortgagee shall not in any case be liable to Mortgagor for a failure to exercise any such right.

8.     Condemnation.  All awards made by any public or quasi-public authority for damages to the Real Estate by virtue of an exercise of the right or threat of eminent domain by such authority, including any award for a taking of title, possession or right of access to a public way, or for any change of grade of streets affecting the Real Estate, are hereby assigned to Mortgagee; and Mortgagee, at its option, is hereby authorized, directed and empowered to collect and receive the proceeds of any such award to the extent of the Obligations or payable under this Mortgage from the authorities making the same and to give proper receipts and acquittances therefor; provided, however, as long as no uncured Event of Default exists and the portion of the Mortgaged Premises condemned may be replaced or restored to a condition satisfactory to Mortgagee prior to the maturity of the Obligations, such condemnation proceeds shall, at the option of Mortgagor, be available to restore the Mortgaged Premises to substantially the same condition as existed immediately prior to such condemnation proceeding. In the event such proceeds are insufficient to effect such restoration, Mortgagee shall have no obligation to make such proceeds available to restore the Mortgaged Premises unless the Mortgagor furnishes satisfactory evidence of the availability of funds to complete such restoration. In the event that Mortgagor elects to apply such condemnation proceeds to the restoration of the Mortgaged

Premises and such condemnation proceeds exceed the total cost of restoration, such excess proceeds shall be retained by Mortgagee and applied to reduce the then-outstanding Obligations. Mortgagee is authorized, at its option, to appear in and prosecute in its own name any action or proceeding or to make any compromise or settlement in connection with such taking or damage to the extent of Mortgagee's interest and, with consent and joinder of Mortgagor, to make any compromise or settlement in connection with such taking or damage. Mortgagor will, upon request by Mortgagee, execute and deliver any and all assignments and other instruments sufficient for the purpose of assigning all proceeds from such awards to Mortgagee free and clear and discharged of any and all encumbrances or claims of any kind or nature whatsoever.

9.    Covenant Against Sale, Other Liens and Other Security Interests, Violation of Laws and Environmental Matters and Indemnification.

A.    Mortgagor covenants and agrees not to sell or transfer all or any part of the Mortgaged Premises without the prior written consent of Mortgagee; provided, however, that Mortgagee shall provide such consent in the event that Senior Lenders approve a sale of the Mortgaged Premises.

B.    Mortgagor hereby covenants that no lien of any mechanics or materialmen has attached, or may validly attach, to the Real Estate or any part thereof except such as are being contested by appropriate proceedings; that Mortgagor will pay all sums which if not paid may result in the acquisition or creation of a lien prior to or of equal priority with or junior to the lien of this Mortgage (except such as are being contested by appropriate proceedings) or which may result in conferring upon a tenant of any part of the Mortgaged Premises a right to recover such sums as prepaid rent or as a credit or offset against any future rental obligation; that Mortgagor will not use the Mortgaged Premises for any purpose which violates any federal or state law, governmental regulation or local ordinance; and, that Mortgagor will not grant any other lien or security interest on any part of the Mortgaged Premises without full disclosure to and prior written consent by Mortgagee. Mortgagor shall not acquire any equipment or fixtures covered by this Mortgage or the Security Documents subject to any security interest or other charge or lien, having priority over the lien or security interest granted under this Mortgage or the Security Documents without the prior written consent of Mortgagee.

C.    Mortgagor covenants and agrees that in the ownership, operation and management of the Mortgaged Premises Mortgagor will observe and comply with all applicable federal, state and local statutes, ordinances, regulations, orders and restrictions, including, without limitation, all zoning, building, code, environmental protection and equal employment opportunities statutes, ordinances, regulations, orders and restrictions. Mortgagor represents and covenants that it and any tenant of space in the Mortgaged Premises will not generate, store, handle, or otherwise deal with hazardous substances on the Mortgaged Premises which conduct shall violate any applicable laws, statutes, rules or regulations, both federal and local.

D.    Mortgagor covenants and agrees that, with the exceptions of the Senior Mortgages and Third Mortgage, Mortgagor will not grant, consent to, or allow to remain unpaid any other liens, encumbrances, judgments, taxes, or other claims against the Mortgaged Premises, whether

prior or subordinate to the rights of Mortgagee therein, without the prior written consent of Mortgagee.

    E.    Mortgagor covenants, warrants and represents that:

    (i)    Mortgagor has not used Hazardous Materials (as defined below) on, from or affecting the Mortgaged Premises in any manner which violates federal, state or local laws, ordinances, rules, regulations or policies governing the use, storage, treatment, transportation, manufacture, refinement, handling, production or disposal of Hazardous Material and, to the best of Mortgagor's knowledge, no prior owner of the Mortgaged Premises or any existing or prior tenant, or occupant has used Hazardous Materials on, from or affecting the Mortgaged Premises in any manner which violates federal, state or local laws, ordinances, rules, regulations or policies governing the use, storage, treatment, transportation, manufacture, refinement, handling, production or disposal of Hazardous Materials;

    (ii)    Mortgagor has never received any notice of any violations (and is not aware of any existing violations) of federal, state or local laws, ordinances, rules, regulations or policies governing the use, storage, treatment, transportation, manufacture, refinement, handling, production or disposal or Hazardous Materials at the Mortgaged Premises and, to the best of Mortgagor's knowledge, there have been no actions commenced or threatened by any party for noncompliance which affects the Mortgaged Premises;

    (iii)    Mortgagor shall keep or cause the Mortgaged Premises to be kept free of Hazardous Materials except to the extent that such Hazardous Materials are stored and/or used in compliance with all applicable federal, state and local laws and regulations; and, without limiting the foregoing, Mortgagor shall not cause or permit the Mortgaged Premises to be used to generate, manufacture, refine, transport, treat, store, handle, dispose of, transfer, produce, or process Hazardous Materials, except in compliance with all applicable federal, state and local laws and regulations, nor shall Mortgagor cause or permit, as result of any intentional or unintentional act or omission on the part of Mortgagor or any tenant, subtenant or occupant, a release, spill, leak or emission of Hazardous Materials onto the Real Estate or onto any other contiguous property;

    (iv)    Mortgagor shall conduct and complete all investigations including a comprehensive environmental audit, studies, sampling and testing, and all remedial, removal and other actions necessary to clean up and remove all Hazardous Materials on, under, from or affecting the Mortgaged Premises as required by all applicable federal, state and local laws, ordinances, rules, regulations and policies, to the satisfaction of Mortgagee, and in accordance with the orders and directives of all federal, state and local governmental authorities. If Mortgagor fails to conduct an environmental audit required by Mortgagee, then Mortgagee may at its option and at the expense of Mortgagor, conduct such audit.

Subject to the limitations set forth below, Mortgagor shall defend, indemnify, and hold harmless Mortgagee, its employees, agents, officers and directors, from and against any claims, demands, penalties, fines, liabilities, settlements, damages, costs, or expenses, including, without limitation, attorney's and consultant's fees, investigation and laboratory fees, court costs and litigation expenses, known or unknown, contingent or otherwise, arising out of or in any way related to (1) the presence, disposal, release, or threatened release of any Hazardous Materials on, over, under from or affecting the Mortgaged Premises or the soil, water, vegetation, buildings, personal property, persons or animals, (2) any personal injury (including wrongful death) or property damage (real or personal) arising out of or related to Hazardous Materials on the Mortgaged Premises, (3) any lawsuit brought or threatened, settlement, reached or government order relating to such Hazardous Materials with respect to the Mortgaged Premises, and/or (4) any violation of laws, orders, regulations, requirements or demands of government authorities or any policies or requirements of Mortgagee, which are based upon or in any way related to such Hazardous Materials used upon the Mortgaged Premises. The indemnity obligations under this paragraph are specifically limited as follows:

A.    Mortgagor shall have no indemnity obligation with respect to Hazardous Materials that are first introduced to the Mortgaged Premises or any part of the Real Estate subsequent to the date that Mortgagor's interest in and possession of the Mortgaged Premises or any part of the Mortgaged Premises shall have fully terminated by foreclosure of this Mortgage or acceptance of a deed in lieu of foreclosure;

B.    Mortgagor shall have no indemnity obligation with respect to any hazardous Materials introduced to the Mortgaged Premises or any part of the Real Estate by Mortgagee, its successors or assigns.

Mortgagor agrees that in the event this Mortgage is foreclosed or Mortgagor tenders a deed in lieu of foreclosure, Mortgagor shall deliver the Mortgaged Premises to Mortgagee free of any and all Hazardous Materials which are then required to be removed (whether over time or immediately) pursuant to applicable federal, state and local laws, ordinances, rules or regulations affecting the Mortgaged Premises.

For purposes of this Mortgage, "Hazardous Materials" includes, without limitation, any flammable explosives, radioactive materials, hazardous materials, hazardous wastes, hazardous or toxic substances or related materials defined in the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended (42 U.S.C. Sections 9601, et. seq.), the Hazardous Materials Transportation Act, as amended (49 U.S.C. Sections 1801, et leg.), the Resource Conservation and Recovery Act, as amended (42 U.S.C. Section 6901, et seq.) and in the regulations adopted and publications promulgated pursuant thereto, or any other federal, state or local governmental law, ordinance, rule or regulation.

The provisions of this Section shall be in addition to any and all other obligations and liabilities Mortgagor may have to Mortgagee under any Security Documents, and at common law, and shall survive (1) the extinguishment of the Obligations, (2) the satisfaction of all of the other obligations of Mortgagor in the Mortgage and under any Security Documents, (3) the discharge of this Mortgage, and (4) the foreclosure of this Mortgage or acceptance of a deed in

lieu of foreclosure. Notwithstanding anything to the contrary contained in this Mortgage, it is the intention of Mortgagor and Mortgagee that the indemnity provisions of this Section shall only apply to an action commenced against any owner or operator of the Mortgaged Premises in which any interest of Mortgagee is threatened or any claim is made against Mortgagee for the payment of money.

      10.    <u>Escrow Deposits</u>. Reserved.

      11.    <u>Collateral Assignment of Leases and Rents</u>. Mortgagor hereby collaterally assigns to Mortgagee all the rents and revenues of the Mortgaged Premises, including those now due, or to become due by virtue of any lease or other agreement for the occupancy or use of all or any part of the Mortgaged Premises, regardless of to whom the rents and revenues of the Mortgaged Premises are payable. Upon delivery of written notice by Mortgagee to Mortgagor of the breach by Mortgagor of any covenant or agreement of Mortgagor in this Mortgage, and without the necessity of Mortgagee entering upon and taking and maintaining full control of the Mortgaged Premises in person, by agent or by a court-appointed receiver, Mortgagee shall immediately be entitled to possession of all rents and revenues of the Mortgaged Premises as specified in this Section 11 as the same become due and payable, including but not limited to rents then due and unpaid, and all such rents shall immediately upon delivery of such notice be held by Mortgagor as trustee for the benefit of Mortgagee only; provided, however, that the written notice by Mortgagee to Mortgagor of the breach by Mortgagor shall contain a statement that Mortgagee exercises its rights to such rents. Mortgagor agrees that commencing upon delivery of such written notice of Mortgagor's breach by Mortgagee to Mortgagor, each tenant of the Mortgaged Premises shall make such rents payable to and pay such rents to Mortgagee or Mortgagee's agents on Mortgagee's written demand to each tenant therefor, delivered to each tenant personally or by mail, without any liability on the part of said tenant to inquire further as to the existence of a default by Mortgagor.

      Upon request by Mortgagee, Mortgagor will assign to Mortgagee, as further security for the Obligations, its interest, as lessor, in any or all leases of all or any portion of the Mortgaged Premises and in any licenses, permits, agreements or contracts pertaining to the Mortgaged Premises. Such assignments are to be made by instruments in form satisfactory to Mortgagee, but no such assignment shall be construed as a consent by Mortgagee to any lease, license, permit, agreement or contract so assigned or impose upon Mortgagee any obligations with respect thereto. Except for dealings in the ordinary course of business which are in the best interests of both Mortgagor and Mortgagee, Mortgagor will not cancel any of the leases now or hereafter assigned to Mortgagee nor terminate or accept a surrender thereof or reduce the payment of the rent thereunder or modify any of the said leases or accept any prepayment of rent (except any amount which may be required to be prepaid by the terms of any such lease) without first obtaining, on each occasion, the prior written consent of Mortgagee. Mortgagor will perform all of its obligations as lessor under all of the leases now or hereafter assigned to Mortgagee.

      12.    <u>Subrogation</u>. If the proceeds of the Obligations, or any part thereof, or any amount paid out or advanced by Mortgagee, be used directly, or indirectly to pay off, discharge or satisfy, in whole or in part, any prior lien or encumbrance upon said Mortgaged Premises or

any part thereof, then Mortgagee shall be subrogated to the rights of the holder of such lien or encumbrance, although such lien or encumbrance may have been released of record.

13.   Security Interest.  Mortgagor hereby grants and transfers to Mortgagee a security interest in (a) all machinery, equipment, appliances, improvements, furniture, fixtures and other tangible personal property now owned or hereafter acquired by Mortgagor attached to, located on, forming a part of, or used in connection with the Real Estate and owned by Mortgagor, all property of like kind or type hereafter acquired by Mortgagor in substitution or replacement thereof, together with all tools, accessories, parts, equipment, and accessions now in, attached to, or which may hereafter at any time be placed in or added to the above-described property and owned by Mortgagor, including all after-acquired property, replacements, and proceeds thereof (including tort claims and insurance) ("Tangible Collateral"), and (b) all rents, royalties, income, security deposits, funds, proceeds and/or profits received or receivable by Mortgagor from all leases, rental agreements, or occupancies of the Real Estate, and all accounts, contract rights, and general intangibles, and the proceeds thereof ("Cash Collateral") (said Tangible Collateral and Cash Collateral being collectively referred to as the "Chattel Property") to secure the payment of the Obligations and any extensions or renewals thereof.  The security interest hereby granted shall continue until full performance by Mortgagor of all conditions and obligations of this Mortgage. Mortgagor shall be entitled to possession of the Chattel Property until default, but shall use the Chattel Property in a careful and prudent manner, maintain the Chattel Property in good repair, pay all taxes and other charges thereon when due, and defend the Chattel Property at all times against any claims during the duration of this Mortgage. Except for removal to repair the Chattel Property, Mortgagor shall not permit the Chattel Property to be removed from the Real Estate without the prior written consent of Mortgagee. Upon any default, Mortgagee, at its option and without notice or demand, shall be entitled to enter upon the Real Estate to take immediate possession of the Chattel Property or to render the same unusable. Upon request, Mortgagor shall assemble and make the Chattel Property available to Mortgagee at a place to be designated by Mortgagee which is reasonably convenient to both parties. Upon repossession, Mortgagee may propose to retain the Chattel Property in partial satisfaction of the Obligations or sell all or any portion of the Chattel Property at public or private sale in accordance with the Uniform Commercial Code as adopted in Indiana or any other applicable statute. In the further event that Mortgagee shall dispose of any or all of the Chattel Property after default, the proceeds of disposition shall be first applied in the following order: (a) to the reasonable expenses of retaking, holding, preparing for sale, selling and the like, (b) to the reasonable attorneys' fees and legal expenses incurred by Mortgagee, and (c) to the satisfaction of the Obligations. Mortgagor authorizes Mortgagee to file financing statements covering the security interest of Mortgagee in the Chattel Property.

14.   Expenses of Mortgagee.  Mortgagor hereby indemnifies Mortgagee and agrees to save it harmless from any and all loss, damage or expense, including attorneys' fees, resulting from or arising out of the execution and delivery of this Mortgage. All sums paid by Mortgagee, including attorneys' fees, to cure defaults by Mortgagor hereunder, for the expense of any litigation to prosecute or defend the rights and lien created hereby in any action or proceeding to which Mortgagee is made a party by reason of this Mortgage, or in which it becomes necessary to defend or uphold the lien of this Mortgage or the Security Documents, shall be paid by Mortgagor to Mortgagee, together with interest thereon from date of payment at a per annum rate

2997414                                                10

equal to the rate of interest accruing on the Obligations, and any such sums and interest thereon shall be immediately due and payable and secured hereby.

15.    Change of Laws.  In the event of the enactment after the date hereof of any law of the State in which the Mortgaged Premises are located imposing upon Mortgagee the payment of the whole or any part of the taxes or assessments for charges and liens herein required to be paid by Mortgagor, or the passing or creation of any law deducting from the value of the Mortgaged Premises any lien thereon for the purpose of taxation of Mortgagee, or changing in any way the laws now in force for the taxation of mortgages, or the Obligations, or changing the manner of collection of any such taxation from Mortgagor so as to affect this Mortgage or the Obligations, then in such event Mortgagor, upon demand by Mortgagee, shall pay such taxes or assessments or reimburse Mortgagee therefor; provided, however, that if it is unlawful for Mortgagor to make such payment, or the making of such payment would impose a rate of interest beyond the maximum permitted by law, then and in such event, such payments by Mortgagor shall be delayed until the earliest interest payment dates on which the receipt thereof would be permissible under the laws applicable to Mortgagee limiting rates of interest which may be charged or collected by Mortgagee.

16.    Events of Default.  The occurrence of any one or more of the following events shall be deemed to be an event of default ("Event of Default") under this Mortgage:

(a)    Any default under the Note;

(b)    Failure to pay or perform under any of the Security Documents according to their respective terms, which breach is not cured within any applicable grace period under the respective Security Document;

(c)    Breach of any covenant, representation, term, provision, condition, or agreement contained in this Mortgage or any of the Security Documents or any other writing executed by Mortgagor in connection with the indebtedness secured hereby, which breach is not cured by Mortgagor within thirty (30) days following issuance of written notice by Mortgagee or any applicable grace period under any such Security Documents. In the event of a default other than non-payment where such default is incurable within such applicable grace period and where Mortgagor is diligently pursuing its cure, then whenever Mortgagee reasonably determines that Mortgagor is no longer diligently pursuing the cure or that the cure will not be completed within a reasonable time beyond the applicable cure period;

(d)    The filing by Mortgagor or Borrower of a petition in voluntary bankruptcy or under any Chapter of the Federal Bankruptcy Code or other similar law, state or federal, whether now or hereafter existing, or an answer admitting insolvency or inability to pay its debts, or failure to obtain a vacation or stay of involuntary bankruptcy or insolvency proceedings within sixty (60) days;

(e)    The adjudication of Mortgagor or Borrower as a bankrupt, or the appointment of a trustee or receiver for Mortgagor or Borrower or for all or substantially all of its respective property in any involuntary proceeding, or the taking of jurisdiction by any court over the property of Mortgagor or Borrower or of substantially all thereof in any involuntary proceeding for the reorganization, dissolution, Liquidation or winding up of Mortgagor and the failure to discharge such trustee or receiver or relinquish such jurisdiction or vacate or stay on appeal or otherwise stay such proceedings within sixty (60) days;

(f)    The making by Mortgagor or Borrower of an assignment for the benefit of creditors or the admitting by Mortgagor or Borrower in writing of its inability to pay its debts generally as they become due, or the consent by Mortgagor or Borrower to the appointment of a receiver or trustee or liquidator of all of its properties or substantially all thereof; or

(g)    Abandonment of the Mortgaged Premises by Mortgagor.

17.    <u>Remedies Following an Event of Default</u>. In the event of the occurrence of one or more of the above Events of Default, Mortgagee may, in its sole discretion but subject to the rights of the Senior Lenders and the terms of the Senior Mortgages, exercise one or more of the following remedies:

(a)    Declare all of the Obligations secured hereby to be immediately due and payable, without notice or demand; and/or

(b)    Foreclose this Mortgage without relief under valuation and appraisement laws; and/or

(c)    Apply for and be entitled to the appointment of a receiver, the appointment of which is hereby consented to by Mortgagor, and such receiver is hereby authorized to take possession of the Mortgaged Premises, collect any rental, accrued, or to accrue, whether in money or in kind, for the use or occupancy of said Mortgaged Premises by any persons, firm or corporation, and may let or lease the Mortgaged Premises or any part thereof, receive the rents, income and profits therefrom, and hold the proceeds subject to the orders of the court, or the judge thereof, for the benefit of Mortgagee, pending the final decree in the proceedings pursuant to which the receiver has been appointed, and during any period allowed by law for the redemption from any sale ordered in foreclosure proceedings, and said receiver may be appointed irrespective of the value of the Mortgaged Premises or its adequacy to secure or discharge the Obligations due or to become due or the solvency of Mortgagor; and/or

(d)   Take possession of and hold the Mortgaged Premises, with or without process of law, and collect the rents and profits therefrom, applying same to the charges and payments due under the conditions of this Mortgage so long as default shall continue, which such taking of possession shall in no way waive the right of Mortgagee to exercise the other remedies set forth herein because of a default.

In the event Mortgagee elects one or more of the above remedies upon default, Mortgagor agrees to pay all of the costs and expenses of Mortgagee incurred in pursuance of such remedy or remedies, including without limiting the generality thereof, attorneys' fees, all costs of collection, late payment penalties, abstracts of title or title insurance, hazard insurance on the Mortgaged Premises, real property taxes on the Real Estate and personal property taxes on the Chattel Property which are paid or incurred by Mortgagee, repairs, maintenance, and replacements of the Mortgaged Premises which are paid, advanced or incurred by Mortgagee, payments by Mortgagee to holders of liens or encumbrances on the Mortgaged Premises which are then due and payable, and interest commencing with the date of default, calculated at the rate accruing on the Obligations, on the sum of the above costs and expenses.

18.   <u>Non-Waiver of Default</u>.  No failure by Mortgagee in the exercise of any of its rights under this Mortgage shall preclude Mortgagee from the exercise thereof in the event of subsequent Event of Default, and no delay by Mortgagee in the exercise of its rights under this Mortgage shall preclude Mortgagee from the exercise thereof so long as Mortgagor is in default hereunder. Mortgagee may enforce any one or more of its rights or remedies hereunder successively or concurrently.

19.   <u>Modification of Obligations and Release of Collateral</u>.  Mortgagee at its option may extend the time for the payment of the Obligations or reduce the payments thereon or accept a renewal note or notes therefor or release all or part of the Mortgaged Premises without the consent of any junior lienholder or Mortgagor if Mortgagor has then parted with title to Mortgaged Premises and no sale of the Mortgaged Premises or forbearance on the part of Mortgagee or its assigns, or extension of the time for the payment of the Obligations or reduction in payments, or acceptance of renewals or release of all or part of the Mortgaged Premises shall affect the priority of this Mortgage or Security Documents or the security hereof or shall operate to release, modify, change or affect the original liability of Mortgagor herein or a subsequent mortgagor, surety or guarantor, either in whole or in part, nor shall the full force and effect of the security of this Mortgage and Security Documents be altered thereby.

20.   <u>Rights of Successors</u>.  The covenants herein contained shall bind, and the benefits and advantages shall inure to, the respective legal representatives, successors and assigns of the parties hereto.

21.   <u>Applicable Law</u>.  This Mortgage is executed under and shall be construed in accordance with the laws of the State of Indiana.

22.   <u>Interpretation</u>.  In the event this Mortgage is executed by more than one person, firm or corporation, the liability of the undersigned parties shall be joint and several. Whenever

used, the singular shall include the plural, the plural the singular, and the use of any gender shall include all genders. The term "Mortgagee" shall include any payee of the Obligations or any transferee thereof, whether by operation of law or otherwise. Descriptive headings are for convenience only and shall be deemed to not affect the meaning or construction of any provision hereof.

23.     <u>Authority</u>.  Mortgagor is an Indiana limited liability company duly organized and validly existing under the laws of the State of Indiana. The undersigned, on behalf of Mortgagor, has the power, authority and legal right to execute, deliver and perform this Mortgage.

24.     <u>Fixture Filing</u>.  From the date of its recording, this Mortgage (as provided in Indiana Code Section 26-1-9.1-502) shall be effective as a financing statement with respect to all goods constituting part of the Chattel Property which are or are to become fixtures related to the Real Estate described herein. This document covers goods which are or are to become fixtures. The Real Estate to which such fixtures are or are to be attached is that described in **Attachment A** attached hereto, the record owner of which is Mortgagor.

25.     <u>Time is of the Essence</u>.  Time shall be of the essence in Mortgagor's performance of its obligations under this Mortgage and all other Security Documents.

IN WITNESS WHEREOF, Mortgagor has executed this instrument effective as of _____ , 2016.

**INDIANAPOLIS AIRPORT DEVELOPMENT, LLC**

By:_____
Michael A. Evans, Manager

STATE OF INDIANA )
)
COUNTY OF _MARION_ )

Before me the undersigned, a Notary Public for _MARION_ County, State of Indiana, personally appeared Michael A. Evans, the Manager of Indianapolis Airport Development, LLC, an Indiana limited liability company, who acknowledged the execution of the above and foregoing Third Real Estate Mortgage, Security Agreement, Assignment of Leases and Rents and Fixture Filing on behalf of said company.

Signed and sealed this _12_ day of _May_, 2016.

_Kathleen Schuster_
Signature

_____
Printed

KATHLEEN SCHUSTER
Marion County
My Commission Expires
April 4, 2024

My Commission Expires                    My County of Residence is:

_____             _____

I affirm, under the penalties for perjury, that I have taken reasonable care to redact each Social Security number in this document, unless required by law:  James P. Moloy

This Instrument Prepared By:  James P. Moloy, Bose McKinney & Evans LLP, 111 Monument Circle, Suite 2700, Indianapolis, Indiana 46204

2997414                                      15

**Attachment A**

**Legal Description of the Real Estate**

A PART OF THE NORTHEAST QUARTER OF SECTION 26, TOWNSHIP 17 NORTH, RANGE 2 EAST, MARION COUNTY, INDIANA, BEING A PORTION OF THAT LAND SHOWN ON A LAND TITLE SURVEY PREPARED BY WOOLPERT CONSULTANTS RECORDED IN INSTRUMENT NUMBER 93-156219, IN THE OFFICE OF THE RECORDER OF MARION COUNTY, DESCRIBED AS FOLLOWS: COMMENCING AT THE NORTHEAST CORNER OF SAID QUARTER SECTION SAID CORNER BEING NORTH 00°26'04" EAST, 2641.27 FEET, MEASURED ALONG THE EAST LINE OF SAID QUARTER SECTION, FROM THE SOUTHEAST CORNER OF SAID QUARTER SECTION AND NORTH 89°08'56" EAST, 2658.32 FEET, MEASURED ALONG THE NORTH LINE OF SAID QUARTER SECTION FROM THE NORTHWEST CORNER OF SAID QUARTER SECTION; THENCE SOUTH 89°08'56" WEST, 2098.45 FEET ALONG THE NORTH LINE OF SAID QUARTER SECTION;

THENCE SOUTH 00°51'04" EAST, 70.16 FEET TO THE INTERSECTION OF THE SOUTHERN RIGHT-OF-WAY LINE OF WEST 79TH STREET WITH THE WEST LINE OF INNOVATION DRIVE; THENCE SOUTH 00°24'45" WEST ON AND ALONG THE WEST LINE OF SAID INNOVATION DRIVE, 83.95 FEET TO THE POINT OF BEGINNING OF THIS DESCRIPTION;

THENCE NORTH 89°35'15" WEST, 251.01 FEET; THENCE SOUTH 00°26'26" WEST, 90.26 FEET; THENCE SOUTH 89°35'15" EAST, 24.53 FEET; THENCE SOUTH 00°24'45" WEST, 20.54 FEET; THENCE SOUTH 89°28'06" EAST, 43.35 FEET; THENCE SOUTH 00°00'00" WEST, 179.32 FEET; THENCE SOUTH 89°57'25" EAST, 44.72 FEET; THENCE SOUTH 00°10'17" WEST, 20.01 FEET; THENCE SOUTH 89°35'18" EAST, 137.09 FEET TO A POINT ON THE WEST LINE OF INNOVATION DRIVE; THENCE NORTH 00°24'45" EAST, ON AND ALONG THE WEST LINE OF SAID INNOVATION DRIVE, 309.92 FEET TO THE POINT OF BEGINNING, CONTAINING 1.441 ACRES, MORE OR LESS. THE BEARINGS IN THIS DESCRIPTION ARE BASED UPON THE INDIANA STATE PLANE COORDINATE SYSTEM EAST ZONE (NAD83).

# EXHIBIT B-3

**THIRD REAL ESTATE MORTGAGE, SECURITY AGREEMENT,
ASSIGNMENT OF LEASES AND RENTS AND FIXTURE FILING**

FOR PURPOSES OF THE SECURITY AGREEMENT AND FIXTURE FILING
CONTAINED IN THIS INSTRUMENT
THE "SECURED PARTY" AND THE "DEBTOR" AND THEIR RESPECTIVE
ADDRESSES ARE AS FOLLOWS:

SECURED PARTY:       AIT Holding Company Employee Stock Ownership Plan
2265 Executive Drive
Indianapolis, Indiana  46241

DEBTOR:       WFTOXI2, LLC
7840 Innovation Drive
Indianapolis, Indiana  46278

COMMON ADDRESS
OF REAL ESTATE:      2265 Executive Drive
Indianapolis, Indiana 46241

THE ADDRESS OF THE SECURED PARTY SHOWN ABOVE IS THE ADDRESS AT WHICH INFORMATION CONCERNING THE SECURED PARTY'S SECURITY INTEREST MAY BE OBTAINED.

THIS MORTGAGE WITNESSETH, That WFTOXI2, LLC, an Indiana limited liability company ("Mortgagor"), MORTGAGES AND WARRANTS UNTO AIT Holding Company Employee Stock Ownership Plan (the "Mortgagee"), the real estate located in Marion County, Indiana which is more particularly described in **Attachment A**, attached hereto and incorporated herein, together with all improvements, structures and buildings now or hereafter located thereon ("Real Estate"),

TOGETHER WITH all tenements, hereditaments, rights, privileges, interests, easements and appurtenances belonging to or in any way appertaining to such Real Estate, and all rents, issues, income and profits thereof, and all fixtures, appliances, apparatus, equipment or articles now or

2968668v2

hereafter situated on or used in connection with such Real Estate and owned by Mortgagor including, but not in limitation of the preceding, all gas, water and electric fixtures, radiators, heaters, engines and machinery, boilers, ranges, elevators and motors, plumbing and heating fixtures, water heaters, air conditioning apparatus and units, refrigerating equipment, refrigerators, cooking apparatus, window screens, awnings, storm sash, doors and carpeting (which are or shall be attached to said building, structures or improvements), partitions, equipment, personal property of every kind and nature whatsoever now or hereafter owned by Mortgagor and located in, on or about, or used in connection with the Real Estate, whether physically attached to the Real Estate or not, (hereinafter collectively referred to as the "Chattel Property") and it is agreed that all similar fixtures, appliances, apparatus, equipment or articles hereafter placed on such Real Estate by Mortgagor, and owned by Mortgagor, their successors or assigns, including all replacements or substitutions therefor, shall be considered as constituting part of such Chattel Property all to the use and benefit of Mortgagee, its successors and assigns, and Mortgagor transfers and grants to Mortgagee a security interest in all such Chattel Property now or hereafter owned by Mortgagor and located upon the Mortgaged Premises and all personal property of Mortgagor which is described in Section 13 hereinbelow. For purposes of this Mortgage, the Real Estate and Chattel Property shall be collectively referred to as the "Mortgaged Premises".

**Mortgagor and Mortgagee acknowledge that Fifth Third Bank ("First Lender") has an existing first mortgage ("First Mortgage") on the Mortgaged Premises, and that Bankers Life and Casualty Company and Washington National Insurance Company (collectively, "Second Lender", and together with First Lender the "Senior Lenders") has an existing second mortgage ("Second Mortgage", and together with the First Mortgage the "Senior Mortgages") on the Mortgaged Premises. Notwithstanding anything in this Mortgage to the contrary, Mortgagor and Mortgagee agree that the Senior Mortgages are permitted encumbrances on the Mortgaged Premises and that the Senior Mortgages shall have priority over the Mortgage. In the event of any conflict between the terms of this Mortgage and the Senior Mortgages, the terms of the Senior Mortgages shall control. Mortgagee will release this Mortgage upon a sale of the Mortgaged Premises that is approved by (i) the First Lender, if the First Mortgage is still of record, or (ii) the Second Lender, if the First Mortgage is no longer of record.**

MORTGAGOR HEREBY COVENANTS AND AGREES AS FOLLOWS:

1.    <u>Security</u>. This Mortgage is given as security for the following:

(a)    Mortgagor's performance of the covenants contained in this Mortgage; and

(b)    The executed Non-recourse Promissory Note ("Note") by Dr. Michael A. Evans in favor of the Mortgagee, in the principal amount of $5,900,000 or the net proceeds of the Collateral (as defined in the Note), whichever is less, scheduled to mature at the latest on _____, 2026

(such obligations hereinabove described collectively hereinafter referred to as the "Obligations"; the Mortgage and Note are collectively referred to herein as the "Security Documents").

2.      Promise to Pay. The Mortgagor agrees to pay, perform and observe the obligations, requirements and responsibilities as set forth in the Security Documents as provided therein, without relief from valuation and appraisement laws and with attorney's fees.

3.      Title to Mortgaged Premises and Lien of Mortgage. Mortgagor is the owner in fee simple of the Real Estate and has full power to mortgage the same; Mortgagor has good and valid title to the Chattel Property free and clear of all security interests and encumbrances except the Senior Mortgages and has full power to grant a security interest in the same; and the Real Estate is free and clear of any and all liens and encumbrances, use restrictions of record, zoning ordinances, rights-of-way and easements of record, except the Senior Mortgages and such liens, encumbrances and zoning ordinances which do not materially detract from the value of such property or its usefulness for the purposes intended by Mortgagor, and the lien of current taxes and assessments not delinquent. Mortgagor will make any further assurances of title that Mortgagee may require and will warrant and defend the Mortgaged Premises against all adverse claims and demands whatsoever. This Mortgage creates a continuing lien to secure the full and final payment of the Obligations.

4.      Insurance. Mortgagor will assure and confirm to the reasonable satisfaction of Mortgagee the maintenance at all times of Fire, Extended Coverage, Vandalism, Malicious Mischief and other hazard insurance with respect to the Mortgaged Premises, and public liability insurance with such insurance companies and in forms and amounts as are reasonably acceptable to and approved by Mortgagee against loss or destruction on account of fire, windstorm or other such hazards, casualties and contingencies customarily insured against, and injury to the person or property, including, without limiting the generality thereof, rents loss insurance in an amount equal to one year of gross rental, and such flood, and/or earthquake insurance as may be reasonably required by Mortgagee. All insurance policies are to be held by and, to the extent of its interests, for the benefit of and first payable in case of loss to Mortgagee, and Mortgagor shall deliver to Mortgagee a new policy as replacement for any expiring policy at least fifteen (15) days before the date of such expiration.

All such policies of insurance shall contain waiver of subrogation clauses and shall have attached thereto the non-contributory New York Standard Mortgagee clause or its equivalent in favor of Mortgagee with cancellation only upon at least ten (10) days' prior written notice to Mortgagee. All amounts recoverable under any policy are hereby assigned to Mortgagee and, in the event of a loss, Mortgagor will give immediate notice by mail to Mortgagee, and Mortgagee may make proof of loss if not made promptly by Mortgagor. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Mortgagee rather than to Mortgagee and Mortgagor jointly. In the event such proceeds are insufficient to effect such restoration, Mortgagee shall have no obligation to make such proceeds available to restore the Mortgaged Premises unless the Mortgagor furnishes satisfactory evidence of the availability of funds to complete such restoration and Mortgagee determines, in its sole but reasonable discretion, that the Mortgaged Premises, following restoration and reconstruction, will remain economically feasible utilizing the same standards and analyses as set forth in the most recent appraisal of the Mortgaged Premises engaged by Mortgagee prior to the execution of this Mortgage. In the event that Mortgagor elects to apply such insurance proceeds to restoration of

the Mortgaged Premises and such insurance proceeds exceed the total cost of restoration, such excess proceeds shall be retained by Mortgagee and applied to reduce the then-outstanding Obligations.

Mortgagor will not do or suffer to be done anything which will increase the risk of fire or other hazard to the Mortgaged Premises or any part thereof without first causing such increased risk to be fully and adequately covered by insurance. Insurance as above-described shall also be obtained on all fixtures and personal property used by Mortgagor in connection with the Real Estate to the extent that the value thereof is not otherwise included in the insurance on the Mortgaged Premises. In the event of foreclosure of this Mortgage or other transfer of title of the Mortgaged Premises in extinguishment of the Obligations, all right, title and interest of Mortgagor, in and to any insurance policies then in force shall pass to the purchaser or grantee of the Mortgaged Premises.

In the event that, prior to the extinguishment of the Obligations, there exists any claim under any hazard insurance policies which shall not have been paid and distributed in accordance with the terms of this Mortgage, and any such claims shall be paid after the extinguishment of the Obligations, and the foreclosure of this Mortgage, transfer of title to the Mortgaged Premises, or extinguishment of the Obligations shall have resulted in extinguishment of the Obligations for an amount less than the total of the unpaid principal balance together with accrued interest plus costs of litigation, attorneys' fees, title insurance and all other costs and expenses incurred by Mortgagee in any action involving such extinguishment, then, without limitation, that portion of the payment in satisfaction of the claim which is equal to the difference between the total amount of the aforementioned amounts due Mortgagee and the amount in extinguishment of the Obligations received by Mortgagee shall belong to and be the property of Mortgagee and shall be paid to Mortgagee, and Mortgagor hereby assigns, transfers and sets over to Mortgagee all of Mortgagor's right, title and interest in and to said sum. The balance, if any, shall belong to Mortgagor. Notwithstanding the above, Mortgagor shall retain an interest in the insurance policies above-described during any redemption period.

5.    Taxes. Mortgagor will pay, before the same become delinquent or any penalty for non-payment attaches thereto, all taxes, assessments and charges of every nature now or hereafter levied or assessed against or upon the Mortgaged Premises, or any part thereof, or upon the rents, issues, income or profits therefrom, which by reason of non-payment could become a lien prior or junior to this Mortgage, except such as are being contested by appropriate proceedings and for which an adequate reserve is maintained, whether any or all of said taxes, assessments or charges be levied directly or indirectly or as excise taxes or as income taxes, and will submit to Mortgagee such evidence of the timely payment of such taxes, assessments and charges as Mortgagee may require, and Mortgagor will also pay all taxes, assessments or charges which may be levied on this Mortgage, excepting any state or federal income taxes or state intangibles taxes. In default thereof, Mortgagee may pay such taxes, assessments and other similar charges, of which payment, amount and validity thereof the receipt of the proper officer shall be conclusive evidence, and all sums so paid shall bear interest at the rate accruing on the Obligations, shall be payable on demand, and shall be fully secured by this Mortgage and the Security Documents.

6.  <u>Care of Mortgaged Premises</u>.  Mortgagor will keep the Mortgaged Premises in good order, repair and condition at all times and will not commit waste or allow waste to be committed against the Mortgaged Premises. Mortgagor will not commit or allow the commission of any violation of any law, regulation, ordinance or contract affecting the Mortgaged Premises and will not commit or allow any demolition, removal or material alteration of any of the buildings or improvements (including fixtures) constituting a part of the Mortgaged. Premises without the prior written consent of Mortgagee. Subject to the rights of tenants, Mortgagee shall at reasonable times during normal business hours have free access to the Mortgaged Premises for the purposes of inspection and the exercise of its rights hereunder.

7.  <u>Advancements to Protect Security</u>.  If Mortgagor shall neglect or refuse to keep the Mortgaged Premises in good repair, to maintain and to pay the premiums for insurance which may be required, or to pay and discharge all taxes, assessments and charges of every nature assessed against Mortgagor or the Mortgaged Premises, so as to protect and preserve the security intended by this Mortgage, all as provided for under the terms of this Mortgage, or to pay all liens and encumbrances when due, whether such liens or encumbrances are permitted by Mortgagee or not, or if Mortgagor shall permit any lien or encumbrance on the Mortgaged Premises to be in default, Mortgagee may, at its option, cause such repairs or replacements to be made, obtain such insurance or pay said taxes, assessments, charges and pay such liens and encumbrances and cure such defaults thereunder. Any amounts paid as a result thereof, together with interest at the per annum rate equal to the rate of interest accruing on the Obligations from the date of payment, shall be immediately due and payable by Mortgagor to Mortgagee, and until paid shall be added to and become a part of the Obligations.  Further, the same may be collected by Mortgagee in any suit hereon, or Mortgagee, by payment of any tax, assessment or charge, may, at its discretion, be subrogated to the rights of the governmental subdivision levying such tax, assessment or charge. No such advances shall be deemed to relieve Mortgagor from any default hereunder or impair any rights or remedy of Mortgagee, and the exercise by Mortgagee of the right to make advances shall be optional with Mortgagee and not be obligatory and Mortgagee shall not in any case be liable to Mortgagor for a failure to exercise any such right.

8.  <u>Condemnation</u>.  All awards made by any public or quasi-public authority for damages to the Real Estate by virtue of an exercise of the right or threat of eminent domain by such authority, including any award for a taking of title, possession or right of access to a public way, or for any change of grade of streets affecting the Real Estate, are hereby assigned to Mortgagee; and Mortgagee, at its option, is hereby authorized, directed and empowered to collect and receive the proceeds of any such award to the extent of the Obligations or payable under this Mortgage from the authorities making the same and to give proper receipts and acquittances therefor; provided, however, as long as no uncured Event of Default exists and the portion of the Mortgaged Premises condemned may be replaced or restored to a condition satisfactory to Mortgagee prior to the maturity of the Obligations, such condemnation proceeds shall, at the option of Mortgagor, be available to restore the Mortgaged Premises to substantially the same condition as existed immediately prior to such condemnation proceeding. In the event such proceeds are insufficient to effect such restoration, Mortgagee shall have no obligation to make such proceeds available to restore the Mortgaged Premises unless the Mortgagor furnishes satisfactory evidence of the availability of funds to complete such restoration. In the event that Mortgagor elects to apply such condemnation proceeds to the restoration of the Mortgaged

Premises and such condemnation proceeds exceed the total cost of restoration, such excess proceeds shall be retained by Mortgagee and applied to reduce the then-outstanding Obligations. Mortgagee is authorized, at its option, to appear in and prosecute in its own name any action or proceeding or to make any compromise or settlement in connection with such taking or damage to the extent of Mortgagee's interest and, with consent and joinder of Mortgagor, to make any compromise or settlement in connection with such taking or damage. Mortgagor will, upon request by Mortgagee, execute and deliver any and all assignments and other instruments sufficient for the purpose of assigning all proceeds from such awards to Mortgagee free and clear and discharged of any and all encumbrances or claims of any kind or nature whatsoever.

9.   Covenant Against Sale, Other Liens and Other Security Interests, Violation of Laws and Environmental Matters and Indemnification.

A.   Mortgagor covenants and agrees not to sell or transfer all or any part of the Mortgaged Premises without the prior written consent of Mortgagee; provided, however, that Mortgagee shall provide such consent in the event that Senior Lenders approve a sale of the Mortgaged Premises.

B.   Mortgagor hereby covenants that no lien of any mechanics or materialmen has attached, or may validly attach, to the Real Estate or any part thereof except such as are being contested by appropriate proceedings; that Mortgagor will pay all sums which if not paid may result in the acquisition or creation of a lien prior to or of equal priority with or junior to the lien of this Mortgage (except such as are being contested by appropriate proceedings) or which may result in conferring upon a tenant of any part of the Mortgaged Premises a right to recover such sums as prepaid rent or as a credit or offset against any future rental obligation; that Mortgagor will not use the Mortgaged Premises for any purpose which violates any federal or state law, governmental regulation or local ordinance; and, that Mortgagor will not grant any other lien or security interest on any part of the Mortgaged Premises without full disclosure to and prior written consent by Mortgagee. Mortgagor shall not acquire any equipment or fixtures covered by this Mortgage or the Security Documents subject to any security interest or other charge or lien, having priority over the lien or security interest granted under this Mortgage or the Security Documents without the prior written consent of Mortgagee.

C.   Mortgagor covenants and agrees that in the ownership, operation and management of the Mortgaged Premises Mortgagor will observe and comply with all applicable federal, state and local statutes, ordinances, regulations, orders and restrictions, including, without limitation, all zoning, building, code, environmental protection and equal employment opportunities statutes, ordinances, regulations, orders and restrictions. Mortgagor represents and covenants that it and any tenant of space in the Mortgaged Premises will not generate, store, handle, or otherwise deal with hazardous substances on the Mortgaged Premises which conduct shall violate any applicable laws, statutes, rules or regulations, both federal and local.

D.   Mortgagor covenants and agrees that, with the exceptions of the Senior Mortgages and Third Mortgage, Mortgagor will not grant, consent to, or allow to remain unpaid any other liens, encumbrances, judgments, taxes, or other claims against the Mortgaged Premises, whether

prior or subordinate to the rights of Mortgagee therein, without the prior written consent of Mortgagee.

E.    Mortgagor covenants, warrants and represents that:

(i)    Mortgagor has not used Hazardous Materials (as defined below) on, from or affecting the Mortgaged Premises in any manner which violates federal, state or local laws, ordinances, rules, regulations or policies governing the use, storage, treatment, transportation, manufacture, refinement, handling, production or disposal of Hazardous Material and, to the best of Mortgagor's knowledge, no prior owner of the Mortgaged Premises or any existing or prior tenant, or occupant has used Hazardous Materials on, from or affecting the Mortgaged Premises in any manner which violates federal, state or local laws, ordinances, rules, regulations or policies governing the use, storage, treatment, transportation, manufacture, refinement, handling, production or disposal of Hazardous Materials;

(ii)    Mortgagor has never received any notice of any violations (and is not aware of any existing violations) of federal, state or local laws, ordinances, rules, regulations or policies governing the use, storage, treatment, transportation, manufacture, refinement, handling, production or disposal or Hazardous Materials at the Mortgaged Premises and, to the best of Mortgagor's knowledge, there have been no actions commenced or threatened by any party for noncompliance which affects the Mortgaged Premises;

(iii)    Mortgagor shall keep or cause the Mortgaged Premises to be kept free of Hazardous Materials except to the extent that such Hazardous Materials are stored and/or used in compliance with all applicable federal, state and local laws and regulations; and, without limiting the foregoing, Mortgagor shall not cause or permit the Mortgaged Premises to be used to generate, manufacture, refine, transport, treat, store, handle, dispose of, transfer, produce, or process Hazardous Materials, except in compliance with all applicable federal, state and local laws and regulations, nor shall Mortgagor cause or permit, as result of any intentional or unintentional act or omission on the part of Mortgagor or any tenant, subtenant or occupant, a release, spill, leak or emission of Hazardous Materials onto the Real Estate or onto any other contiguous property;

(iv)    Mortgagor shall conduct and complete all investigations including a comprehensive environmental audit, studies, sampling and testing, and all remedial, removal and other actions necessary to clean up and remove all Hazardous Materials on, under, from or affecting the Mortgaged Premises as required by all applicable federal, state and local laws, ordinances, rules, regulations and policies, to the satisfaction of Mortgagee, and in accordance with the orders and directives of all federal, state and local governmental authorities. If Mortgagor fails to conduct an environmental audit required by Mortgagee, then Mortgagee may at its option and at the expense of Mortgagor, conduct such audit.

Subject to the limitations set forth below, Mortgagor shall defend, indemnify, and hold harmless Mortgagee, its employees, agents, officers and directors, from and against any claims, demands, penalties, fines, liabilities, settlements, damages, costs, or expenses, including, without limitation, attorney's and consultant's fees, investigation and laboratory fees, court costs and litigation expenses, known or unknown, contingent or otherwise, arising out of or in any way related to (1) the presence, disposal, release, or threatened release of any Hazardous Materials on, over, under from or affecting the Mortgaged Premises or the soil, water, vegetation, buildings, personal property, persons or animals, (2) any personal injury (including wrongful death) or property damage (real or personal) arising out of or related to Hazardous Materials on the Mortgaged Premises, (3) any lawsuit brought or threatened, settlement, reached or government order relating to such Hazardous Materials with respect to the Mortgaged Premises, and/or (4) any violation of laws, orders, regulations, requirements or demands of government authorities or any policies or requirements of Mortgagee, which are based upon or in any way related to such Hazardous Materials used upon the Mortgaged Premises. The indemnity obligations under this paragraph are specifically limited as follows:

A.      Mortgagor shall have no indemnity obligation with respect to Hazardous Materials that are first introduced to the Mortgaged Premises or any part of the Real Estate subsequent to the date that Mortgagor's interest in and possession of the Mortgaged Premises or any part of the Mortgaged Premises shall have fully terminated by foreclosure of this Mortgage or acceptance of a deed in lieu of foreclosure;

B.      Mortgagor shall have no indemnity obligation with respect to any hazardous Materials introduced to the Mortgaged Premises or any part of the Real Estate by Mortgagee, its successors or assigns.

Mortgagor agrees that in the event this Mortgage is foreclosed or Mortgagor tenders a deed in lieu of foreclosure, Mortgagor shall deliver the Mortgaged Premises to Mortgagee free of any and all Hazardous Materials which are then required to be removed (whether over time or immediately) pursuant to applicable federal, state and local laws, ordinances, rules or regulations affecting the Mortgaged Premises.

For purposes of this Mortgage, "Hazardous Materials" includes, without limitation, any flammable explosives, radioactive materials, hazardous materials, hazardous wastes, hazardous or toxic substances or related materials defined in the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended (42 U.S.C. Sections 9601, et. seq.), the Hazardous Materials Transportation Act, as amended (49 U.S.C. Sections 1801, et leg.), the Resource Conservation and Recovery Act, as amended (42 U.S.C. Section 6901, et seq.) and in the regulations adopted and publications promulgated pursuant thereto, or any other federal, state or local governmental law, ordinance, rule or regulation.

The provisions of this Section shall be in addition to any and all other obligations and liabilities Mortgagor may have to Mortgagee under any Security Documents, and at common law, and shall survive (1) the extinguishment of the Obligations, (2) the satisfaction of all of the other obligations of Mortgagor in the Mortgage and under any Security Documents, (3) the discharge of this Mortgage, and (4) the foreclosure of this Mortgage or acceptance of a deed in

lieu of foreclosure. Notwithstanding anything to the contrary contained in this Mortgage, it is the intention of Mortgagor and Mortgagee that the indemnity provisions of this Section shall only apply to an action commenced against any owner or operator of the Mortgaged Premises in which any interest of Mortgagee is threatened or any claim is made against Mortgagee for the payment of money.

      10.    <u>Escrow Deposits</u>.  Reserved.

      11.    <u>Collateral Assignment of Leases and Rents</u>. Mortgagor hereby collaterally assigns to Mortgagee all the rents and revenues of the Mortgaged Premises, including those now due, or to become due by virtue of any lease or other agreement for the occupancy or use of all or any part of the Mortgaged Premises, regardless of to whom the rents and revenues of the Mortgaged Premises are payable.  Upon delivery of written notice by Mortgagee to Mortgagor of the breach by Mortgagor of any covenant or agreement of Mortgagor in this Mortgage, and without the necessity of Mortgagee entering upon and taking and maintaining full control of the Mortgaged Premises in person, by agent or by a court-appointed receiver, Mortgagee shall immediately be entitled to possession of all rents and revenues of the Mortgaged Premises as specified in this Section 11 as the same become due and payable, including but not limited to rents then due and unpaid, and all such rents shall immediately upon delivery of such notice be held by Mortgagor as trustee for the benefit of Mortgagee only; provided, however, that the written notice by Mortgagee to Mortgagor of the breach by Mortgagor shall contain a statement that Mortgagee exercises its rights to such rents. Mortgagor agrees that commencing upon delivery of such written notice of Mortgagor's breach by Mortgagee to Mortgagor, each tenant of the Mortgaged Premises shall make such rents payable to and pay such rents to Mortgagee or Mortgagee's agents on Mortgagee's written demand to each tenant therefor, delivered to each tenant personally or by mail, without any liability on the part of said tenant to inquire further as to the existence of a default by Mortgagor.

      Upon request by Mortgagee, Mortgagor will assign to Mortgagee, as further security for the Obligations, its interest, as lessor, in any or all leases of all or any portion of the Mortgaged Premises and in any licenses, permits, agreements or contracts pertaining to the Mortgaged Premises. Such assignments are to be made by instruments in form satisfactory to Mortgagee, but no such assignment shall be construed as a consent by Mortgagee to any lease, license, permit, agreement or contract so assigned or impose upon Mortgagee any obligations with respect thereto. Except for dealings in the ordinary course of business which are in the best interests of both Mortgagor and Mortgagee, Mortgagor will not cancel any of the leases now or hereafter assigned to Mortgagee nor terminate or accept a surrender thereof or reduce the payment of the rent thereunder or modify any of the said leases or accept any prepayment of rent (except any amount which may be required to be prepaid by the terms of any such lease) without first obtaining, on each occasion, the prior written consent of Mortgagee. Mortgagor will perform all of its obligations as lessor under all of the leases now or hereafter assigned to Mortgagee.

      12.    <u>Subrogation</u>.  If the proceeds of the Obligations, or any part thereof, or any amount paid out or advanced by Mortgagee, be used directly, or indirectly to pay off, discharge or satisfy, in whole or in part, any prior lien or encumbrance upon said Mortgaged Premises or

any part thereof, then Mortgagee shall be subrogated to the rights of the holder of such lien or encumbrance, although such lien or encumbrance may have been released of record.

13.    Security Interest.  Mortgagor hereby grants and transfers to Mortgagee a security interest in (a) all machinery, equipment, appliances, improvements, furniture, fixtures and other tangible personal property now owned or hereafter acquired by Mortgagor attached to, located on, forming a part of, or used in connection with the Real Estate and owned by Mortgagor, all property of like kind or type hereafter acquired by Mortgagor in substitution or replacement thereof, together with all tools, accessories, parts, equipment, and accessions now in, attached to, or which may hereafter at any time be placed in or added to the above-described property and owned by Mortgagor, including all after-acquired property, replacements, and proceeds thereof (including tort claims and insurance) ("Tangible Collateral"), and (b) all rents, royalties, income, security deposits, funds, proceeds and/or profits received or receivable by Mortgagor from all leases, rental agreements, or occupancies of the Real Estate, and all accounts, contract rights, and general intangibles, and the proceeds thereof ("Cash Collateral") (said Tangible Collateral and Cash Collateral being collectively referred to as the "Chattel Property") to secure the payment of the Obligations and any extensions or renewals thereof.  The security interest hereby granted shall continue until full performance by Mortgagor of all conditions and obligations of this Mortgage. Mortgagor shall be entitled to possession of the Chattel Property until default, but shall use the Chattel Property in a careful and prudent manner, maintain the Chattel Property in good repair, pay all taxes and other charges thereon when due, and defend the Chattel Property at all times against any claims during the duration of this Mortgage. Except for removal to repair the Chattel Property, Mortgagor shall not permit the Chattel Property to be removed from the Real Estate without the prior written consent of Mortgagee. Upon any default, Mortgagee, at its option and without notice or demand, shall be entitled to enter upon the Real Estate to take immediate possession of the Chattel Property or to render the same unusable. Upon request, Mortgagor shall assemble and make the Chattel Property available to Mortgagee at a place to be designated by Mortgagee which is reasonably convenient to both parties. Upon repossession, Mortgagee may propose to retain the Chattel Property in partial satisfaction of the Obligations or sell all or any portion of the Chattel Property at public or private sale in accordance with the Uniform Commercial Code as adopted in Indiana or any other applicable statute. In the further event that Mortgagee shall dispose of any or all of the Chattel Property after default, the proceeds of disposition shall be first applied in the following order: (a) to the reasonable expenses of retaking, holding, preparing for sale, selling and the like, (b) to the reasonable attorneys' fees and legal expenses incurred by Mortgagee, and (c) to the satisfaction of the Obligations. Mortgagor authorizes Mortgagee to file financing statements covering the security interest of Mortgagee in the Chattel Property.

14.    Expenses of Mortgagee.  Mortgagor hereby indemnifies Mortgagee and agrees to save it harmless from any and all loss, damage or expense, including attorneys' fees, resulting from or arising out of the execution and delivery of this Mortgage. All sums paid by Mortgagee, including attorneys' fees, to cure defaults by Mortgagor hereunder, for the expense of any litigation to prosecute or defend the rights and lien created hereby in any action or proceeding to which Mortgagee is made a party by reason of this Mortgage, or in which it becomes necessary to defend or uphold the lien of this Mortgage or the Security Documents, shall be paid by Mortgagor to Mortgagee, together with interest thereon from date of payment at a per annum rate

equal to the rate of interest accruing on the Obligations, and any such sums and interest thereon shall be immediately due and payable and secured hereby.

15.     Change of Laws.  In the event of the enactment after the date hereof of any law of the State in which the Mortgaged Premises are located imposing upon Mortgagee the payment of the whole or any part of the taxes or assessments for charges and liens herein required to be paid by Mortgagor, or the passing or creation of any law deducting from the value of the Mortgaged Premises any lien thereon for the purpose of taxation of Mortgagee, or changing in any way the laws now in force for the taxation of mortgages, or the Obligations, or changing the manner of collection of any such taxation from Mortgagor so as to affect this Mortgage or the Obligations, then in such event Mortgagor, upon demand by Mortgagee, shall pay such taxes or assessments or reimburse Mortgagee therefor; provided, however, that if it is unlawful for Mortgagor to make such payment, or the making of such payment would impose a rate of interest beyond the maximum permitted by law, then and in such event, such payments by Mortgagor shall be delayed until the earliest interest payment dates on which the receipt thereof would be permissible under the laws applicable to Mortgagee limiting rates of interest which may be charged or collected by Mortgagee.

16.     Events of Default.  The occurrence of any one or more of the following events shall be deemed to be an event of default ("Event of Default") under this Mortgage:

(a)     Any default under the Note;

(b)     Failure to pay or perform under any of the Security Documents according to their respective terms, which breach is not cured within any applicable grace period under the respective Security Document;

(c)     Breach of any covenant, representation, term, provision, condition, or agreement contained in this Mortgage or any of the Security Documents or any other writing executed by Mortgagor in connection with the indebtedness secured hereby, which breach is not cured by Mortgagor within thirty (30) days following issuance of written notice by Mortgagee or any applicable grace period under any such Security Documents. In the event of a default other than non-payment where such default is incurable within such applicable grace period and where Mortgagor is diligently pursuing its cure, then whenever Mortgagee reasonably determines that Mortgagor is no longer diligently pursuing the cure or that the cure will not be completed within a reasonable time beyond the applicable cure period;

(d)     The filing by Mortgagor or Borrower of a petition in voluntary bankruptcy or under any Chapter of the Federal Bankruptcy Code or other similar law, state or federal, whether now or hereafter existing, or an answer admitting insolvency or inability to pay its debts, or failure to obtain a vacation or stay of involuntary bankruptcy or insolvency proceedings within sixty (60) days;

(e)     The adjudication of Mortgagor or Borrower as a bankrupt, or the appointment of a trustee or receiver for Mortgagor or Borrower or for all or substantially all of its respective property in any involuntary proceeding, or the taking of jurisdiction by any court over the property of Mortgagor or Borrower or of substantially all thereof in any involuntary proceeding for the reorganization, dissolution, Liquidation or winding up of Mortgagor and the failure to discharge such trustee or receiver or relinquish such jurisdiction or vacate or stay on appeal or otherwise stay such proceedings within sixty (60) days;

(f)     The making by Mortgagor or Borrower of an assignment for the benefit of creditors or the admitting by Mortgagor or Borrower in writing of its inability to pay its debts generally as they become due, or the consent by Mortgagor or Borrower to the appointment of a receiver or trustee or liquidator of all of its properties or substantially all thereof; or

(g)     Abandonment of the Mortgaged Premises by Mortgagor.

17.    <u>Remedies Following an Event of Default</u>.  In the event of the occurrence of one or more of the above Events of Default, Mortgagee may, in its sole discretion but subject to the rights of the Senior Lenders and the terms of the Senior Mortgages, exercise one or more of the following remedies:

(a)     Declare all of the Obligations secured hereby to be immediately due and payable, without notice or demand; and/or

(b)     Foreclose this Mortgage without relief under valuation and appraisement laws; and/or

(c)     Apply for and be entitled to the appointment of a receiver, the appointment of which is hereby consented to by Mortgagor, and such receiver is hereby authorized to take possession of the Mortgaged Premises, collect any rental, accrued, or to accrue, whether in money or in kind, for the use or occupancy of said Mortgaged Premises by any persons, firm or corporation, and may let or lease the Mortgaged Premises or any part thereof, receive the rents, income and profits therefrom, and hold the proceeds subject to the orders of the court, or the judge thereof, for the benefit of Mortgagee, pending the final decree in the proceedings pursuant to which the receiver has been appointed, and during any period allowed by law for the redemption from any sale ordered in foreclosure proceedings, and said receiver may be appointed irrespective of the value of the Mortgaged Premises or its adequacy to secure or discharge the Obligations due or to become due or the solvency of Mortgagor; and/or

(d) Take possession of and hold the Mortgaged Premises, with or without process of law, and collect the rents and profits therefrom, applying same to the charges and payments due under the conditions of this Mortgage so long as default shall continue, which such taking of possession shall in no way waive the right of Mortgagee to exercise the other remedies set forth herein because of a default.

In the event Mortgagee elects one or more of the above remedies upon default, Mortgagor agrees to pay all of the costs and expenses of Mortgagee incurred in pursuance of such remedy or remedies, including without limiting the generality thereof, attorneys' fees, all costs of collection, late payment penalties, abstracts of title or title insurance, hazard insurance on the Mortgaged Premises, real property taxes on the Real Estate and personal property taxes on the Chattel Property which are paid or incurred by Mortgagee, repairs, maintenance, and replacements of the Mortgaged Premises which are paid, advanced or incurred by Mortgagee, payments by Mortgagee to holders of liens or encumbrances on the Mortgaged Premises which are then due and payable, and interest commencing with the date of default, calculated at the rate accruing on the Obligations, on the sum of the above costs and expenses.

18. <u>Non-Waiver of Default</u>.  No failure by Mortgagee in the exercise of any of its rights under this Mortgage shall preclude Mortgagee from the exercise thereof in the event of subsequent Event of Default, and no delay by Mortgagee in the exercise of its rights under this Mortgage shall preclude Mortgagee from the exercise thereof so long as Mortgagor is in default hereunder. Mortgagee may enforce any one or more of its rights or remedies hereunder successively or concurrently.

19. <u>Modification of Obligations and Release of Collateral</u>.  Mortgagee at its option may extend the time for the payment of the Obligations or reduce the payments thereon or accept a renewal note or notes therefor or release all or part of the Mortgaged Premises without the consent of any junior lienholder or Mortgagor if Mortgagor has then parted with title to Mortgaged Premises and no sale of the Mortgaged Premises or forbearance on the part of Mortgagee or its assigns, or extension of the time for the payment of the Obligations or reduction in payments, or acceptance of renewals or release of all or part of the Mortgaged Premises shall affect the priority of this Mortgage or Security Documents or the security hereof or shall operate to release, modify, change or affect the original liability of Mortgagor herein or a subsequent mortgagor, surety or guarantor, either in whole or in part, nor shall the full force and effect of the security of this Mortgage and Security Documents be altered thereby.

20. <u>Rights of Successors</u>.  The covenants herein contained shall bind, and the benefits and advantages shall inure to, the respective legal representatives, successors and assigns of the parties hereto.

21. <u>Applicable Law</u>.  This Mortgage is executed under and shall be construed in accordance with the laws of the State of Indiana.

22. <u>Interpretation</u>.  In the event this Mortgage is executed by more than one person, firm or corporation, the liability of the undersigned parties shall be joint and several. Whenever

used, the singular shall include the plural, the plural the singular, and the use of any gender shall include all genders. The term "Mortgagee" shall include any payee of the Obligations or any transferee thereof, whether by operation of law or otherwise. Descriptive headings are for convenience only and shall be deemed to not affect the meaning or construction of any provision hereof.

23.     Authority.  Mortgagor is an Indiana limited liability company duly organized and validly existing under the laws of the State of Indiana. The undersigned, on behalf of Mortgagor, has the power, authority and legal right to execute, deliver and perform this Mortgage.

24.     Fixture Filing.  From the date of its recording, this Mortgage (as provided in Indiana Code Section 26-1-9.1-502) shall be effective as a financing statement with respect to all goods constituting part of the Chattel Property which are or are to become fixtures related to the Real Estate described herein. This document covers goods which are or are to become fixtures. The Real Estate to which such fixtures are or are to be attached is that described in **Attachment A** attached hereto, the record owner of which is Mortgagor.

25.     Time is of the Essence.  Time shall be of the essence in Mortgagor's performance of its obligations under this Mortgage and all other Security Documents.

IN WITNESS WHEREOF, Mortgagor has executed this instrument effective as of _____, 2016.

WFTOXI2, LLC

By:_____
    Michael A. Evans, Manager

STATE OF INDIANA            )
                           )
COUNTY OF MARION            )

    Before me the undersigned, a Notary Public for MARION County, State of Indiana, personally appeared Michael A. Evans, the Manager of WFTOXI2, LLC, an Indiana limited liability company, who acknowledged the execution of the above and foregoing Third Real Estate Mortgage, Security Agreement, Assignment of Leases and Rents and Fixture Filing on behalf of said company.

    Signed and sealed this 12 day of May, 2016.

KATHLEEN SCHUSTER
Marion County
My Commission Expires
April 4, 2024

_____
Signature

_____
Printed

My Commission Expires                    My County of Residence is:

_____                _____

I affirm, under the penalties for perjury, that I have taken reasonable care to redact each Social Security number in this document, unless required by law: James P. Moloy

This Instrument Prepared By: James P. Moloy, Bose McKinney & Evans LLP, 111 Monument Circle, Suite 2700, Indianapolis, Indiana 46204

## Attachment A

### Legal Description of the Real Estate

PART OF THE NORTHEAST QUARTER OF SECTION 24, TOWNSHIP 15 NORTH, RANGE 2 EAST OF THE SECOND PRINCIPAL MERIDIAN IN MARION COUNTY, INDIANA, MORE PARTICULARLY DESCRIBED AS FOLLOWS:

COMMENCING AT THE NORTHEAST CORNER OF THE SAID NORTHEAST QUARTER SECTION; THENCE SOUTH 88 DEGREES 06 MINUTES 58 SECONDS WEST ALONG THE NORTH LINE OF THE SAID NORTHEAST QUARTER SECTION 1232.45 FEET TO THE POINT OF INTERSECTION OF SAID NORTH LINE AND THE EASTWARDLY LINE OF EXECUTIVE DRIVE AS NOW LOCATED AND ESTABLISHED; THENCE SOUTH 12 DEGREES 08 MINUTES 35 SECONDS WEST ALONG SAID EASTWARDLY LINE OF EXECUTIVE DRIVE 278.32 FEET TO THE POINT OF BEGINNING; THENCE SOUTH 12 DEGREES 08 MINUTES 35 SECONDS WEST ALONG SAID EASTWARDLY LINE 235.10 FEET; THENCE NORTH 89 DEGREES 16 MINUTES 58 SECONDS EAST 660.92 FEET TO THE EAST LINE OF A 12.651 ACRE TRACT OF LAND SET OUT IN WARRANTY DEED RECORDED AS INSTRUMENT NO. 66-39767 IN THE OFFICE OF THE RECORDER OF MARION COUNTY, INDIANA; THENCE NORTH 00 DEGREES 12 MINUTES 02 SECONDS WEST ALONG THE EAST LINE OF SAID 12.651 ACRE TRACT OF LAND 241.65 FEET TO A POINT WHICH IS 270.13 FEET SOUTH OF THE NORTH LINE OF SAID QUARTER SECTION; THENCE SOUTH 88 DEGREES 06 MINUTES 58 SECONDS WEST, PARALLEL WITH THE SAID NORTH LINE, 610.90 FEET TO THE POINT OF BEGINNING.

TOGETHER WITH A NON-EXCLUSIVE EASEMENT FOR INGRESS AND EGRESS AND UTILITIES AS SET OUT IN GRANT OF EASEMENT, RECORDED AUGUST 3, 1966 AS INSTRUMENT NO. 66-39766, IN THE OFFICE OF THE RECORDER OF MARION COUNTY; INDIANA.